IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

CHRISTY J. RHOADES, in her
capacity as the Administratrix and
Personal Representative of
the estate of Philip Jontz Rhoades,

    Plaintiff,

v.                                                 Civ. Action No. 1:18-CV-186
                                                      (Judge Kleeh)

COUNTY COMMISSION OF MARION COUNTY,
DAVID FORSYTH, in his official and
individual capacity, and
JOHN DOE, in his official and
individual capacity,

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 61]**

Pending before the Court is Defendants' Motion for Summary Judgment. For the reasons discussed below, the Court grants in part and denies in part the motion.

I.    **PROCEDURAL HISTORY**

On December 2, 2018, the Plaintiff, Christy J. Rhoades, in her capacity as the Administratrix and Personal Representative of the Estate of Philip Jontz Rhoades ("Plaintiff"), filed a Complaint against the Defendants, the County Commission of Marion County (the "County Commission"), David Forsyth ("Forsyth"), and John Doe

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 61]**

("Doe") (together, "Defendants").[1] After a hearing and ruling on the motion to dismiss, the Court ordered the parties to meet and confer before Plaintiff filed an Amended Complaint.

On March 12, 2019, Plaintiff filed an Amended Complaint. The Amended Complaint asserts the following against Defendants:

- Count I: 42 U.S.C. § 1983 - Excessive Use of Force;

- Count II: 42 U.S.C. § 1983 - <u>Monell</u> Liability (County Commission of Marion County);

- Count III: Intentional Infliction of Emotional Distress; and

- Count IV: Wrongful Death - W. Va. Code § 55-7-6.

Plaintiff requests compensatory damages, general damages, damages permitted under the West Virginia Wrongful Death Act, punitive damages, pre-judgment and post-judgment interest, costs and attorney fees under 42 U.S.C. § 1988, and such other further specific and general relief as may become apparent.

---

[1] The Marion County Sheriff's Department was originally named as a Defendant, but the Court dismissed it as a Defendant via its order on February 22, 2019 [ECF No. 21].

**RHOADES V. FORSYTH**  1:18-CV-186

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 61]**

Defendants answered on March 26, 2019. On October 25, 2019, Defendants filed a Motion for Summary Judgment. Defendants ask the Court to grant summary judgment as to each count in the Amended Complaint. The motion has been fully briefed and is ripe for review.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party must "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Id. Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

**RHOADES V. FORSYTH** 1:18-CV-186

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 61]**

587 (1986) (citing First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)).

### III. FACTS

At the summary judgment stage, the Court considers the facts in the light most favorable to the non-moving party. In July 2017, Rhoades was a 28-year-old man living in Marion County, West Virginia. In late July, he had been accused of "joy-riding" in the county. See Am. Compl., ECF No. 22, at ¶ 29. On July 25, 2017, law enforcement unsuccessfully pursued Rhoades based on these accusations (the "July 25 Pursuit"). Id. ¶ 31. During the July 25 Pursuit, Rhoades changed vehicles three times. Id. ¶ 32. Deputy Cory Love ("Love") with the Marion County Sheriff's Department ("MCSD") discharged one or more firearms at Rhoades before he escaped. Id. ¶ 34. Rhoades was charged with grand larceny (multiple counts) and attempted murder of a police officer. Def. MSJ, ECF No. 62, at 3. These charges were based on Rhoades's allegedly reckless driving that day. Id.

On August 2, 2017, around one week after the July 25 Pursuit, Rhoades assisted two individuals who wrecked their vehicle in northern Marion County. See Am. Compl., ECF No. 22, at ¶ 39. When Rhoades heard emergency sirens, he left to hide. Id. ¶ 40. Members

4

**RHOADES V. FORSYTH**                                          **1:18-CV-186**

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 61]**

of the MCSD saw Rhoades driving shortly after the wreck. Id. ¶ 41. Rhoades then attempted to hide from police down a dead-end dirt road leading to a gas well site. Id. ¶ 42. Love and another deputy with the MCSD, David Forsyth ("Forsyth"), learned where Rhoades was hiding and pursued him. Id. ¶ 43.

When Love and Forsyth entered the clearing, Forsyth left his cruiser and discharged his firearm seven times — killing Rhoades. Id. ¶ 45. Defendants state that Forsyth instructed Rhoades to "stop the car, show [him] his hands," etc. See Def. MSJ, ECF No. 62, at 5. Defendants also state that Rhoades was reversing the Jeep and then revved the engine and drove the Jeep directly at Forsyth in an aggressive manner. Id. Defendants state that Forsyth saw Rhoades reach for something in the console area. Id. Forsyth interpreted the revving, spinning tires, and aggressive movement of the Jeep as a lethal threat. Id. After shooting Rhoades, and with the help of Love, Forsyth removed Rhoades from the vehicle and provided first aid. Id. at 6.

