1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG

- - -

| | |
|---|---|
| CHRISTY J. RHOADES, in her capacity as the Administratrix and Personal Representative of the estate of Philip Jontz Rhoades, | CIVIL ACTION NO. 1:18-CV-186 |

                         Plaintiff,

V.

DAVID FORSYTH, in his official and individual capacity,

                         Defendant.

- - -

    Proceedings had in the PRE-TRIAL CONFERENCE of the above-styled action on Tuesday, April 6, 2021, before the Honorable Judge Thomas S. Kleeh, District Judge, at Clarksburg, West Virginia.

- - -

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | Ryan J. Umina<br>Umina Legal, PLLC<br>125 Greenbag Road<br>Morgantown, WV 26501 |
| | Travis Austin Prince<br>Benjamin J. Hogan<br>Bailey & Glasser, LLP - Morgantown<br>6 Canyon Rd., Suite 200<br>Morgantown, WV 26508 |
| For the Defendant: | Tiffany R. Durst<br>Nathan A. Carroll<br>Pullin Fowler Flanagan Brown & Poe PLLC - Morgantown<br>2414 Cranberry Sq.<br>Morgantown, WV 26508 |

    Proceedings recorded utilizing realtime translation. Transcript produced by computer-aided transcription.

*Jill M. Cutter, RPR*
*500 W. Pike Street, Clarksburg, WV 26301 (304)622-8513*

1    (Proceedings commenced at 9:13 a.m. in Judge Kleeh's

2    chambers.)

09:13:54    3    THE COURT:  All right.  We are on the record this

09:13:56    4    morning in a pretrial, quick conversation in Rhoades v.

09:14:03    5    Forsyth, civil action number 18-cv-186.  Yesterday the Court

09:14:07    6    emailed to counsel the Court's proposed voir dire.  Again, the

09:14:13    7    Court will take care of voir dire, handle follow-ups as

09:14:16    8    necessary, but I wanted to give counsel a chance if there was

09:14:21    9    any objections or concerns of the Court's proposed voir dire?

09:14:21    10   I will start with the plaintiffs.

09:14:26    11   MR. UMINA:  No objection from us, Your Honor.

09:14:27    12   THE COURT:  Ms. Durst.

09:14:27    13   MS. DURST:  No objections, Your Honor.  There were

09:14:30    14   four of our proposed voir dire questions that we believe

09:14:35    15   either should be asked or potentially could be combined into a

09:14:39    16   question the Court is already proposing to ask the jurors.

09:14:44    17   Number one is -- I will take them in order.  Number 17 from

09:14:49    18   our proposed voir dire, Your Honor, and it was, "Have you or

09:14:52    19   any member of your immediate family had any form of law

09:14:54    20   enforcement training?"

09:14:55    21   THE COURT:  Okay.

09:14:56    22   MS. DURST:  I don't know that that one necessarily

09:14:59    23   could be combined with something that is already in the --

09:15:02    24   THE COURT:  Why do we need to know that?

09:15:04    25   MS. DURST:  I think it's relevant, Your Honor, if you

09:15:07   1    have someone that has a family member that has law enforcement

09:15:11   2    training and maybe is no longer in law enforcement because

09:15:15   3    they had -- they became disillusioned with police or whatever,

09:15:21   4    and had conversations with --

09:15:24   5         THE COURT:  Well, we ask if anyone -- we obviously

09:15:26   6    ask the specifics about the Marion County Sheriff's Department

09:15:28   7    and Mr. Forsyth, but we also ask if they or any family member,

09:15:32   8    close friends, ever worked for law enforcement.  And I have a

09:15:36   9    hard time removing a scenario where someone receives any type

09:15:37   10   of law enforcement training where they weren't employed.

09:15:40   11        MS. DURST:  I think it's potential that someone could

09:15:42   12   have some training in college that may be not hands-on

09:15:46   13   training, but had classes in criminal justice, that could be

09:15:50   14   considered in law enforcement training, but not like State

09:15:54   15   police academy kind of training.

09:15:56   16        THE COURT:  Right.

09:15:56   17        MS. DURST:  So that's kind of, you know, where I am

09:15:58   18   coming from, Your Honor.

09:16:00   19        THE COURT:  Understood.  I think we will leave that

09:16:01   20   one out, Ms. Durst.  I think the Court's voir dire, in

09:16:06   21   particular questions 5 and 6, get at what we need.  And again,

09:16:10   22   our goal here, remembering what it was like to be counsel in

09:16:13   23   the morning of trial, wanting as much information as humanly

09:16:16   24   possible about our jury pool, so you pick what you believe to

09:16:20   25   be a winning jury.  I certainly understand that.  Our job is

09:16:22  1    to seat a fair and impartial jury, so I don't think we need to

09:16:26  2    get that far in the weeds.  I think we covered it.  Objection

09:16:28  3    noted.  Second one?

09:16:29  4         MS. DURST:  Second one is number 21, Your Honor.  And

09:16:33  5    I believe we could maybe broaden the Court's question number

09:16:37  6    12 to kind of accomplish what we are trying to find.  Number

09:16:42  7    21 says, "Have any members of the jury panel had any

09:16:45  8    experience with a member of the sheriff's department good or

09:16:48  9    bad?"  The Court's number 12 asks if any member -- "Have you

09:16:52  10   or any member of your family been stopped or issued a citation

09:16:55  11   for allegedly violating a traffic law," and here is what I --

09:16:59  12        THE COURT:  I think that was your suggested question.

09:17:02  13        MS. DURST:  I think we had this other one and the

09:17:03  14   reason, Your Honor, and let me give you an example.  Say we

09:17:08  15   have Jane Doe whose brother was arrested for possession of

09:17:11  16   drugs by someone in the Marion County Sheriff's Department

09:17:13  17   and, she believes that the drugs weren't his and he was

09:17:16  18   wrongfully accused by the sheriff's department and so has an

09:17:20  19   issue with the sheriff's department.  That's not limited to

09:17:23  20   just a traffic stop, so I think maybe number 12 --

09:17:28  21        THE COURT:  Well, 13 asks about a confrontational

09:17:31  22   situation with law enforcement.  Maybe we just add to that.

09:17:38  23   Where in 13 we would ask, "Have you or any member of your

09:17:41  24   family ever had what you considered an unfriendly or

09:17:47  25   confrontational..."  I am open to any thesaurus suggestions on

09:17:51    1    that front, but I think 13 contemplates what you are looking

09:17:55    2    for here, Ms. Durst, but if you have any revisions or

09:17:57    3    suggestions on that one, I am open to them.

09:17:59    4            MS. DURST:  Well, I don't know that -- the

09:18:00    5    confrontational situation -- I do know that is one that we

09:18:04    6    suggested, Your Honor.  But I guess I'm just trying to --

09:18:11    7    depending on how the facts of the situation play out, it may

09:18:14    8    -- when the suspect was taken into custody may not necessarily

09:18:19    9    been a confrontational situation.

09:18:20   10            THE COURT:  How about unpleasant?

09:18:22   11            MS. DURST:  I mean, that is kind of getting -- we're

09:18:24   12    just wanting to find out if anyone has any experiences with

09:18:28   13    the sheriff's department that essentially leaves a bad taste

09:18:31   14    in their mouth for whatever reason, whether it was because

09:18:34   15    they thought they were wrongfully accused, it was a family

09:18:37   16    member, they didn't like the way the law enforcement

09:18:40   17    interacted with them.