Rhoades was inside a stolen Jeep Wrangler — a "standard" or "stick-shift" vehicle. See Am. Compl., ECF No. 22, at ¶ 53. Plaintiff argues that it would have needed to be in gear to be moving towards Forsyth. Id. ¶ 54. While Forsyth claims that the

**RHOADES V. FORSYTH**                                      1:18-CV-186

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 61]**

Jeep was moving toward him, Plaintiff points out that had the Jeep been in gear when Rhoades was shot, the engine would have stopped running when Rhoades's foot was taken off the clutch. Id. ¶ 55. To the contrary, the Jeep was still running and in neutral when the State Police arrived. Pl. Resp., ECF No. 65, at 3. Therefore, Plaintiff argues, the Jeep was not moving towards Forsyth. Am. Compl., ECF No. 22, at ¶ 57.

All witnesses have testified that no one touched or otherwise manipulated the Jeep's gear shifter at any time following the shooting. Pl. Resp., ECF No. 65, at 3. Plaintiff also points out that there was no evidence of ground disturbance, which might mean the engine was not revving at all. Id. ¶ 12. Plaintiff plans to argue at trial that Rhoades's death was due to a knowing and intentional unlawful shooting into a stationary vehicle and that Forsyth could not have reasonably perceived the jeep to be moving when he utilized deadly force.

### IV.  DISCUSSION

**A.   Count I: 42 U.S.C. § 1983 - Excessive Use of Force**

**1.   Qualified Immunity**

Qualified immunity can be afforded to government officials for discretionary acts taken in their official capacity. The

**RHOADES V. FORSYTH**  1:18-CV-186

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 61]**

protection extends to "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). An officer, generally, is protected by qualified immunity if his "actions could reasonably have been thought consistent with the rights . . . alleged to have [been] violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). The test to determine whether an officer is entitled to qualified immunity is two-fold: (1) taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right, and (2) was that right clearly established such that a reasonable person would have known? Siegert v. Gilley, 500 U.S. 226, 232 (1991). In determining whether a right is clearly established, the "dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Brosseau v. Haugen, 543 U.S. 194, 198-99 (2004) (citing Anderson, 493 U.S. at 201-202). The Court can address either prong first. Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).

2. **Excessive Force**

"[A]pprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth

**RHOADES V. FORSYTH** 1:18-CV-186

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 61]**

Amendment." Tennessee v. Garner, 471 U.S. 1, 7 (1985). "The determination whether a reasonable person in the officer's position would have known that his conduct would violate the right at issue must be made . . . in light of any exigencies of time and circumstances that reasonably may have affected the officer's perceptions." Pritchett v. Alford, 973 F.2d 307, 312–13 (4th Cir. 1992). Under the Fourth Amendment's "reasonableness" analysis, force is not excessive if it is objectively reasonable under the circumstances facing the officer, without regard to his underlying intent. Graham v. Conner, 490 U.S. 386, 397 (1989).

The "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at 396–97. The Supreme Court has written the following about the reasonableness of deadly force:

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened

**RHOADES V. FORSYTH**  1:18-CV-186

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 61]**

> infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

Garner, 471 U.S. at 11.

Deadly force "may not be used unless necessary to prevent the escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." Id. at 1. This assessment occurs at the moment that force is used. Elliott v. Leavitt, 99 F.3d 640, 643 (4th Cir. 1996) (writing that "conduct prior to that moment is not relevant in determining whether an officer used reasonable force"). The Supreme Court has held that police may not use deadly force against an unarmed, non-dangerous, fleeing suspect. Id. Thus, for purposes of qualified immunity analysis, it is clearly established that using deadly force in such a situation is unlawful.

Here, in order for the Court to grant summary judgment to Defendants as to this count, it would need to find as a matter of law that Forsyth's conduct was reasonable given the circumstances. Those circumstances, however, are disputed. Viewing the evidence in the light most favorable to the non-movant (Rhoades), Rhoades's

**RHOADES V. FORSYTH**                                          **1:18-CV-186**

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 61]**

vehicle was not moving toward Forsyth when Forsyth fired shots at it. It is possible for a reasonable jury to find that this was possible because (1) the Jeep was in neutral, (2) there was no evidence of ground disturbance, and (3) there is no evidence that anyone moved the gear shifter after the shooting. The vehicle's lack of movement could negate the theory that the vehicle was used as a weapon or posed a threat, which could make Forsyth's conduct potentially unreasonable. It is clearly established that, via Tennessee v. Garner and its progeny, an officer's use of deadly force against a non-threatening, non-dangerous individual is an unlawful seizure in violation of the Fourth Amendment.