09:18:41   18            THE COURT:  I understand.  I think if we ask if they

09:18:43   19    have ever been in what they considered a confrontational or

09:18:47   20    unpleasant situation with any law enforcement officer or

09:18:50   21    agency, I believe that covers it.  But I will come back around

09:18:54   22    to you, Mr. Umina.  Any concerns with that revision to the

09:18:56   23    Court's voir dire question 13?

09:18:59   24            MR. UMINA:  Your Honor, I don't think that I do.  If

09:19:01   25    they want to ask if they had an unfriendly encounter with law

09:19:04  1    enforcement, that is fine.

09:19:06  2            THE COURT:  I think unpleasant is the best I can come

09:19:08  3    up with.  Any other alternatives anybody can think of?

09:19:11  4            MR. UMINA:  I think that is a good word.

09:19:13  5            THE COURT:  All right.  Does that alleviate your

09:19:15  6    concerns on that one, Ms. Durst?

09:19:17  7            MS. DURST:  That addresses the concerns we had with

09:19:20  8    regard to that one, Your Honor.

09:19:21  9            THE COURT:  All right.  Number three?

09:19:22  10           MS. DURST:  Number three is our number 30 in our voir

09:19:24  11   dire, "Does anyone have a general distrust or hatred for

09:19:28  12   police officers?" If we could remove the word "hatred,"

09:19:31  13   obviously, but I think if someone has a general distrust of

09:19:34  14   law enforcement, for whatever reason, whether it's they had a

09:19:37  15   personal experience or they have seen things on the news, it

09:19:41  16   hasn't been a personal experience for them, but because of

09:19:44  17   things that they have seen, they have a distrust for law

09:19:46  18   enforcement, I think that that is something that we should be

09:19:51  19   able to explore.

09:19:53  20           THE COURT:  Understood.  I think the -- frankly, the

09:19:55  21   scope of the Court's voir dire gets at that from a number of

09:19:59  22   different ways; however, including the questions we just asked

09:20:06  23   about, the former employment, the organization, social media

09:20:11  24   activity, and then, of course, the general open-ended

09:20:15  25   questions with respect to any reason you believe you can't sit

09:20:21  1   and be fair, in particular question 33, of course, as the

09:20:28  2   catch-all, any religious, personal or philosophical opinions.

09:20:31  3   So I think we covered, that probably not as directly as you

09:20:36  4   may suggest, but I think we covered that.  We will leave that

09:20:38  5   one out.  Objection noted.

09:20:40  6             MS. DURST:  Okay.

09:20:41  7             THE COURT:  Number four?

09:20:42  8             MS. DURST:  The last one, then, number four, would be

09:20:43  9   number 37 of our voir dire, "Does anyone believe that force

09:20:48  10  should not be used by a police officer against a suspect in

09:20:51  11  any circumstance?"  I think that there are people out there

09:20:54  12  that regardless of what a person is doing, don't believe that

09:20:57  13  any force should be used, and I think that we are entitled to

09:21:02  14  know if they -- if a juror falls into that category.

09:21:07  15            THE COURT:  Understood.  Mr. Umina, what do you think

09:21:09  16  about that one?

09:21:09  17            MR. UMINA:  Your Honor, I don't think it's a

09:21:10  18  necessary question.  Additionally, in -- the Fourth Circuit

09:21:14  19  has no per se rule for excluding the jurors, and I think in

09:21:17  20  the scope of your existing voir dire would draw out any bias

09:21:21  21  they would need to know, and certainly anything like that

09:21:22  22  would not rise to a level of excluding that juror for cause.

09:21:26  23            THE COURT:  And we also instruct the jury, obviously

09:21:28  24  at the beginning we don't give them the specifics, tell them

09:21:31  25  they are going to be told what the law is and they don't have

09:21:33   1    any choice but to follow it, and can't substitute their own

09:21:37   2    judgments.  And, of course, we cover that at length in our

09:21:39   3    jury charge.  So I think we cover that sufficiently with,

09:21:45   4    again, the scope of the voir dire, with also our preliminary

09:21:48   5    instructions to the jury, and then, of course, we will again

09:21:54   6    in the actual jury instructions before they get the case to

09:21:58   7    deliberate.  So we will leave that one out.  In all candor,

09:22:04   8    it's just a personal practice of mine.  I try to avoid the

09:22:08   9    case-specific questions, particularly when we are getting

09:22:12   10   closer to the ultimate issue during voir dire, being mindful

09:22:15   11   what our -- the Court's role is in selecting a jury.  We are

09:22:19   12   going to leave that one out as well, but objection noted on

09:22:22   13   that one, Ms. Durst.

09:22:24   14        Anything else on the voir dire?

09:22:25   15             MS. DURST:  None for the defendant, Your Honor.

09:22:27   16             THE COURT:  Okay.  All right.

09:22:28   17             MR. UMINA:  Your Honor, specifically as to the voir

09:22:33   18   dire, no, but as to the potential jurors, I don't know when

09:22:36   19   the Court wants us to address this, but before we get back in

09:22:39   20   there, but in our juror research, one of the proposed jurors,

09:22:43   21   we believe, has exhibited publically a bias that is strong

09:22:46   22   enough to eliminate him for cause.  And to save time on the

09:22:51   23   Court's behalf, on everyone's behalf -- can you hand me that,

09:22:54   24   please?

09:22:54   25        Andrew Grimes is an EMT here in Harrison County.  This is

| | |
|---|---|
| 09:23:02 | 1 |

information from his Facebook page.  If you look at it, he
literally posts nothing but items and posts, and it's not one
or two, it's literally every single thing that Mr. Grimes
posts.  It's not just pro law enforcement or supportive of law
enforcement, but to a degree that shows an inherent bias that
most certainly can't be overcome with the correct instruction
or questions or anything of that nature.  And it's -- some of
these are duplicates, Your Honor -- and it goes on and on and
on in literally every single thing that this individual has
posted for years.

     For instance, the one that you are looking at
demonstrates a very inherent bias towards law enforcement.
Again, it's not just a favorable impression of law enforcement
it's a --

          THE COURT:  Have you seen these, Ms. Durst?

          MS. DURST:  I have not, Your Honor.

          THE COURT:  I will give you a second to read through
those.

          MR. UMINA:  My staff didn't collate those documents.

          THE COURT:  Okay.  For the record, plaintiff's
counsel provided the Court and defense counsel a copy of what
appears to be archives from a prospective juror's Facebook
page.  Would that be fair, Mr. Umina?

          MR. UMINA:  Yes, Your Honor.

          THE COURT:  And it's for Mr. -- what's his name

09:25:54   1    again?

09:25:54   2         MR. UMINA:  Andrew Grimes.  He is currently juror

09:25:58   3    number five.

09:25:59   4         THE COURT:  Juror number 5, well, they say what they

09:26:04   5    say.  I would be inclined, unless there is an objection, to

09:26:08   6    make a copy of this and make it part of the record, under seal

09:26:12   7    obviously, given it's Mr. Grime's personal Facebook

09:26:16   8    information.  Do I take your raising this issue Mr. Umina as a

09:26:22   9    preliminary motion to strike for cause on this particular

09:26:26   10   juror?