Defendants rely heavily on Waterman v. Batton, 393 F.3d 471 (4th Cir. 2005). However, this case is easily distinguishable. Perhaps most importantly, in Waterman, there is no dispute as to whether Waterman's car was moving. In Waterman, police followed Waterman on a high-speed chase just prior to shooting him. Over radio traffic, one officer reported that Waterman "just tried to run [him] off the road . . . he's trying to take us off the road." Id. at 474. The Fourth Circuit found in Waterman that police officers were entitled to qualified immunity based on Waterman's vehicle's "lurching" toward them, along with other factors. This

**RHOADES V. FORSYTH**  1:18-CV-186

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 61]**

Court does not disagree that if Rhoades's vehicle was lurching toward police, that fact would help to establish qualified immunity for Forsyth. However, at summary judgment stage, viewing the facts in the light most favorable to the non-moving party, the Court cannot find the undisputed facts show that lurching occurred. Evidence exists that could lead a reasonable jury to find that Rhoades's vehicle was not moving when he was shot.

For those reasons, the Court finds that there is sufficient evidence for a jury to find that Forsyth's conduct was objectively unreasonable, whether it be his firing shots in the first place or the number of shots he fired (seven shots). The situation would be different if Defendants produced evidence that Rhoades had threatened someone or was fleeing from a dangerous crime scene. This is not the case. While Rhoades may have been recklessly joy-riding during the July 25 Pursuit, that incident is irrelevant when analyzing whether he was a danger on August 2. See Elliott, 99 F.3d at 643 (the assessment of whether the suspect is a threat is made at the moment when force is used); see also Waterman, 393 F.3d at 481 (writing that "events should be reviewed outside the context of the conduct that precipitated the seizure" and that deadly force, even if justified at the beginning of an encounter,

RHOADES V. FORSYTH                                          1:18-CV-186

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 61]**

can be eliminated "even second later" if the threat goes away). Defendants suggest only that Rhoades was driving his vehicle at Forsyth and therefore using his vehicle as a weapon. Because there is evidence that could lead a reasonable jury to conclude that this fact is untrue, the Court finds that a genuine issue of material facts exists and denies the motion for summary judgment as to this claim.

**B.   Count II: 42 U.S.C. § 1983 - <u>Monell</u> Liability (County Commission of Marion County)**

A municipality is liable under § 1983 if it follows a custom, policy, or practice by which local officials violate a plaintiff's constitutional rights. <u>Monell v. Dep't of Social Servs. of City of New York</u>, 436 U.S. 658, 694 (1978). "[T]he substantive requirements for establishing municipal liability for police misconduct are stringent indeed. The critical Supreme Court decisions have imposed this stringency in a deliberate effort to avoid the indirect or inadvertent imposition of forms of vicarious liability rejected in <u>Monell</u>." <u>Spell v. McDaniel</u>, 824 F.2d 1380, 1391 (4th Cir. 1987). Courts have required plaintiffs to demonstrate "persistent and widespread . . . practices of [municipal] officials," along with the "duration and frequency" – which

**RHOADES V. FORSYTH**                                    **1:18-CV-186**

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 61]**

indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their "deliberate indifference." Spell, 824 F.2d at 1386-91. Sporadic or isolated violations of rights will not give rise to Monell liability; only "widespread or flagrant" violations will. Owens v. Baltimore City State's Attorneys Office, 767 F.3d 379, 402-03 (4th Cir. 2014) (citing Spell, 824 F.2d at 1387).

Municipal liability results only when policy or custom is "(1) fairly attributable to the municipality as its 'own,' and is (2) the 'moving force' behind the particular constitutional violation." Spell, 924 F.2d at 1386-87 (citations omitted). "Custom and usage" require a showing that the "duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees." Id. at 1387. The actual knowledge can be established by reports or discussions. Id. Constructive knowledge may be shown by the practices being "so widespread or flagrant that in the proper exercise of its official responsibilities the governing body should have known of them." Id. Such a developed "custom or usage" may then become the basis of municipal liability, but only if its continued existence can be

**RHOADES V. FORSYTH**  1:18-CV-186

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 61]**

laid to the fault of municipal policymakers, and a sufficient causal connection between the "municipal custom and usage" and the specific violation can then be established. Id. at 1390.