09:26:26   11        MR. UMINA:  Yes, Your Honor.

09:26:27   12        THE COURT:  Ms. Durst.

09:26:27   13        MS. DURST:  Your Honor, in briefly looking thru the

09:26:30   14   posts in the few minutes that I had there, a lot of -- there

09:26:33   15   were some from 2020, right around that time.  Most of them

09:26:37   16   look like they were back from 2014, that time frame.  I think

09:26:41   17   at a minimum, we should be able to question Mr. Grimes, you

09:26:47   18   know, in camera, before the Court makes the ruling on a motion

09:26:51   19   to strike.

09:26:52   20        THE COURT:  Well, we're not necessarily going to

09:26:54   21   question him in camera about his Facebook page.  But what I am

09:26:57   22   inclined to do is to conduct voir dire.  If this gentleman

09:27:00   23   does not respond as I believe he should, to certain of the

09:27:05   24   Court's voir dire questions, then we will have a one-on-one

09:27:11   25   chat.  But I will ask him the standard questions as to whether

09:27:15   1   he thinks he can set this aside and be fair, and then I will

09:27:18   2   make a determination at that point.  But he is here, and we

09:27:23   3   will give him a chance to speak to it, but we will take that

09:27:26   4   motion up then.

09:27:27   5         MR. UMINA:  Yes, Your Honor.

09:27:28   6         THE COURT:  Thank you for the advanced heads up on

09:27:30   7   that, Mr. Umina.  But we will make a copy of this.

09:27:35   8         MR. UMINA:  Absolutely.

09:27:36   9         THE COURT:  And we will have that filed under seal

09:27:41   10  again, of course.

09:27:45   11        Can you make a couple so that everyone has it?  I

09:27:49   12  will apologize in advance; our copier is what you would expect

09:27:54   13  for a federal government copier.  I will put it politely.

09:28:00   14  Okay.

09:28:01   15    One thing, we are going to seat eight jurors.  I know in

09:28:07   16  one of our recent orders we mentioned having six, and two

09:28:10   17  alternates.  We're not going to have alternates.  We're going

09:28:13   18  to seat eight and treat them as jurors.  We have got to have

09:28:17   19  at least six, so the two, they won't know it, but we will

09:28:22   20  treat them as buffers.  If someone needs excused during the

09:28:26   21  course of the trial, we will proceed as long as we have six.

09:28:28   22  But we are going to start with eight, so we won't have

09:28:30   23  alternates.  We will just seat eight.

09:28:33   24        MS. DURST:  And at the end of the trial when we are

09:28:37   25  beginning deliberations and no one has had to be excused, will

09:28:41    1    all eight deliberate then?

09:28:43    2           THE COURT:  No alternates.  Normal, first class

09:28:47    3    jurors.  So we will skip that sort of arbitrary distinction.

09:29:18    4    For our purposes, we will seat eight.  If we have to excuse

09:29:21    5    somebody we will go with seven or six.  If we have five, then

09:29:25    6    we will have a different conversations, but given the length

09:29:28    7    of trial, I think having a two-person buffer might be best.

09:29:33    8    We will do that that way.

09:29:34    9       So that counsel knows, given that we are going to seat

09:29:38   10    eight, we will, once we are finished with jury selection, we

09:29:41   11    will be able to get everybody in the box at a safe social

09:29:46   12    distance seating pattern, if you will.  My inclination was,

09:29:53   13    depending on when we finish with jury selection, either during

09:29:57   14    a break today or to start tomorrow, to reconfigure the

09:30:02   15    courtroom back to normal.  I am sure you guys have seen

09:30:05   16    downstairs where we are set up now to accommodate our jurors.

09:30:08   17    We will move the counsel tables back to where they are facing

09:30:11   18    the bench and move the podium back to sort of behind counsel

09:30:16   19    table there in the middle.  If we get through jury selection

09:30:18   20    this morning, and it's around lunchtime, we may try to do that

09:30:22   21    before we start with openings and the rest.  Or if it's not a

09:30:25   22    convenient time -- our best guesstimate, that will take 15 or

09:30:29   23    20 minutes to move and unplug and replug.  If we are not at a

09:30:33   24    good spot to do that, we just may roll with it today how we

09:30:37   25    are currently set up, and then when you get here tomorrow, we

09:30:41  1    will be reconfigured back to normal.

09:30:46  2        Those were all the logistic things on my checklist.

09:30:49  3    Anything further we need to take up at this point?

09:30:52  4            MR. UMINA:  Nothing from the plaintiff, Your Honor.

09:30:53  5            MR. CARROLL:  Your Honor, I believe there was one

09:30:55  6    more matter of housekeeping.  Based off the Court's recent

09:30:58  7    orders, we did exchange with plaintiff's counsel certain radio

09:31:01  8    recordings that we believe were still admissible.  We paired

09:31:04  9    that down with what we believe to be consistent with the

09:31:05  10   Court's rulings.  And there is one radio log in particular

09:31:08  11   that we believe will be objected to, specifically the radio

09:31:11  12   log that states that the -- Mr. Rhoades was believed to be

09:31:14  13   armed.  There is an objection to that.  I believe the

09:31:17  14   objection is that our defendant did not rely on that in the

09:31:20  15   course of his use of force; however, we believe that's

09:31:23  16   specifically refuted by the testimony even as early as our

09:31:27  17   client's statement to the state police.  He indicated that

09:31:30  18   plaintiff was reaching between the seats, and he could hear

09:31:34  19   what went over the radio.  I think all those things provide

09:31:37  20   the foundation for that information.  And more importantly,

09:31:39  21   the fact that Mr. Rhoades may or may not have been armed has

09:31:42  22   nothing to do with any prior criminal history.  It does not

09:31:44  23   relate to June 25th [sic] because no weapon, other than his

09:31:48  24   vehicle, was used on June -- July 25th.  And to that end, I

09:31:53  25   absolutely believe that that is relevant and there is a proper

09:31:56  1      foundation for it.

09:31:56  2              THE COURT:  Mr. Umina.

09:31:57  3              MR. UMINA:  Yes, Your Honor.  Specifically the

09:32:01  4      recording is identified 514 MAR CNTY POL 1443:43.  It states

09:32:11  5      that, quote, "Last they heard he was armed."  This is about

09:32:14  6      ten minutes before the shooting.  Again, there is no evidence

09:32:17  7      that the transmission was heard or utilized by the defendant,

09:32:22  8      and he does not mention during the statement, "I had heard he

09:32:26  9      was armed."  He makes a mention that he may have been reaching

09:32:30  10     towards the floorboard, but he said nothing about a weapon or

09:32:34  11     being armed.  The sole reason that the defendant has given for

09:32:37  12     the entire length of this litigation and prior, is that the

09:32:43  13     Jeep was allegedly perceived as a weapon against him.  He made

09:32:48  14     no mention of believing that Mr. Rhoades was armed at any

09:32:50  15     point when given a reason for utilizing force, and he

09:32:54  16     affirmatively stated that he did not see a weapon.