In Carter v. Morris, 164 F.3d 215 (4th Cir. 1999), the plaintiff brought suit against the Danville Police Department. The Fourth Circuit found that the plaintiff's allegations were insufficient to establish Monell liability. The court boiled down plaintiff's cited incidents to two instances — in addition to the instance at issue in the case — of "even arguably unlawful arrests" or unreasonable searches and seizures by the Danville Police Department. Id. at 219. The court referred to this evidence as a "meager history of isolated incidents" that does not reach the required "widespread and permanent" practice necessary to establish a municipal custom. Id. at 220. The court also noted that the plaintiff showed no relevant incident prior to her own case of which the City could have had knowledge and could have acquiesced. Id.

Here, Plaintiff has not alleged that the MCSD has promulgated any formal unconstitutional policy. Plaintiff alleges that the MCSD's custom, pattern, practices, and procedure is to use Excessive Force when, at the time of using deadly force, no

RHOADES V. FORSYTH                                                1:18-CV-186

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 61]**

reasonable police officer would believe that an imminent threat existed. See Am. Compl., ECF No. 22, at ¶ 23. Plaintiff claims that the MCSD has a custom, pattern, practice, procedure of falsely claiming an imminent threat exists in order to justify its unlawful uses of excessive force. Id. ¶ 24.

Defendants presume that in support of her Monell claim, Plaintiff is relying on certain incidents in which the MCSD was tangentially involved but not responsible for the shots fired.[2] Plaintiff does not rely upon those cases in her Response. It is clear that those incidents would not support a Monell claim against the County Commission because the actions were taken by other police departments. In her Response, Plaintiff relies on the following events to support her Monell claim:

- The shooting during the July 25 Pursuit (MCSD police fired shots at Rhoades and missed);

- The shooting on August 2, 2017 (MCSD police fired shots at Rhoades and killed him) (the "August 2 Shooting"); and

---

[2] These instances include the shooting of Randy Cumberledge in 2016 (shooting attributed to White Hall police) and a shooting in the vicinity of Muriale's Restaurant (shooting attributed to Fairmont police).

15

**RHOADES V. FORSYTH**　　　　　　　　　　　　　　　　　　　　**1:18-CV-186**

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 61]**

- The shooting on October 17, 2017 (MCSD police fired shots at Randall Ford and paralyzed him) (the "Ford Shooting").

Plaintiff has not met the stringent requirements of a Monell claim. Importantly, the alleged policy or custom must be the "moving force" behind the constitutional violation at issue. It is impossible for the Ford Shooting to support Monell liability because it had not yet occurred when the August 2 Shooting occurred. See Spell, 824 F.2d at 1386-87. That leaves only one other relevant incident — the July 25 Pursuit shooting — to prove the existence of a policy or custom. One incident involving the same person — Philip Rhoades — is certainly not enough to support a "widespread and permanent" practice by a municipality. Further, it has not been adjudicated that Rhoades's constitutional rights were violated during the July 25 Pursuit, much less violated in the same manner as they were, allegedly, here. The Court, therefore, grants the motion for summary judgment as to Count II.

**C.    Remaining Claims**

For the same reasons the Court denies the Motion for Summary Judgment as to Count One, the Court denies the Motion for Summary Judgment as to Count Three (Intentional Infliction of Emotional Distress) as it pertains to Forsyth. The Court holds in abeyance

**RHOADES V. FORSYTH**  1:18-CV-186

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 61]**

its ruling as to Count Four (Wrongful Death – W. Va. Code § 55-7-6). Finally, the Court denies without prejudice the Motion for Summary Judgment on the issue of punitive damages.

## V.   CONCLUSION

For the reasons discussed above, the Court **ORDERS** the following. Defendant's Motion for Summary Judgment is

(1) **DENIED** as to Count I;

(2) **GRANTED** as to Count II;

(3) **DENIED** as to Count III;

(4) **HELD IN ABEYANCE** as to Count IV; and

(5) **DENIED WITHOUT PREJUDICE** as to punitive damages.

The Court **DISMISSES WITH PREJUDICE** all claims against the Marion County Commission.

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Order to counsel of record.

DATED: February 18, 2020

*Tom S Kleeh*
THOMAS S. KLEEH
UNITED STATES DISTRICT JUDGE