09:32:58  17        So based on the same case law and rule of evidence in the

09:33:01  18     most recent order, we object to that being offered at trial.

09:33:05  19     It was not part of his calculus.  He can say he may have been

09:33:08  20     reaching, but to say that he believed he was armed is

09:33:11  21     completely an opposite to his previous statement.

09:33:15  22              THE COURT:  Okay.  Is this coming up in opening

09:33:17  23     statements?

09:33:17  24              MS. DURST:  It -- potentially it could, Your Honor.

09:33:20  25              THE COURT:  Okay.  We are going to get downstairs and

09:33:23  1   get through jury selection, and we will revisit this.  I will

09:33:27  2   pull the deposition transcript from Mr. Forsyth, so I can take

09:33:30  3   a look at that in the interim, but we will deal with this

09:33:35  4   before we get to openings so you guys know what is in play and

09:33:38  5   what is not.

09:33:39  6              MS. DURST:  Your Honor, to that extent, then would

09:33:41  7   that be an appropriate time to address kind of the parameters

09:33:45  8   of the Court's April 4th order.  The question where I am

09:33:51  9   going, I don't want to obviously, you know, go beyond the

09:33:55  10  bounds of the Court's order when I am making my opening

09:33:58  11  statement and referring to the pursuit of Mr. Rhoades or

09:34:01  12  whatever.  So would that be the best time to address it with

09:34:04  13  the Court?

09:34:04  14             THE COURT:  Yeah.  We can talk about that then.

09:34:04  15             MS. DURST:  Okay.

09:34:05  16             THE COURT:  I am certainly not going to script your

09:34:08  17  guys' trial for you, and we can take it as issues go.  The

09:34:11  18  orders say what they say.  July 25th is off the table.  We are

09:34:15  19  talking about that pursuit and what happened after they turned

09:34:18  20  down, what was it, Parrish Run?

09:34:20  21             MS. DURST:  Yes.  It was East Run, and then Parrish

09:34:23  22  Run, Your Honor.

09:34:23  23             THE COURT:  Okay.

09:34:23  24             MS. DURST:  I just wanted to make sure if that would

09:34:25  25  be the appropriate time.

09:34:26  1          THE COURT:  We will.  But again, we are going to be

09:34:28  2     as efficient as possible, particularly with our jurors' time.

09:34:31  3          MS. DURST:  Aside from that, Your Honor, addressing

09:34:34  4     that, then, we don't have anything else.

09:34:35  5          THE COURT:  Okay.  For the record, everyone is

09:34:40  6     reminded to speak slowly and loudly for Ms. Cutter.

09:34:40  7          COURT REPORTER:  Thank you.

09:34:45  8          THE COURT:  I will stop you and slow you down if

09:34:47  9     necessary.

09:34:48  10          MS. DURST:  And, Your Honor, you had told us when we

09:34:49  11     were addressing the jury, as long as we maintain that

09:34:52  12     invisible barrier, we are allowed to remove our masks?

09:34:56  13          THE COURT:  Yes, absolutely.  And when you are

09:34:59  14     questioning witnesses, yes.  We are set up at this point to be

09:35:03  15     sufficiently distanced, so, yeah, feel free to remove your

09:35:08  16     masks while you are addressing the jury or questioning

09:35:12  17     witnesses.

09:35:13  18          Anything else?  Thank you all.

          19          (Proceedings concluded at 9:35 a.m.)

          20                    C E R T I F I C A T E

          21          I, Jill M. Cutter, Registered Professional Reporter and

          22     Official Reporter for the United States District Court for the

          23     Northern District of West Virginia, so hereby certify that the

          24     foregoing is a correct transcript to the best of my ability of

          25     the proceedings in the above-styled action on April 6, 2021,

1    as reported by me in stenotypy.

2         I certify that the transcript fees and format comply with

3    those prescribed by the Court and Judicial conference of the

4    United States.

5

6              Given under by hand this day, April 26, 2021.

7

8                        /s/ Jill M. Cutter, RPR

9                        Official Reporter, United States
                         US District Court for the Northern
10                       US District of West Virginia

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

**/**

**/s** [1] - 17:8

**1**

**12** [3] - 4:6, 4:9, 4:20
**125** [1] - 1:16
**13** [4] - 4:21, 4:23, 5:1, 5:23
**1443:43** [1] - 14:4
**15** [1] - 12:22
**17** [1] - 2:17
**18-cv-186** [1] - 2:5
**1:18-CV-186** [1] - 1:4

**2**

**20** [1] - 12:23
**200** [1] - 1:19
**2014** [1] - 10:16
**2020** [1] - 10:15
**2021** [3] - 1:12, 16:25, 17:6
**21** [2] - 4:4, 4:7
**2414** [1] - 1:23
**25th** [3] - 13:23, 13:24, 15:18
**26** [1] - 17:6
**26501** [1] - 1:16
**26508** [2] - 1:19, 1:23

**3**

**30** [1] - 6:10
**33** [1] - 7:1
**37** [1] - 7:9

**4**

**4th** [1] - 15:8

**5**

**5** [2] - 3:21, 10:4
**514** [1] - 14:4

**6**

**6** [4] - 1:12, 1:19, 3:21, 16:25

**9**

**9:13** [1] - 2:1
**9:35** [1] - 16:19

**A**

**a.m** [2] - 2:1, 16:19

**ability** [1] - 16:24
**able** [3] - 6:19, 10:17, 12:11
**above-styled** [2] - 1:12, 16:25
**absolutely** [3] - 11:8, 13:25, 16:13
**academy** [1] - 3:15
**accommodate** [1] - 12:16
**accomplish** [1] - 4:6
**accused** [2] - 4:18, 5:15
**ACTION** [1] - 1:3
**action** [3] - 1:12, 2:5, 16:25
**activity** [1] - 6:24
**actual** [1] - 8:6
**add** [1] - 4:22
**additionally** [1] - 7:18
**address** [2] - 8:19, 15:7, 15:12
**addresses** [1] - 6:7
**addressing** [3] - 16:3, 16:11, 16:16
**Administratrix** [1] - 1:4
**admissible** [1] - 13:8
**advance** [1] - 11:12
**advanced** [1] - 11:6
**affirmatively** [1] - 14:16
**agency** [1] - 5:21
**aided** [1] - 1:25
**allegedly** [2] - 4:11, 14:13
**alleviate** [1] - 6:5
**allowed** [1] - 16:12
**alternates** [4] - 11:17, 11:23, 12:2
**alternatives** [1] - 6:3
**Andrew** [2] - 8:25, 10:2
**apologize** [1] - 11:12
**APPEARANCES** [1] - 1:14
**appropriate** [2] - 15:7, 15:25
**April** [4] - 1:12, 15:8, 16:25, 17:6
**arbitrary** [1] - 12:3
**archives** [1] - 9:22
**armed** [7] - 13:13, 13:21, 14:5, 14:9, 14:11, 14:14, 14:20
**arrested** [1] - 4:15
**aside** [2] - 11:1, 16:3
**AT** [1] - 1:2
**Austin** [1] - 1:17

**avoid** [1] - 8:8

**B**

**bad** [2] - 4:9, 5:13
**Bailey** [1] - 1:18
**barrier** [1] - 16:12
**based** [2] - 13:6, 14:17
**became** [1] - 3:3
**beginning** [2] - 7:24, 11:25
**behalf** [2] - 8:23
**behind** [1] - 12:18
**believes** [1] - 4:17
**bench** [1] - 12:18
**Benjamin** [1] - 1:18
**best** [5] - 6:2, 12:7, 12:22, 15:12, 16:24
**between** [1] - 13:18
**beyond** [1] - 15:9
**bias** [4] - 7:20, 8:21, 9:5, 9:12
**bounds** [1] - 15:10
**box** [1] - 12:11
**break** [1] - 12:14
**briefly** [1] - 10:13
**broaden** [1] - 4:5
**brother** [1] - 4:15
**Brown** [1] - 1:22
**buffer** [1] - 12:7
**buffers** [1] - 11:20

**C**

**calculus** [1] - 14:19
**camera** [2] - 10:18, 10:21
**candor** [1] - 8:7
**Canyon** [1] - 1:19
**capacity** [2] - 1:4, 1:9
**care** [1] - 2:7
**CARROLL** [1] - 13:5
**Carroll** [1] - 1:21
**case** [3] - 8:6, 8:9, 14:17
**case-specific** [1] - 8:9
**catch** [1] - 7:2
**catch-all** [1] - 7:2
**category** [1] - 7:14
**certain** [2] - 10:23, 13:7
**certainly** [4] - 3:25, 7:21, 9:6, 15:16
**certify** [2] - 16:23, 17:2
**chambers** [1] - 2:2
**chance** [2] - 2:8, 11:3
**charge** [1] - 8:3
**chat** [1] - 10:25
**checklist** [1] - 13:2

**choice** [1] - 8:1
**CHRISTY** [1] - 1:3
**Circuit** [1] - 7:18
**circumstance** [1] - 7:11
**citation** [1] - 4:10
**civil** [1] - 2:5
**CLARKSBURG** [1] - 1:2
**Clarksburg** [1] - 1:13
**class** [1] - 12:2
**classes** [1] - 3:13
**client's** [1] - 13:17
**close** [1] - 3:8
**closer** [1] - 8:10
**CNTY** [1] - 14:4
**collate** [1] - 9:19
**college** [1] - 3:12
**combined** [2] - 2:15, 2:23
**coming** [2] - 3:18, 14:22
**commenced** [1] - 2:1
**completely** [1] - 14:21
**comply** [1] - 17:2
**computer** [1] - 1:25
**computer-aided** [1] - 1:25
**concerns** [4] - 2:9, 5:22, 6:6, 6:7
**concluded** [1] - 16:19
**conduct** [1] - 10:22
**CONFERENCE** [1] - 1:11
**conference** [1] - 17:3
**confrontational** [4] - 4:21, 5:5, 5:9, 5:19
**confrontational..** [1] - 4:25
**considered** [3] - 3:14, 4:24, 5:19
**consistent** [1] - 13:9
**contemplates** [1] - 5:1
**convenient** [1] - 12:22
**conversation** [1] - 2:4
**conversations** [2] - 3:4, 12:6
**copier** [2] - 11:12, 11:13
**copy** [3] - 9:21, 10:6, 11:7
**correct** [2] - 9:6, 16:24
**counsel** [9] - 2:6, 2:8, 3:22, 9:21, 12:9, 12:17, 12:18, 13:7
**County** [3] - 3:6, 4:16, 8:25
**couple** [1] - 11:11
**course** [7] - 6:24, 7:1,

8:2, 8:5, 11:10, 11:21, 13:15
**COURT** [41] - 1:1, 2:3, 2:12, 2:21, 2:24, 3:5, 3:16, 3:19, 4:12, 4:21, 5:10, 5:18, 6:2, 6:5, 6:9, 6:20, 7:7, 7:15, 7:23, 8:16, 9:15, 9:17, 9:20, 9:25, 10:4, 10:12, 10:20, 11:6, 11:9, 12:2, 14:2, 14:22, 14:25, 15:14, 15:16, 15:23, 16:1, 16:5, 16:7, 16:8, 16:13
**Court** [10] - 2:5, 2:7, 2:16, 8:19, 9:21, 10:18, 15:13, 16:22, 17:3, 17:9
**Court's** [14] - 2:6, 2:9, 3:20, 4:5, 4:9, 5:23, 6:21, 8:11, 8:23, 10:24, 13:6, 13:10, 15:8, 15:10
**courtroom** [1] - 12:15
**cover** [2] - 8:2, 8:3
**covered** [3] - 4:2, 7:3, 7:4
**covers** [1] - 5:21
**Cranberry** [1] - 1:23
**criminal** [2] - 3:13, 13:22
**CRIMINAL** [1] - 1:3
**custody** [1] - 5:8
**Cutter** [3] - 16:6, 16:21, 17:8

**D**

**DAVID** [1] - 1:8
**deal** [1] - 15:3
**defendant** [4] - 8:15, 13:14, 14:7, 14:11
**Defendant** [2] - 1:10, 2:21
**defense** [1] - 9:21
**degree** [1] - 9:5
**deliberate** [2] - 8:7, 12:1
**deliberations** [1] - 11:25
**demonstrates** [1] - 9:12
**department** [4] - 4:8, 4:18, 4:19, 5:13
**Department** [2] - 3:6, 4:16
**deposition** [1] - 15:2
**determination** [1] - 11:2

**different** [2] - 6:22, 12:6
**dire** [17] - 2:6, 2:7, 2:9, 2:14, 2:18, 3:20, 5:23, 6:11, 6:21, 7:9, 7:20, 8:4, 8:10, 8:14, 8:18, 10:22, 10:24
**directly** [1] - 7:3
**disillusioned** [1] - 3:3
**distance** [1] - 12:12
**distanced** [1] - 16:15
**distinction** [1] - 12:3
**DISTRICT** [2] - 1:1, 1:1
**District** [5] - 1:12, 16:22, 16:23, 17:9, 17:10
**distrust** [3] - 6:11, 6:13, 6:17
**documents** [1] - 9:19
**Doe** [1] - 4:15
**down** [3] - 13:9, 15:20, 16:8
**downstairs** [2] - 12:16, 14:25
**draw** [1] - 7:20
**drugs** [2] - 4:16, 4:17
**duplicates** [1] - 9:8
**during** [4] - 8:10, 11:20, 12:13, 14:8
**Durst** [8] - 1:21, 2:12, 3:20, 5:2, 6:6, 8:13, 9:15, 10:12
**DURST** [24] - 2:13, 2:22, 2:25, 3:11, 3:17, 4:4, 4:13, 5:4, 5:11, 6:7, 6:10, 7:6, 7:8, 8:15, 9:16, 10:13, 11:24, 14:24, 15:6, 15:15, 15:21, 15:24, 16:3, 16:10

### E

**early** [1] - 13:16
**East** [1] - 15:21
**efficient** [1] - 16:2
**eight** [7] - 11:15, 11:18, 11:22, 11:23, 12:1, 12:4, 12:10
**either** [2] - 2:15, 12:13
**eliminate** [1] - 8:22
**emailed** [1] - 2:6
**employed** [1] - 3:10
**employment** [1] - 6:23
**EMT** [1] - 8:25
**encounter** [1] - 5:25
**end** [2] - 11:24, 13:24
**ended** [1] - 6:24
**enforcement** [16] - 2:20, 3:1, 3:2, 3:8,

**3**:10, 3:14, 4:22, 5:16, 5:20, 6:1, 6:14, 6:18, 9:4, 9:5, 9:12, 9:13
**entire** [1] - 14:12
**entitled** [1] - 7:13
**essentially** [1] - 5:13
**estate** [1] - 1:5
**evidence** [2] - 14:6, 14:17
**example** [1] - 4:14
**exchange** [1] - 13:7
**excluding** [2] - 7:19, 7:22
**excuse** [1] - 12:4
**excused** [2] - 11:20, 11:25
**exhibited** [1] - 8:21
**existing** [1] - 7:20
**expect** [1] - 11:12
**experience** [3] - 4:8, 6:15, 6:16
**experiences** [1] - 5:12
**explore** [1] - 6:19
**extent** [1] - 15:6

### F

**Facebook** [4] - 9:1, 9:22, 10:7, 10:21
**facing** [1] - 12:17
**fact** [1] - 13:21
**facts** [1] - 5:7
**fair** [4] - 4:1, 7:1, 9:23, 11:1
**falls** [1] - 7:14
**family** [6] - 2:19, 3:1, 3:7, 4:10, 4:24, 5:15
**far** [1] - 4:2
**favorable** [1] - 9:13
**federal** [1] - 11:13
**fees** [1] - 17:2
**few** [1] - 10:14
**filed** [1] - 11:9
**fine** [1] - 6:1
**finish** [1] - 12:13
**finished** [1] - 12:10
**first** [1] - 12:2
**five** [2] - 10:3, 12:5
**Flanagan** [1] - 1:22
**floorboard** [1] - 14:10
**follow** [2] - 2:7, 8:1
**follow-ups** [1] - 2:7
**force** [4] - 7:9, 7:13, 13:15, 14:15
**foregoing** [1] - 16:24
**form** [1] - 2:19
**format** [1] - 17:2
**former** [1] - 6:23

**Forsyth** [3] - 2:5, 3:7, 15:2
**FORSYTH** [1] - 1:8
**foundation** [2] - 13:20, 14:1
**four** [2] - 2:14, 7:7, 7:8
**Fourth** [1] - 7:18
**Fowler** [1] - 1:22
**frame** [1] - 10:16
**frankly** [1] - 6:20
**free** [1] - 16:15
**friends** [1] - 3:8
**front** [1] - 5:1

### G

**general** [3] - 6:11, 6:13, 6:24
**gentleman** [1] - 10:22
**Given** [1] - 17:6
**given** [5] - 10:7, 12:6, 12:9, 14:11, 14:15
**Glasser** [1] - 1:18
**goal** [1] - 3:22
**government** [1] - 11:13
**Greenbag** [1] - 1:16
**grime's** [1] - 10:7
**Grimes** [4] - 8:25, 9:3, 10:2, 10:17
**guess** [1] - 5:6
**guesstimate** [1] - 12:22
**guys** [2] - 12:15, 15:4
**guys'** [1] - 15:17

### H

**hand** [2] - 8:23, 17:6
**handle** [1] - 2:7
**hands** [1] - 3:12
**hands-on** [1] - 3:12
**hard** [1] - 3:9
**Harrison** [1] - 8:25
**hatred** [2] - 6:11, 6:12
**heads** [1] - 11:6
**hear** [1] - 13:18
**heard** [3] - 14:5, 14:7, 14:8
**hereby** [1] - 16:23
**history** [1] - 13:22
**Hogan** [1] - 1:18
**Honor** [27] - 2:11, 2:13, 2:18, 2:25, 3:18, 4:4, 4:14, 5:6, 5:24, 6:8, 7:17, 8:15, 8:17, 9:8, 9:16, 9:24, 10:11, 10:13, 11:5, 13:4, 13:5, 14:3, 14:24, 15:6, 15:22,

16:3, 16:10
**Honorable** [1] - 1:12
**housekeeping** [1] - 13:6
**humanly** [1] - 3:23

### I

**identified** [1] - 14:4
**immediate** [1] - 2:19
**impartial** [1] - 4:1
**importantly** [1] - 13:20
**impression** [1] - 9:13
**inclination** [1] - 12:12
**inclined** [2] - 10:5, 10:22
**including** [1] - 6:22
**indicated** [1] - 13:17
**individual** [2] - 1:9, 9:9
**information** [4] - 3:23, 9:1, 10:8, 13:20
**inherent** [2] - 9:5, 9:12
**instance** [1] - 9:11
**instruct** [1] - 7:23
**instruction** [1] - 9:6
**instructions** [2] - 8:5, 8:6
**interacted** [1] - 5:17
**interim** [1] - 15:3
**invisible** [1] - 16:12
**issue** [3] - 4:19, 8:10, 10:8
**issued** [1] - 4:10
**issues** [1] - 15:17
**items** [1] - 9:2

### J

**Jane** [1] - 4:15
**Jeep** [1] - 14:13
**Jill** [2] - 16:21, 17:8
**job** [1] - 3:25
**Jontz** [1] - 1:5
**Judge** [3] - 1:12, 2:1
**judgments** [1] - 8:2
**Judicial** [1] - 17:3
**July** [2] - 13:24, 15:18
**June** [2] - 13:23, 13:24
**Juror** [1] - 10:4
**juror** [5] - 7:14, 7:22, 8:20, 10:2, 10:10
**juror's** [1] - 9:22
**jurors** [8] - 2:16, 7:19, 8:18, 8:20, 11:15, 11:18, 12:3, 12:16
**jurors'** [1] - 16:2
**jury** [15] - 3:24, 3:25, 4:1, 4:7, 7:23, 8:3, 8:5, 8:6, 8:11, 12:10,

12:13, 12:19, 15:1, 16:11, 16:16
**justice** [1] - 3:13

### K

**kind** [5] - 3:15, 3:17, 4:6, 5:11, 15:7
**Kleeh** [1] - 1:12
**Kleeh's** [1] - 2:1
**knows** [1] - 12:9

### L

**last** [1] - 7:8
**Last** [1] - 14:5
**law** [19] - 2:19, 3:1, 3:2, 3:8, 3:10, 3:14, 4:11, 4:22, 5:16, 5:20, 5:25, 6:14, 6:17, 7:25, 9:4, 9:12, 9:13, 14:17
**least** [1] - 11:19
**leave** [4] - 3:19, 7:4, 8:7, 8:12
**leaves** [1] - 5:13
**Legal** [1] - 1:15
**length** [3] - 8:2, 12:6, 14:12
**level** [1] - 7:22
**limited** [1] - 4:19
**literally** [3] - 9:2, 9:3, 9:9
**litigation** [1] - 14:12
**LLP** [1] - 1:18
**log** [2] - 13:10, 13:12
**logistic** [1] - 13:2
**look** [3] - 9:1, 10:16, 15:3
**looking** [3] - 5:1, 9:11, 10:13
**loudly** [1] - 16:6
**lunchtime** [1] - 12:20

### M

**maintain** [1] - 16:11
**MAR** [1] - 14:4
**Marion** [2] - 3:6, 4:16
**masks** [2] - 16:12, 16:16
**matter** [1] - 13:6
**mean** [1] - 5:11
**media** [1] - 6:23
**member** [8] - 2:19, 3:1, 3:7, 4:8, 4:9, 4:10, 4:23, 5:16
**members** [1] - 4:7
**mention** [3] - 14:8, 14:9, 14:14

3

mentioned [1] - 11:16
middle [1] - 12:19
might [1] - 12:7
mindful [1] - 8:10
mine [1] - 8:8
minimum [1] - 10:17
minutes [3] - 10:14,
12:23, 14:6
Morgantown [5] -
1:16, 1:18, 1:19,
1:22, 1:23
morning [3] - 2:4,
3:23, 12:20
most [3] - 9:6, 10:15,
14:18
motion [3] - 10:9,
10:18, 11:4
mouth [1] - 5:14
move [3] - 12:17,
12:18, 12:23
MR [14] - 2:11, 5:24,
6:4, 7:17, 8:17, 9:19,
9:24, 10:2, 10:11,
11:5, 11:8, 13:4,
13:5, 14:3
MS [24] - 2:13, 2:22,
2:25, 3:11, 3:17, 4:4,
4:13, 5:4, 5:11, 6:7,
6:10, 7:6, 7:8, 8:15,
9:16, 10:13, 11:24,
14:24, 15:6, 15:15,
15:21, 15:24, 16:3,
16:10

## N

name [1] - 9:25
Nathan [1] - 1:21
nature [1] - 9:7
necessarily [3] - 2:22,
5:8, 10:20
necessary [3] - 2:8,
7:18, 16:9
need [5] - 2:24, 3:21,
4:1, 7:21, 13:3
needs [1] - 11:20
news [1] - 6:15
NO [1] - 1:3
none [1] - 8:15
normal [3] - 12:2,
12:15, 13:1
Northern [2] - 16:23,
17:9
NORTHERN [1] - 1:1
noted [3] - 4:3, 7:5,
8:12
nothing [4] - 9:2, 13:4,
13:22, 14:10
number [17] - 2:5,
2:17, 4:4, 4:5, 4:6,

4:9, 4:20, 6:9, 6:10,
6:21, 7:7, 7:8, 7:9,
10:3, 10:4

## O

object [1] - 14:18
objected [1] - 13:11
objection [7] - 2:11,
4:2, 7:5, 8:12, 10:5,
13:13, 13:14
objections [2] - 2:9,
2:13
obviously [5] - 3:5,
6:13, 7:23, 10:7,
15:9
OF [1] - 1:1
offered [1] - 14:18
officer [2] - 5:20, 7:10
officers [1] - 6:12
Official [2] - 16:22,
17:9
official [1] - 1:8
once [1] - 12:10
one [26] - 2:17, 2:22,
3:20, 4:3, 4:4, 4:13,
5:3, 5:5, 6:6, 6:8,
7:5, 7:8, 7:16, 8:7,
8:12, 8:13, 8:20, 9:2,
9:11, 10:24, 11:15,
11:16, 11:25, 13:5,
13:10
one-on-one [1] -
10:24
open [3] - 4:25, 5:3,
6:24
open-ended [1] - 6:24
opening [2] - 14:22,
15:10
openings [2] - 12:21,
15:4
opinions [1] - 7:2
opposite [1] - 14:21
order [4] - 2:17, 14:18,
15:8, 15:10
orders [3] - 11:16,
13:7, 15:18
organization [1] - 6:23
overcome [1] - 9:6
own [1] - 8:1

## P

page [3] - 9:1, 9:23,
10:21
paired [1] - 13:8
panel [1] - 4:7
parameters [1] - 15:7
Parrish [2] - 15:20,
15:21

part [2] - 10:6, 14:19
particular [4] - 3:21,
7:1, 10:9, 13:10
particularly [2] - 8:9,
16:2
pattern [1] - 12:12
people [1] - 7:11
per [1] - 7:19
perceived [1] - 14:13
person [2] - 7:12, 12:7
personal [5] - 6:15,
6:16, 7:2, 8:8, 10:7
Personal [1] - 1:4
Philip [1] - 1:5
philosophical [1] - 7:2
pick [1] - 3:24
Plaintiff [2] - 1:6, 1:15
plaintiff [2] - 13:4,
13:18
plaintiff's [2] - 9:20,
13:7
plaintiffs [1] - 2:10
play [2] - 5:7, 15:4
PLLC [2] - 1:15, 1:22
podium [1] - 12:18
Poe [1] - 1:22
point [4] - 11:2, 13:3,
14:15, 16:14
POL [1] - 14:4
police [5] - 3:3, 3:15,
6:12, 7:10, 13:17
politely [1] - 11:13
pool [1] - 3:24
possession [1] - 4:15
possible [2] - 3:24,
16:2
posted [1] - 9:10
posts [4] - 9:2, 9:4,
10:14
potential [2] - 3:11,
8:18
potentially [2] - 2:15,
14:24
practice [1] - 8:8
PRE [1] - 1:11
PRE-TRIAL [1] - 1:11
preliminary [2] - 8:4,
10:9
prescribed [1] - 17:3
pretrial [1] - 2:4
previous [1] - 14:21
Prince [1] - 1:17
pro [1] - 9:4
proceed [1] - 11:21
proceedings [1] -
16:25
Proceedings [4] -
1:11, 1:25, 2:1,
16:19

produced [1] - 1:25
Professional [1] -
16:21
proper [1] - 13:25
proposed [5] - 2:6,
2:9, 2:14, 2:18, 8:20
proposing [1] - 2:16
prospective [1] - 9:22
provide [1] - 13:19
provided [1] - 9:21
publically [1] - 8:21
pull [1] - 15:2
Pullin [1] - 1:22
purposes [1] - 12:4
pursuit [2] - 15:11,
15:19
put [1] - 11:13

## Q

questioning [2] -
16:14, 16:16
questions [8] - 2:14,
3:21, 6:22, 6:25, 8:9,
9:7, 10:24, 10:25
quick [1] - 2:4
quote [1] - 14:5

## R

radio [4] - 13:7, 13:10,
13:11, 13:19
raising [1] - 10:8
Rd [1] - 1:19
reaching [3] - 13:18,
14:9, 14:20
read [1] - 9:17
realtime [1] - 1:25
reason [6] - 4:14,
5:14, 6:14, 6:25,
14:11, 14:15
receives [1] - 3:9
recent [3] - 11:16,
13:6, 14:18
reconfigure [1] -
12:14
reconfigured [1] -
13:1
record [4] - 2:3, 9:20,
10:6, 16:5
recorded [1] - 1:25
recording [1] - 14:4
recordings [1] - 13:8
referring [1] - 15:11
refuted [1] - 13:16
regard [1] - 6:8
regardless [1] - 7:12
Registered [1] - 16:21
relate [1] - 13:23
relevant [2] - 2:25,

13:25
religious [1] - 7:2
rely [1] - 13:14
remembering [1] -
3:22
reminded [1] - 16:6
remove [3] - 6:12,
16:12, 16:15
removing [1] - 3:9
replug [1] - 12:23
reported [1] - 17:1
REPORTER [1] - 16:7
Reporter [3] - 16:21,
16:22, 17:9
Representative [1] -
1:4
research [1] - 8:20
respect [1] - 6:25
respond [1] - 10:23
rest [1] - 12:21
revision [1] - 5:22
revisions [1] - 5:2
revisit [1] - 15:1
RHOADES [1] - 1:3
Rhoades [6] - 1:5, 2:4,
13:12, 13:21, 14:14,
15:11
rise [1] - 7:22
Road [1] - 1:16
role [1] - 8:11
roll [1] - 12:24
RPR [1] - 17:8
rule [2] - 7:19, 14:17
ruling [1] - 10:18
rulings [1] - 13:10
Run [3] - 15:20, 15:21,
15:22
Ryan [1] - 1:15

## S

safe [1] - 12:11
save [1] - 8:22
scenario [1] - 3:9
scope [3] - 6:21, 7:20,
8:4
script [1] - 15:16
se [1] - 7:19
seal [2] - 10:6, 11:9
seat [6] - 4:1, 11:15,
11:18, 11:23, 12:4,
12:9
seating [1] - 12:12
seats [1] - 13:18
second [2] - 4:3, 4:4,
9:17
see [1] - 14:16
selecting [1] - 8:11
selection [2] - 12:10,

12:13, 12:19, 15:1
**set** [4] - 11:1, 12:16, 12:25, 16:14
**seven** [1] - 12:5
**sheriff's** [4] - 4:8, 4:18, 4:19, 5:13
**Sheriff's** [2] - 3:6, 4:16
**shooting** [1] - 14:6
**shows** [1] - 9:5
**sic** [1] - 13:23
**single** [2] - 9:3, 9:9
**sit** [1] - 6:25
**situation** [5] - 4:22, 5:5, 5:7, 5:9, 5:20
**six** [4] - 11:16, 11:19, 11:21, 12:5
**skip** [1] - 12:3
**slow** [1] - 16:8
**slowly** [1] - 16:6
**social** [2] - 6:23, 12:11
**sole** [1] - 14:11
**someone** [6] - 3:1, 3:9, 3:11, 4:16, 6:13, 11:20
**sort** [2] - 12:3, 12:18
**specific** [1] - 8:9
**specifically** [4] - 8:17, 13:11, 13:16, 14:3
**specifics** [2] - 3:6, 7:24
**spot** [1] - 12:24
**Sq** [1] - 1:23
**staff** [1] - 9:19
**standard** [1] - 10:25
**start** [4] - 2:10, 11:22, 12:14, 12:21
**state** [1] - 13:17
**State** [1] - 3:14
**statement** [4] - 13:17, 14:8, 14:21, 15:11
**statements** [1] - 14:23
**States** [3] - 16:22, 17:4, 17:9
**states** [2] - 13:12, 14:4
**STATES** [1] - 1:1
**stenotypy** [1] - 17:1
**still** [1] - 13:8
**stop** [2] - 4:20, 16:8
**stopped** [1] - 4:10
**strike** [2] - 10:9, 10:19
**strong** [1] - 8:21
**styled** [2] - 1:12, 16:25
**substitute** [1] - 8:1
**sufficiently** [2] - 8:3, 16:15
**suggest** [1] - 7:4
**suggested** [2] - 4:12, 5:6
**suggestions** [2] -

4:25, 5:3
**Suite** [1] - 1:19
**supportive** [1] - 9:4
**suspect** [2] - 5:8, 7:10

**T**

**table** [2] - 12:19, 15:18
**tables** [1] - 12:17
**taste** [1] - 5:13
**ten** [1] - 14:6
**testimony** [1] - 13:16
**THE** [39] - 2:3, 2:12, 2:21, 2:24, 3:5, 3:16, 3:19, 4:12, 4:21, 5:10, 5:18, 6:2, 6:5, 6:9, 6:20, 7:7, 7:15, 7:23, 8:16, 9:15, 9:17, 9:20, 9:25, 10:4, 10:12, 10:20, 11:6, 11:9, 12:2, 14:2, 14:22, 14:25, 15:14, 15:16, 15:23, 16:1, 16:5, 16:8, 16:13
**thesaurus** [1] - 4:25
**thinks** [1] - 11:1
**Thomas** [1] - 1:12
**three** [2] - 6:9, 6:10
**Tiffany** [1] - 1:21
**today** [2] - 12:14, 12:24
**tomorrow** [2] - 12:14, 12:25
**towards** [2] - 9:12, 14:10
**traffic** [2] - 4:11, 4:20
**training** [7] - 2:20, 3:2, 3:10, 3:12, 3:13, 3:14, 3:15
**transcript** [3] - 15:2, 16:24, 17:2
**Transcript** [1] - 1:25
**transcription** [1] - 1:25
**translation** [1] - 1:25
**transmission** [1] - 14:7
**Travis** [1] - 1:17
**treat** [2] - 11:18, 11:20
**trial** [6] - 3:23, 11:21, 11:24, 12:7, 14:18, 15:17
**TRIAL** [1] - 1:11
**try** [2] - 8:8, 12:20
**trying** [2] - 4:6, 5:6
**Tuesday** [1] - 1:12
**turned** [1] - 15:19
**two** [4] - 9:3, 11:16, 11:19, 12:7

**two-person** [1] - 12:7
**type** [1] - 3:9

**U**

**ultimate** [1] - 8:10
**Umina** [8] - 1:15, 1:15, 5:22, 7:15, 9:23, 10:8, 11:7, 14:2
**UMINA** [13] - 2:11, 5:24, 6:4, 7:17, 8:17, 9:19, 9:24, 10:2, 10:11, 11:5, 11:8, 13:4, 14:3
**under** [3] - 10:6, 11:9, 17:6
**understood** [3] - 3:19, 6:20, 7:15
**unfriendly** [2] - 4:24, 5:25
**UNITED** [1] - 1:1
**United** [3] - 16:22, 17:4, 17:9
**unless** [1] - 10:5
**unpleasant** [3] - 5:10, 5:20, 6:2
**unplug** [1] - 12:23
**up** [8] - 6:3, 11:4, 11:6, 12:16, 12:25, 13:3, 14:22, 16:14
**ups** [1] - 2:7
**utilized** [1] - 14:7
**utilizing** [2] - 1:25, 14:15

**V**

**vehicle** [1] - 13:24
**violating** [1] - 4:11
**VIRGINIA** [1] - 1:1
**Virginia** [3] - 1:13, 16:23, 17:10
**voir** [17] - 2:6, 2:7, 2:9, 2:14, 2:18, 3:20, 5:23, 6:10, 6:21, 7:9, 7:20, 8:4, 8:10, 8:14, 8:17, 10:22, 10:24

**W**

**wants** [1] - 8:19
**ways** [1] - 6:22
**weapon** [4] - 13:23, 14:10, 14:13, 14:16
**weeds** [1] - 4:2
**WEST** [1] - 1:1
**West** [3] - 1:13, 16:23, 17:10
**winning** [1] - 3:25
**witnesses** [2] - 16:14,

16:17
**word** [2] - 6:4, 6:12
**wrongfully** [2] - 4:18, 5:15
**WV** [3] - 1:16, 1:19, 1:23

**Y**

**years** [1] - 9:10
**yesterday** [1] - 2:5