UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG
- - -

CHRISTY J. RHOADES, in her                CIVIL ACTION NO. 1:18-CV-186
capacity as the Administratrix
and Personal Representative of
the estate of Philip Jontz
Rhoades,

                    Plaintiff,

V.

DAVID FORSYTH, in his official
and individual capacity,

                    Defendant.

                         - - -
        Proceedings had in the Jury Trial, of the above-styled
action on Tuesday, April 6, 2021, before the Honorable Judge
Thomas S. Kleeh, District Judge, at Clarksburg, West Virginia.
                         - - -

APPEARANCES:
For the Plaintiff:              Ryan J. Umina
                               Umina Legal, PLLC
                               125 Greenbag Road
                               Morgantown, WV 26501

                               Travis Austin Prince
                               Benjamin J. Hogan
                               Bailey & Glasser, LLP - Morgantown
                               6 Canyon Rd., Suite 200
                               Morgantown, WV 26508


For the Defendant:             Tiffany R. Durst
                               Nathan A. Carroll
                               Pullin Fowler Flanagan Brown & Poe
                               PLLC - Morgantown
                               2414 Cranberry Sq.
                               Morgantown, WV 26508


        Proceedings recorded utilizing realtime translation.
Transcript produced by computer-aided transcription.

```
 1       INDEX
 2       OPENING STATEMENT
 3       By Mr. Umina................................176
 4       By Ms. Durst................................187
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1    (Voir dire was conducted on April 6, 2021, and a jury was

2    impaneled and sworn.  Transcript filed under seal.)

3    (The following transpired in open court outside the

4    hearing of the jury at 12:58 p.m.)

12:58:11  5    THE COURT:  Please be seated.  I forgot to mention I

12:58:17  6    think it's always a good idea to stand when the jury comes in

12:58:20  7    and out, so I mention that, while everybody is all in full

12:58:24  8    compliance.  Why don't you all plan to be back here in the

12:58:27  9    courtroom at 2:00, and we will take up anything we need to

12:58:31  10    before openings.  But if counsel would be back at 2:00, we

12:58:38  11    will get our ducks in a row, and then we will get started with

12:58:42  12    openings at 2:15 promptly.  Anything we need to take up at

12:58:42  13    this point in time?

12:58:42  14    Mr. Umina.

12:58:47  15    MR. UMINA:  No, Your Honor.

12:58:47  16    THE COURT:  Ms. Durst.

12:58:47  17    MS. DURST:  No, Your Honor.

12:58:48  18    THE COURT:  All right.  We will see you guys at 2:00

12:58:51  19    then.  Thank you.

12:58:51  20    (Recess taken at this time 12:58 p.m. - 1:59 p.m.)

12:58:51  21    (The following transpired outside the hearing of the jury

01:59:34  22    in open court.)

02:00:53  23    THE COURT:  Thank you, everyone.  Please be seated.

02:01:00  24    And again, we are going to fix that for trial, but we are

02:01:04  25    going to put you all back where you belong.  We will have a

|          |    |
|----------|----|
| 02:01:08 | 1  |
| 02:01:13 | 2  |
| 02:01:17 | 3  |
| 02:01:21 | 4  |
| 02:01:25 | 5  |
| 02:01:25 | 6  |
| 02:01:28 | 7  |
| 02:01:32 | 8  |
| 02:01:35 | 9  |
| 02:01:39 | 10 |
| 02:01:42 | 11 |
| 02:01:45 | 12 |
| 02:01:50 | 13 |
| 02:01:57 | 14 |
| 02:01:57 | 15 |
| 02:02:04 | 16 |
| 02:02:07 | 17 |
| 02:02:10 | 18 |
| 02:02:13 | 19 |
| 02:02:15 | 20 |
| 02:02:19 | 21 |
| 02:02:24 | 22 |
| 02:02:29 | 23 |
| 02:02:31 | 24 |
| 02:02:34 | 25 |

podium.  It will be in its usual spot behind -- sort of behind counsel table, but I think we will have sufficient space to be able to be set up more normal, again, given that we will have all of our jurors in the box.  I think that makes the most sense.

My logistical plan; we're going to discuss that one issue, then we will bring the jury back in.  I will get through our preliminary instructions.  This will come as a great surprise to all of you, they are lengthy.  So we'll do that, and then we will probably take a break, give you guys a chance to get set up and ready for openings and roll from there, so we can call a witness and get started.  I don't know who is first.  We'll do openings and then we can go from there.

My plan, also given Mr. McCartney's vaccine appointment tomorrow, will be to start at 10:00 with trial.  The building will be open, of course, you all can be here as early as you like, but I will ask the jury to be here at 10:00.  And if he is running late, we will just wait for him and keep our fingers crossed he doesn't have any adverse reactions.  If he does, we will deal with that when we need to.  But that would be my plan, is to start at 10:00 tomorrow to accommodate Mr. McCartney's schedule at that point.

So my understanding, based on our brief discussion upstairs, basically is your motion, Mr. Umina, with respect to

02:02:40   1   reference and radio traffic to the belief that Mr. Rhoades was

02:02:42   2   armed during the pursuit?

02:02:44   3        MR. UMINA:  Yes, Your Honor.  It's merely the

02:02:47   4   transmission itself.  Again, it's an individual saying, "Last

02:02:54   5   I heard he was armed."  So we have hearsay first off, because

02:02:59   6   we have no idea where the source of that information came

02:03:02   7   from.  So we object on those grounds.

02:03:04   8        And then, again, all of the other case law and

02:03:07   9   evidentiary rules, the calculus used at the moment force was

02:03:11  10   used.  And in this case, again, we know from the West Virginia

02:03:16  11   State Police statement and deposition testimony, that was not

02:03:18  12   part of his calculus, that relief.  He never once relied on

02:03:22  13   that relief, so for that reason --

02:03:25  14        THE COURT:  Now, there was testimony in Defendant

02:03:29  15   Forsyth's deposition that he reached toward the floorboard

02:03:32  16   before the shooting; is that correct?

02:03:34  17        MR. UMINA:  Yes, Your Honor.  And we have an issue if

02:03:36  18   he testifies to that.

02:03:36  19        THE COURT:  Right.

02:03:38  20        MR. UMINA:  But it is specifically the radio traffic

02:03:40  21   because, again, we don't have any indication that was part of

02:03:42  22   his calculus.  Reaching the floorboard, that's a completely

02:03:45  23   separate event, certainly can be testified to.

02:03:48  24        THE COURT:  All right.  Ms. Durst.

02:03:50  25        MS. DURST:  Actually, Mr. Carroll, Your Honor.

02:03:50   1        THE COURT:  Oh, Mr. Carroll, my apologies.

02:03:53   2        MR. CARROLL:  That's quite all right.

02:03:54   3        THE COURT:  I mean no offense if I just get in a

02:03:57   4   pattern of yelling the wrong lawyer names.  My apologies.

02:04:01   5        MR. CARROLL:  That's quite all right, Your Honor.  I

02:04:03   6   wanted to address the hearsay argument.  I don't think that

02:04:06   7   this is excluded under hearsay because it's presented for the

02:04:10   8   effect upon Defendant Forsyth.  It's not presented for the

02:04:11   9   purpose of showing that Mr. Rhoades was armed, simply that our

02:04:17  10   deputy was responding to a call, and that is something that a

02:04:19  11   reasonable officer would have taken into account.

02:04:21  12        I think based off of the Court's prior rulings, the prior

02:04:25  13   history, the prior incident, those are things that have the

02:04:28  14   risk of prejudice.  I think the Court found that those may be

02:04:32  15   relevant; however, prejudice is the reason that they would be

02:04:34  16   excluded.  Here we don't have that issue.  The fact whether or

02:04:38  17   not Deputy Forsyth believed that the -- Mr. Rhoades was armed,

02:04:42  18   there is no prior criminal history.  There is no -- we're not

02:04:46  19   trying to prove to you -- we're simply trying to show what a

02:04:50  20   reasonable officer would have perceived under the

02:04:52  21   circumstances, and I think that's appropriate under the case

02:04:54  22   law.

02:04:55  23        THE COURT:  When in the timeline of events was this

02:04:58  24   utterance made on the radio traffic?

02:05:00  25        MR. CARROLL:  I believe it was approximately ten

02:05:02    1   minutes before the --

02:05:02    2           THE COURT:  The shooting?

02:05:03    3           MR. CARROLL:  -- the shooting.  That's correct, Your

02:05:05    4   Honor.

02:05:05    5           THE COURT:  And what exactly was said?

02:05:06    6           MR. CARROLL:  I believe the exact statement here is,

02:05:09    7   The last they heard he was armed.  If the Court would prefer,

02:05:12    8   I believe we could put it in and play it for you.

02:05:15    9           THE COURT:  I am sure you have transcripts of it.  I

02:05:17   10   will take your word for that.

02:05:20   11           MR. CARROLL:  Your Honor, I do not think we have made

02:05:22   12   a transcript specifically of this.  We intend to play the

02:05:25   13   videos rather than use a transcript just to make sure the

02:05:28   14   record is clear.

02:05:28   15           THE COURT:  I will certainly take you at your word,

02:05:30   16   Mr. Carroll, as to what the radio traffic was.

02:05:31   17      And who made that statement?

02:05:33   18           MR. CARROLL:  I believe it was Deputy Mundell, Your

02:05:40   19   Honor.  It was not -- if it's helpful to the Court, it was

02:05:45   20   Deputy Wheeler, Deputy Wesley Wheeler, who commenced the

02:05:50   21   pursuit in this case, and it was another deputy who chimed in

02:05:53   22   to remind the remainder of the deputies on the chase that the

02:05:55   23   last information was that Mr. Rhoades was armed.

02:05:58   24           THE COURT:  And what's the basis for that statement?

02:06:00   25           MR. CARROLL:  That is not something that I can

02:06:03    1    present here at this time, Your Honor.  However, I think more

02:06:07    2    important is the effect on the listener as opposed to proving

02:06:10    3    the fact that Mr. Rhoades --

02:06:10    4         THE COURT:  Well, right, but if I deem this evidence

02:06:13    5    admissible Mr. Umina, I suspect, is going to pounce all over

02:06:20    6    Deputy Mundell -- is it Mundell?

02:06:23    7         MR. CARROLL:  Mundell.  I believe Mundell.

02:06:25    8         THE COURT:  -- as to what the basis of this statement

02:06:29    9    is, that, you know, "The last I heard he was armed."

02:06:35   10       Okay.  Anything further, Mr. Carroll?

02:06:37   11         MR. CARROLL:  Judge, the only other comment I would

02:06:40   12    make to that, Your Honor, I believe that the experts in this

02:06:42   13    case would agree that the deputies are trained to provide

02:06:44   14    information over the radio that is pertinent to the chase, and

02:06:47   15    that is information that should be relied on by the officers

02:06:49   16    who are participating.

02:06:50   17         THE COURT:  All right.  Okay.

02:06:51   18       Anything further, Mr. Umina?

02:06:52   19         MR. UMINA:  Your Honor, they just admitted to not

02:06:56   20    knowing the source of the information, the officer who

02:06:58   21    transmitted it, nor the officer who stated it.  And, again, I

02:07:02   22    will just leave it at that.  They have no idea of the source

02:07:05   23    of this information.

02:07:07   24         THE COURT:  No, I think you are exactly right,

02:07:09   25    Mr. Umina.  I think it will be a compelling cross-examination.

02:07:12   1   I will overrule plaintiff's objection for the specific basis

02:07:16   2   of the temporal proximity to the event here.  I don't believe

02:07:20   3   it's hearsay given the stated purpose for the evidence being

02:07:26   4   offered as to the state of mind of Defendant Forsyth, which,

02:07:29   5   again, is the whole reason we're here.

02:07:33   6        But, of course, you will be free to cross, as necessary,

02:07:37   7   all these witnesses.

02:07:39   8        Is Deputy Mundell slated to testify in person?

02:07:43   9             MR. CARROLL:  No, Your Honor.

02:07:44  10             THE COURT:  Okay.  All right.  Are you going to call

02:07:51  11   him, Mr. Umina?

02:07:52  12             MR. UMINA:  Your Honor, we don't have Deputy Mundell

02:07:53  13   under subpoena.  We can get him under subpoena, and get him in

02:07:57  14   here if they attempt to proffer this, but, yeah.  I mean...

02:08:02  15             THE COURT:  We don't need a firm commitment.  I am

02:08:05  16   just curious.

02:08:05  17             MR. UMINA:  Yeah.  Yeah.

02:08:06  18             THE COURT:  Understood.  Objection overruled.  Noted.

02:08:09  19   I find the evidence relevant, again, to the issue that remains

02:08:13  20   here.  I think I disagree with Mr. Carroll.  The Court's

02:08:17  21   exclusion of the other evidence we talked about, specifically

02:08:19  22   the July 25th events and incidents, I do not find it relevant

02:08:24  23   to the issues here, and any relevance that it may have

02:08:27  24   arguably had, was significantly and substantially outweighed

02:08:31  25   by a number of problematic concerns with respect to the jury.

02:08:36  1    But I do believe this evidence, although far from the

02:08:42  2    strongest, is relevant, given the foundation that's been

02:08:46  3    proffered here today.  So objection overruled, but noted.

02:08:49  4         Anything else we need to take up before we have the jury

02:08:52  5    come back in for preliminary instructions?

02:08:55  6         MS. DURST:  Yes, Your Honor.  It was just something I

02:08:56  7    wanted to make sure I put on the record before we started the

02:08:58  8    testimony.  I am well aware of the Court's order from April 4,

02:09:02  9    that addressed the numerous of motions in limine, but I will

02:09:06  10   kind of lump those into the July 25th incident and resulting

02:09:09  11   criminal charges.

02:09:10  12        But I just did want to make my record that I believe with

02:09:15  13   respect to the July 25th incident, that that information is

02:09:19  14   relevant, given the testimony from the plaintiff's own expert

02:09:23  15   in this case, Dennis Root.  Mr. Root testified in his

02:09:27  16   deposition that there are a number of factors that you

02:09:30  17   consider with respect to what is or is not considered a threat

02:09:35  18   when evaluating use of deadly force.  And one of those factors

02:09:41  19   is actions -- prior actions of the suspect.  So the

02:09:45  20   plaintiff's own expert has testified under oath in this case

02:09:49  21   that one of the factors that you take into consideration to

02:09:52  22   determine whether deadly force would be justified or not is

02:09:56  23   the prior actions of the suspect, so we believe that that

02:09:59  24   would make the July 25th incident relevant.  Again, I

02:10:04  25   understand the Court's ruling.  I just wanted to note that for

02:10:06   1      the record.

02:10:07   2           And lastly, Your Honor, and then I will sit down, with

02:10:10   3      regard to the criminal complaint filed against Mr. Rhoades

02:10:16   4      from the July 25th incident, specifically the attempted murder

02:10:20   5      on the police officer, I would note that that was previously

02:10:23   6      identified by the plaintiff in the designation of joint

02:10:29   7      exhibit that was filed with this court.  So the plaintiffs

02:10:33   8      previously identified that criminal complaint as not only

02:10:37   9      their exhibit, but a joint designation of exhibits.  So I

02:10:41   10     think that for them now to argue that that criminal complaint

02:10:44   11     is not relevant evidence when they previously identified it as

02:10:48   12     an exhibit, I think there is a waiver of that argument.  And I

02:10:52   13     just wanted to note that for the record, Your Honor.

02:10:55   14          THE COURT:  Record made.  Motion to reconsider

02:10:57   15     denied.  Anything else?

02:10:58   16          MS. DURST:  No, Your Honor.

02:10:59   17          THE COURT:  Mr. Umina.

02:11:00   18          MR. UMINA:  I guess, Your Honor, for vouching the

02:11:04   19     record here, I also contacted Ms. Durst after the fact.  That

02:11:09   20     was initially when the Monell claim was in play; therefore, we

02:11:12   21     were considering that as part of the case, you know,

02:11:16   22     consistent with this Court's rulings and the new scheduling

02:11:18   23     order and the lack of the Monell claims.  I believe the only

02:11:22   24     stipulated exhibit that we have now is the Marion County

02:11:25   25     Sheriff's Department use of force policy.  We have cleared

02:11:29   1    that up in advance of trial.

02:11:30   2         THE COURT:  Understood.  I certainly occasionally

02:11:33   3    suffered the same misbelief that the parties agreed with

02:11:37   4    respect to exhibits and evidence that that was the end all,

02:11:39   5    but I would like to interject myself every now and then as

02:11:42   6    part of my gatekeeping functions.  So consider the gate kept

02:11:46   7    for the reasons previously articulated, but the record is

02:11:49   8    made.

02:11:49   9         Anything further?

02:11:53  10         MS. DURST:  No, sir.

02:11:53  11         THE COURT:  Okay.  All right.  With that then, if I

02:11:56  12    could ask our court security officer to bring our jury back

02:11:59  13    in, please.  Thank you, sir.

02:13:26  14         (Jury returned to the courtroom, and the following

02:13:31  15    transpired in open court.)

02:13:36  16         THE COURT:  Thank you very much, ladies and

02:13:38  17    gentlemen.  You might be surprised how quickly you learn what

02:13:44  18    order you are seated in.  So that you know, from a logistical

02:13:45  19    standpoint, as promised, I do have some preliminary

02:13:48  20    instructions that we are going to go through now, and then we

02:13:52  21    will take our afternoon break, and after that you will hear

02:13:55  22    from counsel in this case with their opening statements.  And

02:13:59  23    then we will see where we are from that point.

02:14:02  24         We are about to commence the trial of this case.  And we

02:14:06  25    have talked a little bit about the details of the case during

02:14:09    1    our jury selection process.  Before we begin the substantive

02:14:14    2    phase of our trial, I do have some brief instructions about

02:14:17    3    certain matters that I think will help you better understand

02:14:19    4    what will be presented to you during the course of this trial.

02:14:23    5    I think it will also help you to know sort of the rules of the

02:14:25    6    road for you serving as jurors during the course of this

02:14:29    7    trial.

02:14:30    8         These preliminary instructions are intended only to serve

02:14:32    9    as an introduction to the trial of this case.  They are

02:14:36   10    certainly not a substitute for the more detailed instructions

02:14:39   11    on the law that you will hear at the close of the evidence in

02:14:42   12    this case, or the evidence you are going to receive during the

02:14:46   13    course of our trial.

02:14:49   14         The parties who bring a civil action in a case like this

02:14:53   15    are called plaintiffs.  And in this action the plaintiff is

02:14:55   16    Christy J. Rhoades.  She appears in her capacity as

02:14:59   17    administratrix and personal representative of the estate of

02:15:04   18    Philip Jontz Rhoades.

02:15:04   19         The parties against whom a civil action is brought are

02:15:06   20    called defendants.  And in this case, there is one defendant,

02:15:09   21    David Forsyth, in his official and individual capacity.

02:15:13   22         As I explained during our jury selection process, this is

02:15:16   23    a civil case.  The case will proceed in the following order:

02:15:21   24    Counsel for the plaintiffs may make an opening statement

02:15:24   25    outlining their client's case.  Counsel for the defendant may

02:15:27   1   then make an opening statement, or they could defer their

02:15:30   2   opening statement until the conclusion of the plaintiff's

02:15:32   3   case.  Neither party is required to make an opening statement.

02:15:37   4       I do need you to understand what a party says in an

02:15:39   5   opening statement is not evidence.  Instead, the opening

02:15:44   6   statement is designed to give the lawyers a chance to

02:15:46   7   introduce to you the evidence that that party intends to

02:15:51   8   produce or introduce during the course of this trial.

02:15:55   9       After opening statements, counsel for the plaintiff will

02:15:57   10  then proceed to introduce evidence in support of their claim.

02:16:01   11  At the conclusion of the plaintiff's case, the defendant may

02:16:04   12  introduce evidence.  The defendant, however, is not obligated

02:16:07   13  to introduce any evidence or to call any witnesses.  If the

02:16:11   14  defense does introduce evidence, however, plaintiff's counsel

02:16:14   15  may then introduce rebuttal evidence in response.

02:16:18   16      Following the conclusion of all the evidence, I will

02:16:20   17  instruct you as to what the law is that applies to this case.

02:16:25   18  The parties will then present closing arguments, telling you

02:16:28   19  what they believe the evidence has shown, and what inferences

02:16:31   20  they believe you as jurors can and should draw from the

02:16:34   21  evidence.  Again, what is said in closing arguments, just like

02:16:38   22  opening statements, is not evidence.  The arguments are

02:16:41   23  designed to present to you the contentions or positions of the

02:16:44   24  parties based upon the evidence produced during the trial.

02:16:49   25  The plaintiffs have the right to start and end closing

02:16:52   1    arguments.

02:16:54   2         After the instructions and arguments are concluded, you

02:16:56   3    will then retire to the jury room to consider your verdict.

02:17:00   4    You are to determine the facts of this case from all of the

02:17:03   5    testimony that you hear and such other evidence as is

02:17:06   6    submitted during the course of this trial.  You are the sole

02:17:09   7    and exclusive judges of the facts of this case.  And in that

02:17:13   8    field neither this Court nor anyone else may invade your

02:17:17   9    province.  On the other hand, and I emphasize this, you are

02:17:20   10   bound to accept the rules of law as set forth in my

02:17:24   11   instructions to you, whether you agree with those rules of law

02:17:27   12   or not, whether you believe the law should be other than what

02:17:30   13   is stated in this Court's instructions.

02:17:33   14        Under the law of the United States, a trial judge is

02:17:36   15   permitted to comment on the evidence in the case, either

02:17:39   16   during the course of the trial or while instructing the jury

02:17:42   17   at the conclusion of the trial before you retire to consider

02:17:44   18   your verdict.  Those comments by the Court are only

02:17:48   19   expressions of that Court's opinion as to the facts.  And on

02:17:53   20   such occasions the Court may comment on the evidence of the

02:17:55   21   case, you are at liberty to disregard the comments entirely

02:17:59   22   because in the final analysis, again, you jurors are the sole

02:18:03   23   judges of the facts.

02:18:05   24        As the sole judges of the facts of this case you must

02:18:08   25   determine which of the witnesses you believe, what portion of

02:18:11   1    their testimony you accept, and what weight you attach to it.

02:18:16   2        During the course of the trial, you will undoubtedly hear

02:18:19   3    objections to some of the evidence that is offered.  Sometimes

02:18:22   4    these objections may be argued outside of your presence.  It

02:18:26   5    is the duty of an attorney in a case to object when the other

02:18:30   6    side offers testimony or other evidence which the attorney

02:18:33   7    objecting believes is not properly admissible under the rules

02:18:37   8    of evidence.  You should not draw any inference against or

02:18:40   9    show any prejudice against an attorney or his or her client

02:18:43   10   because of the making of an objection to testimony or other

02:18:46   11   evidence that is offered.

02:18:48   12       If I allow testimony or other evidence to be introduced

02:18:51   13   over the objection of an attorney, I am not, unless I

02:18:54   14   expressly say so, indicating any opinion as to the weight of

02:18:57   15   such evidence, or the effect of that evidence.

02:19:02   16       You, as the jurors, are the sole judges of the

02:19:04   17   credibility of all witnesses and the weight and effect of all

02:19:08   18   evidence.

02:19:09   19       Whenever I sustain an objection to a question addressed

02:19:12   20   to a witness, you must disregard the question entirely, and

02:19:15   21   should draw no inference from the wording of it, or speculate

02:19:19   22   as to what the witness would have said if he or she would have

02:19:23   23   been permitted to answer that question.

02:19:25   24       At times during this trial, the Court may direct that

02:19:28   25   certain testimony or other evidence be stricken from the

02:19:31  1    record.  I will instruct you to disregard this evidence.  You

02:19:34  2    must not consider any evidence which has been stricken from

02:19:38  3    the record or which you have been instructed to disregard.

02:19:42  4    Your verdict must be based solely on legally admissible

02:19:46  5    evidence.  The evidence as this Court excludes from your

02:19:48  6    consideration is excluded because it is not legally

02:19:52  7    admissible.

02:19:53  8        The law does not, however, require you to accept all of

02:19:56  9    the evidence that is admissible, even though it may be

02:19:59  10   competent.  In determining what evidence you accept, you must

02:20:04  11   first make your own evaluation of the testimony given by each

02:20:07  12   witness.  You must determine the degree of weight you choose

02:20:11  13   to give to the testimony of each witness.  The testimony of a

02:20:15  14   witness may fail to conform to the facts as they occur because

02:20:18  15   the witness is intentionally telling a falsehood, or because

02:20:22  16   the witness did not accurately see or hear that about which

02:20:24  17   the witness testified, or because the witness' recollection of

02:20:28  18   the event is faulty, or because the witness does not express

02:20:31  19   himself clearly while testifying before you here in court.

02:20:34  20   There is no magic formula by which you must or may evaluate

02:20:40  21   testimony.

02:20:41  22       You bring with you to this courtroom all of the

02:20:43  23   experience and background of your lives.  In your everyday

02:20:46  24   affairs you determine for yourselves the reliability or

02:20:49  25   unreliability of statements made to you by others.  The same

02:20:54  1    tests that you use in your everyday dealings are the tests

02:20:57  2    which you must and should apply in your deliberations as a

02:21:00  3    juror.

02:21:02  4         The interest or the lack of interest of any witness in

02:21:04  5    the outcome of this case, the bias or prejudice of each

02:21:07  6    witness, if there be any, the age, appearance, manner in which

02:21:12  7    each witness testifies while on the witness stand, the

02:21:14  8    opportunity that each witness had to observe the facts

02:21:17  9    concerned to which the witness testifies, the probability or

02:21:22  10   improbability of the witness' testimony when viewed in light

02:21:25  11   of all of the other evidence in the case are all matters to be

02:21:28  12   taken into your determination in determining the weight, if

02:21:31  13   any, you will assign to each witness' testimony.

02:21:36  14        If such consideration make it appear there is a

02:21:39  15   discrepancy in the evidence, you will first have to consider

02:21:41  16   whether the apparent discrepancies may not be reconciled by

02:21:46  17   fitting the two stories together.  If, however, that is not

02:21:48  18   possible, you will then have to determine which of the

02:21:51  19   conflicting versions you will accept.

02:21:54  20        You are not permitted to ask questions of witnesses or of

02:21:57  21   the attorneys.  Therefore, please do not interrupt the

02:22:00  22   attorneys during their examination of witnesses or otherwise.

02:22:03  23   If, however, you are unable to hear a witness or lawyer,

02:22:07  24   please raise your hand and I will take care of it.

02:22:11  25        You must not consider anything you may have read or heard

02:22:13   1    about this case or the issues raised in this case outside of

02:22:18   2    the courtroom.

02:22:23   3        You will not be required to remain together while the

02:22:25   4    Court is in recess or adjournment during the course of this

02:22:28   5    trial.  Therefore, it is important that you listen carefully

02:22:31   6    and obey faithfully the following instructions with regard to

02:22:34   7    recess and adjournment of court during the trial of this case.

02:22:38   8        Do not discuss this case either among yourselves or with

02:22:41   9    anyone else during the course of the trial.  In fairness to

02:22:45   10   the parties to this civil action, you should keep an open mind

02:22:47   11   throughout the trial, reaching your conclusion only during

02:22:50   12   final deliberations after all the evidence has been submitted,

02:22:53   13   and after you have heard the final summations of counsel, and

02:22:56   14   after the Court has instructed you as to the law; then and

02:23:00   15   only then, after you have had an opportunity to interchange

02:23:03   16   views with other members of the jury.  Do not permit any third

02:23:07   17   persons to discuss the case in your presence or with you.  And

02:23:10   18   if anyone attempts to discuss the case with you despite your

02:23:12   19   telling that person not to do so, please report these facts to

02:23:15   20   the Court as soon as possible.  It is not necessary that you

02:23:20   21   report these facts, or the fact you felt it necessary to bring

02:23:24   22   a matter to the attention of the Court, to any of your fellow

02:23:28   23   jurors.  This includes curious family numbers, roommates, and

02:23:32   24   the like when you get home in the evening.  Please blame me

02:23:34   25   for being rude and saying, "I can't talk about it."

02:23:39  1          Although it is not normal human tendency to converse with
02:23:42  2    people with whom one is thrown into contact, you must not,
02:23:45  3    during the time you serve on this jury, converse, whether in
02:23:48  4    or out of the courtroom, with any of the parties, their
02:23:51  5    attorneys, or any witness.  By this the Court means not only
02:23:55  6    should you avoid talking or conversing about the case, but do
02:23:59  7    not talk or converse at all, even in passing the time of day.
02:24:04  8    In no other way can all parties be assured of your absolute
02:24:08  9    impartiality, and your absolute impartiality in the matter
02:24:10  10   that all parties are entitled to from you as jurors.
02:24:16  11         In this district court it is a rule of court that after
02:24:19  12   the conclusion of a trial, neither the parties nor their
02:24:23  13   agents or attorneys shall communicate or attempt to
02:24:25  14   communicate concerning the jury deliberation or verdict, to
02:24:29  15   any member or members of the jury before which the case is
02:24:33  16   tried.  Accordingly, it would be improper for you to discuss
02:24:37  17   this case with anyone after the trial has ended as to jury
02:24:39  18   deliberation or verdict unless, of course, you are directed to
02:24:41  19   do so by order of this Court.
02:24:43  20         If you wish, you may take notes to help you remember what
02:24:46  21   witnesses said.  If you do take notes, please keep them to
02:24:49  22   yourself until you and your fellow jurors go to the jury room
02:24:54  23   to decide this case.  Do not let note taking distract you so
02:24:57  24   that you do not hear answers or observe witnesses.  When you
02:25:02  25   leave the courtroom, please feel free to leave your notes on

02:25:05  1    your chair, face down.  Notes are not entitled to any greater

02:25:09  2    weight than the memory or impression of each juror as to what

02:25:12  3    the testimony may have been.  Whether you take notes or not,

02:25:15  4    each of you must form or express your own opinion as to the

02:25:19  5    facts of this case.  If you do not take notes, you should

02:25:21  6    reply upon your own memory of what was said and not be

02:25:25  7    influenced by the notes of other jurors.

02:25:29  8         In conclusion, please keep a few key principles in mind

02:25:32  9    as we begin this trial.  Your job is to decide all of the

02:25:36  10   factual issues in this case, like who should be believed and

02:25:40  11   who should not be believed.  I will take care of all of the

02:25:44  12   legal questions, such as what testimony or exhibits are

02:25:47  13   received into evidence and which are not received.  Please do

02:25:51  14   not concern yourselves with the legal questions.

02:25:54  15        Again, please do not discuss the case with anyone.  And

02:25:58  16   keep an open mind until all the evidence has been received

02:26:01  17   here in this courtroom.  At that time, I will be able to give

02:26:04  18   you your complete and final instructions which will be more

02:26:08  19   detailed than these preliminary instructions; then and only

02:26:11  20   then will you be fully prepared to begin your deliberations,

02:26:13  21   and reach your verdict.

02:26:22  22        Any motion to sequester witnesses?

02:26:30  23            MR. UMINA:  Yes, Your Honor.  I would make a motion

02:26:31  24   to sequester the witnesses.

02:26:34  25            THE COURT:  Any objection or dispute?

02:26:36  1          MS. DURST:  No, Your Honor, just with the exception

02:26:42  2     of expert witnesses to be able to sit in.  Aside from that, I

02:26:44  3     have no objection to exclusion of witnesses, and would join in

02:26:47  4     that motion.

02:26:48  5          THE COURT:  Mr. Umina.

02:26:50  6          MR. UMINA:  We agree with the same, Your Honor.

02:26:51  7          THE COURT:  All right.  The Court will grant the

02:26:53  8     unopposed joint motion then, and all witnesses, other than

02:26:56  9     experts, shall be excluded and sequestered from the courtroom.

02:27:00 10     The Court will rely extensively on counsel to police that.

02:27:06 11     You all know who your witnesses are and I may not.  So I will

02:27:10 12     rely on counsel to do that.

02:27:12 13          Ladies and gentlemen, I know I indicated we would

02:27:14 14     probably take a break before openings, but we were more

02:27:18 15     efficient in getting through our preliminary instructions.

02:27:20 16     Unless anyone needs a break, raise your hand if you do, we

02:27:23 17     will jump right into opening statements.

02:27:26 18          All right.  Seeing no requests, Mr. Umina, do you need a

02:27:29 19     moment to get set up?

02:27:32 20          MR. UMINA:  May we just have a couple minutes, Your

02:27:34 21     Honor?

02:27:34 22          THE COURT:  Certainly.  Certainly.

02:28:20 23          MR. PRINCE:  May it please the Court, opposing

02:28:22 24     counsel.

02:28:23 25          Ladies and gentlemen, if the Jeep was not in gear, Philip

02:28:29   1    should still be here.  This is a case about a simple truth.

02:28:37   2    Vehicles in neutral do not accelerate.  This case concerns the

02:28:44   3    unlawful killing of an unarmed man as he sat inside a

02:28:50   4    motionless Jeep in a small clearing in rural Marion County.

02:28:58   5        In total, the evidence will be that the defendant fired

02:29:02   6    seven shots into the front of the Jeep occupied by

02:29:09   7    Philip Rhoades, one of which struck him in the face, lodged

02:29:15   8    itself in his C spine, severing his spinal column, instantly

02:29:24   9    rendering Philip unable to move from the neck down as he bled

02:29:31   10   to death in the final minutes of his life.

02:29:33   11       What brings us to this United States federal courthouse,

02:29:42   12   are the protections found under the Fourth Amendment of the

02:29:46   13   United States Constitution.  Protections that shield us all

02:29:52   14   from an unlawful killing at the hand of the government.  These

02:29:58   15   safeguards tell us that the government and its police

02:30:04   16   officers, are not permitted to be the judge, the jury, and the

02:30:09   17   executioner.

02:30:12   18       The evidence in this case will be that police officers

02:30:15   19   are not allowed to knowingly violate citizens' constitutional

02:30:22   20   rights.  The evidence will also be that police officers must

02:30:28   21   comply with the policies of their department.  And the

02:30:35   22   evidence will be in this case that these are basic rules of

02:30:41   23   policing.  These protections, these foundational protections

02:30:48   24   like all constitutional protections, only matter if juries

02:30:54   25   like you choose to enforce them and hold accountable all whom

02:30:58  1    are proven to violate them.

02:31:02  2         The Court will instruct you that if government actors,

02:31:07  3    like the police, violate the Fourth Amendment, they are liable

02:31:14  4    and must pay for the harm they have caused.  The evidence in

02:31:20  5    this case will be that whether it be constitutional rights

02:31:25  6    that protect every American, or local rules that protect the

02:31:30  7    good people of Marion County, to the defendant they are

02:31:35  8    nothing more than words on a page.  We will prove to you that

02:31:43  9    when these safeguards are ignored and broken, there is nothing

02:31:49  10   left to stand between an officer and his gun.

02:32:00  11        My name is Travis Prince, and together with Ryan Umina

02:32:04  12   and Ben Hogan, we represent the family of Philip Rhoades.

02:32:10  13   Philip's wife, Christy, will be sitting with us here during

02:32:14  14   the trial.  Philip's father, Rick, will be here as well when

02:32:18  15   he is able to be here.  I hope you understand that given the

02:32:24  16   facts that will be discussed and what happened to Philip, that

02:32:27  17   his two minor children will not be here for the proceedings.

02:32:34  18        Together, we are all seeking in this trial what the

02:32:39  19   evidence will show was denied by the defendant in that Marion

02:32:43  20   County field, and that is justice for Philip.

02:32:55  21        This heartbreaking story begins on August 2, 2017, when

02:33:01  22   the defendant was on patrol with Deputy Love, Corey Love.  And

02:33:07  23   they observed a black Jeep Wrangler pass in oncoming traffic,

02:33:13  24   that was driven by Philip Rhoades.  The defendant followed

02:33:18  25   that black Jeep into rural Marion County, and that lead to a

02:33:28  1    dirt road.

02:33:33  2         The evidence will be that that dirt road led to a small

02:33:37  3    gas well.  And the evidence in this case will show that upon

02:33:43  4    entering that small clearing, the defendant jumped from his

02:33:48  5    still-moving police cruiser, he did not bother to place it in

02:33:55  6    park, and that within seconds, the evidence will show that

02:33:59  7    within seconds, the defendant pulled his .40-caliber pistol

02:34:05  8    from its holster, positioned himself directly in front of the

02:34:10  9    Jeep where he had the clearest possible shot, and he took it.

02:34:18  10   Not one, ladies and gentlemen, but one, two, three, four,

02:34:28  11   five, six, seven.  Seven shots were fired by the defendant at

02:34:35  12   the front of that Jeep.

02:34:36  13        Now, we will prove to you, we will prove to you that

02:34:40  14   standing in front of that Jeep was in violation of the

02:34:43  15   defendant's training.  We will prove to you that the defendant

02:34:47  16   had no reason to open fire on that Jeep.  The evidence will be

02:34:54  17   that none of that mattered.  Because the evidence will show

02:34:59  18   that the defendant had no intention of arresting Philip.

02:35:04  19   Within seconds of exiting his police cruiser, the entire event

02:35:09  20   was over.

02:35:12  21        It didn't matter that the defendant knew the rules he was

02:35:15  22   required to follow.  Because the evidence will show that the

02:35:20  23   defendant's mind was made up when he drove down that dirt

02:35:26  24   road.  He was the judge.  He was the jury.  He was the

02:35:34  25   executioner.

02:35:37   1        One of the shots fired by the defendant struck

02:35:41   2   Mr. Rhoades near his right ear.  As I mentioned before,

02:35:48   3   importantly there is no exit wound.  Instead -- instead,

02:35:56   4   ladies and gentlemen, the bullet lodged itself in Philip's

02:36:02   5   neck, fracturing the C1 vertebra, the vertebra at the top of

02:36:07   6   your C spine, and severing his spinal cord.  This is

02:36:14   7   important.  This is important.

02:36:16   8        The evidence in this case will show that because his

02:36:19   9   spinal cord was severed, Philip was instantly unable to move

02:36:25  10   his body below the neck.  We will prove that Philip's instant

02:36:34  11   loss of the ability to move his arms, his hands, and his legs

02:36:41  12   rendered him unable to shift the gears of that Jeep, and

02:36:46  13   rendered him unable to use the accelerator.

02:37:02  14        The evidence in this case will show that the defendant

02:37:05  15   knew what he did was wrong.  And worse yet, ladies and

02:37:10  16   gentlemen, we will introduce evidence that he tried to cover

02:37:15  17   it up.

02:37:20  18        But when did we first learn of the defendant's version of

02:37:24  19   what happened in that small field?  Well, the evidence will

02:37:29  20   tell us that it wasn't on August 2d when this happened.  The

02:37:38  21   investigating state trooper will testify that when he went to

02:37:42  22   speak with the defendant, the defendant refused to cooperate,

02:37:48  23   refused to make a statement.

02:37:52  24        The evidence in this case will also be that when the

02:37:55  25   investigating state trooper went to speak with Corey Love, the

02:38:00  1    other officer that was present, Deputy Love also advised he

02:38:09  2    wasn't cooperating.  He wasn't going to give a statement.

02:38:15  3         As you listen to the evidence in this case, ladies and

02:38:17  4    gentlemen, you will have to ask yourself:  If the defendant

02:38:22  5    thought his killing of Philip was justified, why didn't he

02:38:27  6    just explain to the trooper what happened?

02:38:36  7         The evidence, ladies and gentlemen, will answer that

02:38:39  8    question for you.  That's because the evidence in this case

02:38:45  9    will show -- the evidence in this case will show that the --

02:38:55  10   that the defendant and Deputy Love wanted to get together.

02:39:03  11   The defendant -- the defendant and Deputy Love told -- the

02:39:09  12   evidence will be that the defendant and Deputy Love made it

02:39:13  13   known to the investigating state trooper that they wanted to

02:39:16  14   get together before they gave their statement.  We will prove

02:39:22  15   to you that the defendant needed a story, some explanation for

02:39:30  16   this killing of Philip.  And that he needed to make sure

02:39:37  17   Deputy Love, the rookie officer, towed the line before

02:39:43  18   speaking with the state trooper.  In fact, you will hear from

02:39:48  19   Deputy Love that the defendant asked him for a copy of his

02:39:51  20   written statement.

02:39:53  21        But the evidence in this case will also show that even

02:39:57  22   though the defendant and Deputy Love had clearly spoken before

02:40:03  23   they gave their statements to the state trooper, the defendant

02:40:09  24   will take that witness stand, and he is going to tell you a

02:40:13  25   different story.  He will tell you that he didn't have any

02:40:17  1  discussions with Corey Love after August 2nd.  In fact, he

02:40:23  2  will tell you that he didn't have a single phone call, not a

02:40:27  3  single text, and no communication whatsoever.

02:40:33  4      Ladies and gentlemen, we are going to prove to you that

02:40:38  5  statement is false.  We will prove to you that the state

02:40:46  6  trooper is correct, that the defendant and Deputy Love did

02:40:49  7  speak about the killing before making their official

02:40:54  8  statement.  And we will prove to you that they did so to get

02:41:00  9  their story straight.  Which brings us to the defendant's

02:41:06  10 story.

02:41:11  11     The evidence will show that after extensive preparation

02:41:15  12 and scheming, the defendant came up with the following story:

02:41:20  13 The defendant is going to tell you on this witness stand, he

02:41:22  14 is going to testify that even though he never saw Philip with

02:41:29  15 any weapons, the sole justification for his use of lethal

02:41:39  16 deadly force was that that black Jeep Wrangler we just talked

02:41:43  17 about, started to drive straight at him.  In fact, he is going

02:41:48  18 to testify that it came towards him in an aggressive manner,

02:41:54  19 that his foot was heavy on the gas, and he was coming at me.

02:42:01  20     Ladies and gentlemen, we will prove to you that when the

02:42:06  21 defendant made this false statement to cover up what happened,

02:42:11  22 he failed to take one key fact into account.  The Jeep, the

02:42:21  23 black Jeep Wrangler, was a five speed.  The evidence in this

02:42:29  24 case will be that the Jeep was still running when Philip's

02:42:36  25 limp body was removed.  It was still running, in fact, when

02:42:42  1    the investigating state trooper arrived on the scene several

02:42:46  2    minutes later, and the vehicle was unoccupied.  And the

02:42:53  3    evidence will be that after the killing, no one tampered with

02:43:03  4    the Jeep.  Five speeds are only able to run unoccupied if they

02:43:06  5    are in neutral.  That will be the evidence in this case.

02:43:11  6    Remember, Philip was unable to move his body below his neck

02:43:17  7    and would not have been able to shift the Jeep into neutral.

02:43:22  8    As a result, the evidence in this case will be that the Jeep

02:43:25  9    was in neutral when the defendant killed Philip, and thus, not

02:43:35  10   moving as the defendant claims.

02:43:39  11       You know what, folks?  You don't have to take our word

02:43:42  12   for it.  You don't.  Because the evidence in this case will

02:43:48  13   be -- the defendant is going to take this witness stand, and

02:43:50  14   he is going to testify that in order for a manual transmission

02:43:54  15   to be running, just sitting in an area, it would have to be in

02:43:59  16   neutral.  In fact, the defendant himself is going to testify

02:44:06  17   that a car with a manual transmission that is in gear will

02:44:10  18   stall out if there is no one holding the clutch or if it's

02:44:17  19   just sitting there.  Anyone who has ever learned to drive a

02:44:21  20   five speed will agree that that's the case.

02:44:27  21       Ladies and gentlemen, common sense tells us that vehicles

02:44:31  22   in neutral do not aggressively accelerate.  But we don't

02:44:38  23   intend to rely on common sense alone.  In fact, there will be

02:44:42  24   no objective evidence that this Jeep moved in the manner the

02:44:48  25   defendant claims.  What I mean by that is, there will be no

02:44:54  1    evidence of ground disturbance to suggest this Jeep took off
02:45:00  2    and came towards him.  There will be no evidence of spinning
02:45:06  3    tires, rocks, debris, mud, that were flung up by his Jeep.
02:45:10  4    There will be no evidence, whatsoever, that this Jeep ever
02:45:16  5    accelerated at all.

02:45:21  6        We will prove to you, ladies and gentlemen, that if the
02:45:24  7    Jeep was not in gear, Philip Rhoades should still be here.
02:45:34  8    But again, you don't have to take our word for it.  The
02:45:38  9    defendant's expert witness that they paid to come in here and
02:45:42  10   testify, he is going to testify that if the vehicle was not in
02:45:46  11   motion, the use of force, the use of deadly force in this case
02:45:54  12   wasn't justified.  The West Virginia state trooper that
02:45:59  13   investigated this case, he is going to come in here and
02:46:02  14   testify that if the vehicle was not in motion, the use of
02:46:07  15   force was unjustified.

02:46:14  16       As I mentioned previously the founding fathers of this
02:46:17  17   great nation made sure to include basic rights for all
02:46:22  18   Americans in the Constitution.  We know it as the Bill of
02:46:26  19   Rights.  This is where we find the right to freedom of speech,
02:46:33  20   the right to bear arms, and included therein, is a right to be
02:46:38  21   free from an unreasonable seizure of your person, an unlawful
02:46:44  22   killing at the hands of your government.  But this case isn't
02:46:53  23   only about constitutional rights.  It concerns Marion County
02:47:00  24   Sheriff's Department policies and procedures that are intended
02:47:03  25   to protect the people of Marion County like Philip.

02:47:11  1      The evidence in this case will show and we will prove to

02:47:16  2  you that the defendant violated the Marion County Sheriff's

02:47:20  3  Department use of lethal force policy by using lethal force

02:47:27  4  when it wasn't authorized, by using lethal force on an unarmed

02:47:33  5  man in a motionless Jeep.

02:47:39  6      We will prove to you that the defendant violated the

02:47:42  7  Fourth Amendment, that the defendant violated the use of force

02:47:46  8  policy, that the defendant is a rule breaker.

02:47:52  9      Now, folks, we will make your job as jurors as easy as

02:47:58  10  possible.  We will provide ample evidence that an unlawful,

02:48:06  11  unjustified killing took place, and the sloppy coverup that

02:48:11  12  followed, that much will be firmly established.  The only

02:48:16  13  difficult question that you will be asked to answer in this

02:48:21  14  case will be:  What is the value of a human life?  What is the

02:48:27  15  value when a father buries his son, when a wife loses the

02:48:37  16  father of her two minor children, or when two young children

02:48:46  17  lose their 28-year-old father?

02:48:50  18      There will be birthday parties, T ball games, weddings,

02:48:55  19  and countless life events where a father's wisdom will be

02:49:00  20  absent.  The value of that missing piece, ladies and

02:49:07  21  gentlemen, will be the only difficult question you will be

02:49:10  22  asked to answer in this case, because, ladies and gentlemen,

02:49:17  23  we will prove that the defendant unlawfully killed Philip,

02:49:23  24  which sounds like a problem.  We want to make sure that you

02:49:27  25  understand the appropriate legal standard by which to judge

02:49:32   1   our claims in this case.  We are not required to prove our

02:49:36   2   allegations a hundred percent, for example.  We are not

02:49:41   3   required to prove these allegations beyond a reasonable doubt.

02:49:46   4   Instead, the Judge will instruct you that you are to use the

02:49:50   5   preponderance of the evidence standard when you evaluate our

02:49:54   6   allegations in this case.  What does that mean exactly?  It

02:50:01   7   means this:  When you combine all of the evidence in this

02:50:08   8   case, if more than 50 percent is in the plaintiff's favor, you

02:50:12   9   must find for the plaintiff.

02:50:15   10       Think of it this way:  We are going to start this case

02:50:18   11   right now on one side of the football field.  In order for the

02:50:23   12   plaintiff to prevail in this case, you don't have to score any

02:50:30   13   touchdowns.  You don't have to score any points or field

02:50:31   14   goals.  All we have to do to prevail in this case, is get the

02:50:37   15   tip of the football across the 50-yard line.

02:50:57   16       The Bill of Rights to the United States Constitution is

02:50:59   17   just that, a list of rights that were guaranteed to all

02:51:04   18   Americans hundreds of years ago and passed on to all of us,

02:51:08   19   including Philip, for generations.  The right to be free from

02:51:15   20   an unlawful killing at the hands of our government is among

02:51:19   21   the most important rights that we have been given as

02:51:24   22   Americans, forever insuring that life and liberty are to be

02:51:30   23   protected forever.  These safeguards tell us that when -- that

02:51:39   24   the government is not permitted to be the judge, the jury, and

02:51:42   25   the executioner.  And certainly is not permitted to cover it

02:51:51    1    up, to lie to cover it up.

02:51:53    2         We will prove to you -- we will prove to you that the

02:51:56    3    defendant had no reasonable reason to fear for his safety when

02:52:01    4    he broke these rules, took justice into his own hands, and

02:52:07    5    gunned down Philip in broad daylight as he sat behind the

02:52:13    6    wheel of this motionless Jeep.  Because we know -- we know if

02:52:23    7    the Jeep was not in gear, Philip should still be here.

02:52:31    8         Thank you, Your Honor.

02:52:32    9         THE COURT:  Thank you, counsel.

02:52:52   10         Ms. Durst, do you still anticipate taking the same amount

02:52:55   11    of time we discussed before?

02:52:56   12         MS. DURST:  Right around there, sir.

02:52:58   13         THE COURT:  If you are prepared to proceed, why don't

02:53:00   14    you go ahead then.  Take your time getting set up.

02:53:14   15         MS. DURST:  May it please the Court, counsel.

02:53:16   16         Good afternoon, ladies and gentlemen of the jury.  I

02:53:19   17    first want to start by thanking you for your service here

02:53:22   18    today.  I know it feels like it has been a long day already,

02:53:25   19    but we couldn't do our jobs if you guys weren't here doing

02:53:30   20    your jobs, so I want to take the opportunity to thank you in

02:53:33   21    advance.

02:53:36   22         We don't see this as a difficult, complicated case.  This

02:53:40   23    is a case that does not present a complicated set of facts.

02:53:46   24    This is a case about whether Deputy David Forsyth, a member of

02:53:51   25    the Marion County Sheriff's Department who, along with Mr.

02:53:55   1    Carroll, we have the pleasure of representing, whether

02:53:58   2    Deputy Forsyth was going to get to go home to his wife and

02:54:02   3    three young children at the end of his shift on August 2nd of

02:54:06   4    2017.

02:54:11   5         So how did we get here?  On August 2nd of 2017,

02:54:16   6    Deputy Forsyth was on duty as a deputy with the Marion County

02:54:22   7    Sheriff's Department.  He was travelling with another young

02:54:26   8    man, who was a deputy with the sheriff's department at the

02:54:31   9    time, who is in longer with the sheriff's department, a

02:54:33   10   gentleman by the name of Corey Love.  They were on duty with

02:54:38   11   the sheriff's department when they responded to assisting in a

02:54:45   12   pursuit of -- to assist another deputy with the sheriff's

02:54:52   13   department, Deputy Wesley Wheeler, in the pursuit of a vehicle

02:54:55   14   that was driven by Philip Rhoades.

02:54:58   15        So Deputy Wheeler was involved in a pursuit.  Deputy

02:55:03   16   Forsyth along with Deputy Love begin to assist in the pursuit

02:55:06   17   of that vehicle.  Mr. Rhoades was believed to have been

02:55:12   18   driving a black, soft top, Jeep Wrangler.  You have obviously

02:55:19   19   seen the photographs of the Jeep.  That was the information

02:55:21   20   that came over the radio, that Mr. Rhoades was believed to be

02:55:24   21   driving that vehicle.  It was also noted over the radio

02:55:29   22   traffic that the last information that had been heard was that

02:55:34   23   Mr. Rhoades may be armed.

02:55:37   24        So Deputy Forsyth and Deputy Love begin to assist in the

02:55:42   25   pursuit.  They had been at the station, at the sheriff's

02:55:47  1  department in Marion County, heard the information come over

02:55:49  2  the radio, and went to assist in the pursuit.  They get to

02:55:53  3  Route 250.  They were traveling north, which is right around

02:55:59  4  the North Marion High School area.

02:56:01  5       At that point in time, Deputy Forsyth witnessed a Jeep

02:56:07  6  that was matching the description that had come over the

02:56:10  7  radio; that it was a black Jeep, soft top, Wrangler.  So

02:56:17  8  Deputy Forsyth sees that vehicle while he is traveling north

02:56:19  9  on Route 250.  He attempts to assist in the pursuit, to turn

02:56:26  10  around to pursue the Jeep.  At that point in time,

02:56:30  11  Deputy Forsyth saw that Jeep swerve into oncoming traffic,

02:56:36  12  almost strike another vehicle while the Jeep was attempting to

02:56:41  13  pass other vehicles in an attempt to flee.

02:56:46  14       Deputy Forsyth then radioed to another deputy over the

02:56:55  15  radio, and this deputy was believed to be in that same general

02:56:58  16  area on Route 250 near the Carnegie area.  Deputy Forsyth

02:57:03  17  asked if this other deputy had seen the Jeep that had passed

02:57:08  18  him in that area.  That deputy came across the radio and said,

02:57:12  19  no, he has not seen the Jeep.  You are going to hear some of

02:57:15  20  this radio traffic as well, so it's not just me or it won't

02:57:19  21  just be Deputy Forsyth telling you, you will hear the actual

02:57:22  22  radio traffic from the officers as they are reporting things.

02:57:26  23       So having been told by the deputy that the Jeep had not

02:57:31  24  gone in that area, Deputy Forsyth then went out on East Run

02:57:38  25  onto Parrish Run in that area of Marion County.  At that

02:57:44  1    point, he and Deputy Love had lost sight of the Jeep.

02:57:52  2        There was a private passenger vehicle in that area.

02:57:55  3    There was a female in her own personal automobile in that area

02:57:59  4    that Deputy Forsyth had to allow to pass so they could

02:58:03  5    continue on for this Jeep that Mr. Rhoades was driving.  Once

02:58:09  6    the civilian was out of the way, Deputy Forsyth and

02:58:15  7    Deputy Love checked with what appeared to be like an access

02:58:20  8    road or a trail in a kind of a sharp turn off of Parrish Run.

02:58:28  9        As Deputy Forsyth's cruiser kind of pulled onto that

02:58:33  10   access road -- and the reason I'm calling it an access road,

02:58:35  11   is that is a gas well site.  So Deputy Forsyth is in his

02:58:40  12   cruiser, which is marked, that identifies he is with the

02:58:43  13   Marion County Sheriff's Department.  He pulls into that access

02:58:48  14   road.  It was somewhat of a grown-up area that kind of opens

02:58:52  15   up into the gas well site.  By no means -- and you will see

02:58:57  16   the photographs -- by no means an open area.  Somewhat

02:59:01  17   confined.  And you will see some of the apparatuses for the

02:59:03  18   gas well.  Deputy Forsyth actually saw the Jeep backed into

02:59:10  19   the gas site kind of adjacent off to the left.  So

02:59:16  20   Deputy Forsyth's cruiser comes in.  The Jeep is off to the

02:59:19  21   left, backed in, somewhat adjacent to the cruiser.

02:59:24  22        At that point in time, Deputy Forsyth is coming into that

02:59:29  23   gas site, Mr. Rhoades' Jeep actually comes forward toward the

02:59:36  24   cruiser almost striking the cruiser that Deputy Forsyth was

02:59:40  25   driving.  At that point in time, Deputy Forsyth will tell you

02:59:46   1   this is what he saw, and this is the information that he

02:59:49   2   actually provided to, then sergeant, now Lieutenant Branham

02:59:55   3   with the West Virginia State Police.  He saw the Jeep

03:00:01   4   actually, what he has described, as kind of do a three-point

03:00:07   5   turn, like the Jeep was trying to back up in order to get out

03:00:09   6   of the area and try to turn around.

03:00:11   7        At that point in time Deputy Forsyth exited his cruiser,

03:00:16   8   obviously on the driver's side, because he was the one driving

03:00:19   9   the cruiser.  Deputy Forsyth [sic] was on the passenger's

03:00:22  10   side.  Deputy Forsyth exited the cruiser with the intention of

03:00:26  11   kind of going to the rear of his cruiser in an effort to try

03:00:31  12   to stop this Jeep that was being pursued by the Marion County

03:00:36  13   Sheriff's Department.  He didn't make it to the rear of the

03:00:41  14   cruiser because, unbeknownst to him, when he exited the

03:00:47  15   cruiser, he didn't have the cruiser in park.  So that cruiser

03:00:50  16   continued to move forward actually away from Deputy Forsyth,

03:00:56  17   so he wasn't able to get to the rear of the cruiser where he

03:00:59  18   had intended to go.

03:01:01  19        Now, as I noted, that cruiser, and you have seen the

03:01:04  20   photos, it's clearly marked as a cruiser with the Marion

03:01:08  21   County Sheriff's Department.  As Deputy Forsyth got out of his

03:01:13  22   cruiser, the cruiser is continuing to move forward, he gives

03:01:19  23   verbal, loud commands to Mr. Rhoades.  Stop the vehicle, show

03:01:25  24   me your hands.  Stop the vehicle, show me your hands.

03:01:31  25   Mr. Rhoades did not comply with those commands at all.

03:01:38  1       At that point in time, Deputy Forsyth then saw what -- it

03:01:46  2  looked like the Jeep was backing up at the same time he saw

03:01:52  3  Mr. Rhoades appearing to be reaching for the floorboard or the

03:01:56  4  center console of the vehicle.  Remember, the evidence is

03:02:00  5  going to be over the radio it indicated that Mr. Rhoades may

03:02:03  6  still be armed.  That is the information that Deputy Forsyth

03:02:07  7  had at the time as he sees Mr. Rhoades reaching for the

03:02:11  8  floorboard or the center console.  Deputy Forsyth continues to

03:02:18  9  give verbal commands to Mr. Rhoades.  Stop the vehicle, show

03:02:24  10  me your hands.  Stop the vehicle, show me your hands.

03:02:29  11       Again, Mr. Rhoades failed to comply with those lawful

03:02:33  12  commands of a law enforcement officer.  Instead, at that point

03:02:38  13  in time, Mr. Rhoades, -- and Deputy Forsyth will describe and

03:02:47  14  tell you, that he heard Mr. Rhoades get on the gas, heard the

03:02:51  15  engine revving, and saw the Jeep coming toward him in that

03:02:54  16  area that you have and will see at the gas well site.  Even at

03:03:00  17  that time, Deputy Forsyth is continuing to give those verbal

03:03:05  18  commands to try to get Mr. Rhoades to comply and stop the

03:03:12  19  Jeep.  Mr. Rhoades, again, did not comply, and he continued to

03:03:19  20  drive that Jeep directly at Deputy Forsyth.

03:03:24  21       At that point in time, Deputy Forsyth had a reasonable

03:03:30  22  belief that he was going to be seriously injured or killed by

03:03:34  23  this Jeep running at him, and he discharged his weapon.  And

03:03:39  24  you have seen the entry area of the Jeep.  He discharged the

03:03:45  25  weapon, and he will tell you, until the threat was stopped.

03:03:49  1    He discharged the weapon until the Jeep stopped moving at him.

03:03:55  2         At that point in time, deputy -- actually Deputy Forsyth

03:04:00  3    radioed.  You will hear him come over the radio and says,

03:04:05  4    Marion, shots fired, shots fired.  He also then calls for an

03:04:10  5    ambulance.  He and Deputy Love remove Mr. Rhoades from the

03:04:16  6    Jeep and begin to administer -- they did not find any pulse,

03:04:22  7    and they begin to administer CPR.

03:04:27  8         At that point in time, obviously the call has gone over

03:04:31  9    the radio, and so there will be other deputies and first

03:04:34  10   responders coming to the scene.  The West Virginia State

03:04:39  11   Police is called upon to investigate this incident.  And as I

03:04:44  12   indicated, it was Sergeant Branham -- he is now a lieutenant

03:04:49  13   with the West Virginia State Police -- conducts the

03:04:52  14   investigation, and takes statements from Deputy Forsyth and

03:04:56  15   Deputy Love.

03:04:57  16        You heard Mr. Prince's opening statement about the timing

03:05:02  17   of when Deputy Forsyth and Deputy Love gave statements to the

03:05:09  18   state police.  Interestingly, the evidence is also going to be

03:05:14  19   from the plaintiff's own expert, the expert they have hired

03:05:19  20   and they have paid, that -- and his name is Dennis Root --

03:05:22  21   that he has no issue with the timing of when Deputy Forsyth

03:05:26  22   and Deputy Love both gave statements.  In fact, he will take

03:05:31  23   the witness stand -- I have had the opportunity to question

03:05:35  24   him under oath in this case previously, so I have his

03:05:38  25   testimony -- and he should take the witness stand and tell you

03:05:41  1    he has no issue with that whatsoever.  In fact, he would

03:05:45  2    instruct his folks not to give statements at least for 48

03:05:50  3    hours, and that they should maybe contact a reputable

03:05:54  4    attorney.  So the information that was conveyed in the opening

03:05:56  5    statement to try to create some nefarious conduct on the

03:06:00  6    timing of when Deputy Forsyth and Deputy Love gave statements,

03:06:06  7    will be directly refuted by the plaintiff's own expert in this

03:06:11  8    case.

03:06:13  9        You will also hear testimony from Deputy Love, who I

03:06:19  10   indicated is no longer with the sheriff's department.  He is

03:06:22  11   not available to be here, so his testimony will be presented

03:06:27  12   to you by way of video.  We took his testimony in this case at

03:06:32  13   a prior time, and so it will be played for you.  So you will

03:06:36  14   also get to hear Deputy Love's testimony.  What you have to

03:06:41  15   remember when you listen to his testimony and watch it, that

03:06:46  16   he is exiting the cruiser and you will hear him say -- he

03:06:50  17   exited the cruiser from the passenger's side and was

03:06:55  18   attempting to get around the front of the cruiser.  However,

03:06:57  19   as he was trying to get past the front of the cruiser, the

03:07:01  20   cruiser was continuing to move, so his perspective of what he

03:07:04  21   was seeing, and Deputy Forsyth's perspective of what he was

03:07:09  22   seeing, will be different because each was in a different

03:07:12  23   location.

03:07:13  24       But Deputy Love will tell you in his deposition that will

03:07:17  25   be played, that when they entered the clearing, they saw the

| | |
|---|---|
| 03:07:21 | 1 |

Jeep moving toward the cruiser.  He also will tell you that he
thought Deputy Forsyth was going to be struck by that Jeep.
He did not see the shots.  He heard the shots.  He was still
trying to get around the front of the cruiser.  What he was
able to see was part of the top of the Jeep moving because it
was higher than the cruiser.  So he was able to see not the
complete Jeep, but he was able to see the Jeep moving in a
forward-moving direction toward Deputy Forsyth.  And he will
tell you that he thought Deputy Forsyth was going to be struck
by that Jeep.  You will hear from Sergeant Branham, who
completed the investigation by the state police.  He took the
statements from Deputy Forsyth and Deputy Love on August 4.
You will hear that he had the opportunity to question them.
That neither of them refused to answer any questions.  All the
information he inquired of them they answered.  And you will
hear his testimony with regard to the facts that he developed
as a result of that investigation.

     You are also going to hear, as you have probably now
assumed, from competing expert witnesses in this case.  As I
told you, you will hear from the plaintiff's expert, who I
have already mentioned, but you will also hear from an expert
on behalf of the defendant, Mr. -- Deputy Forsyth -- a
gentleman by the name of Sam Faulkner.  Mr. Faulkner has a
number of years of experience in law enforcement, and has
conducted a number of studies over the past several years with

03:09:14   1    regard to the use of force and when the use of force is

03:09:16   2    justified.  And those studies have surveyed thousands of

03:09:21   3    individuals, some law enforcement, some correctional officers,

03:09:26   4    some private citizens like yourselves, to determine at what

03:09:31   5    point in time and under what circumstances appropriate force

03:09:36   6    or use of deadly force is appropriate.

03:09:39   7        Mr. Faulkner has that background and has used that

03:09:45   8    background to formulate the opinions that he has in this case.

03:09:50   9    I point that out because when you listen to the plaintiff's

03:09:57   10   expert, I want you to keep that in mind, that he doesn't have

03:10:00   11   that same background with regard to conducting those studies

03:10:04   12   of individuals in the community.  It is simply his opinion

03:10:09   13   based on his experience as a law enforcement officer.  So just

03:10:14   14   keep that in mind as you listen to the experts.

03:10:19   15       With regard to the Jeep, you will hear Deputy Forsyth

03:10:25   16   take the stand without hesitation, without equivocation, that

03:10:32   17   the Jeep was moving at him.  Can I explain to you how the Jeep

03:10:39   18   may have been in neutral when Sergeant Branham got there?

03:10:44   19   Nobody can.  Nobody was there other than Deputy Forsyth,

03:10:49   20   Deputy Love, and Philip Rhoades.  And obviously,

03:10:53   21   Deputy Forsyth and Deputy Love were not in the Jeep at the

03:10:56   22   time the shots were fired.

03:10:59   23       What I can tell you is the evidence will show that

03:11:02   24   Deputy Forsyth heard Mr. Rhoades getting on the gas and

03:11:09   25   revving the engine as he was accelerating toward

03:11:16   1   Deputy Forsyth.  Did he not get it in gear as he was

03:11:24   2   accelerating toward Deputy Forsyth, and then was shot?  No

03:11:29   3   one, I submit to you, ladies and gentlemen, no one can take

03:11:32   4   the witness stand and tell you that because no one else was

03:11:36   5   there.

03:11:37   6        The evidence will be that that Jeep was moving; that we

03:11:40   7   believe that the photographs that were taken by Branham do

03:11:45   8   show evidence of -- I don't want to call it ground

03:11:50   9   disturbance -- where it looks like there were tires spinning.

03:11:53  10   We believe the photographs show that, the pictures where the

03:11:58  11   Jeep is sitting now in those photographs, you can look behind

03:12:03  12   the Jeep and see those areas.

03:12:05  13        So the issue is, is the Jeep moving?  Deputy Forsyth will

03:12:12  14   tell you that it was.  Deputy Love will tell you that it was.

03:12:17  15   If the Jeep was moving at the time toward Deputy Forsyth, and

03:12:22  16   he had a reasonable belief that he was going to be either

03:12:24  17   seriously injured or killed and not make it home to see his

03:12:29  18   family, he was justified in the use of deadly force to protect

03:12:32  19   himself.  And we believe that the evidence will show that that

03:12:36  20   use of force was justified in this case.

03:12:43  21        At the conclusion of the case, as Mr. Prince actually

03:12:47  22   indicated, the Judge will give you instructions, and then I

03:12:50  23   will have the opportunity to come back and kind of touch upon

03:12:54  24   the evidence that you have heard from the witness stand, and

03:12:58  25   have any exhibits that have been introduced.  And at that

03:13:01   1   point in time, I will focus more obviously on what the

03:13:06   2   evidence has been that you have heard, and why we believe that

03:13:09   3   supports a verdict in favor of Deputy Forsyth in this case.

03:13:14   4   And until that time, I thank you for your time, and I

03:13:19   5   appreciate your patience.  Thank you.

03:13:25   6            THE COURT:  Thank you, counsel.

03:13:28   7        Ladies and gentlemen of the jury, we are going to take

03:13:30   8   our afternoon break at this point, give you a chance to do

03:13:34   9   that.  We will reconvene in 15 minutes at 3:30.  At that point

03:13:40  10   in time, the plaintiff will be calling their first witness.

03:13:43  11   You will certainly grow tired of me saying this, but I will

03:13:48  12   say it every time we depart company.  Please remember my

03:13:52  13   previous instructions not to discuss the case amongst

03:13:55  14   yourselves or with anyone else.  Please also refrain from any

03:14:01  15   independent research, not only about this case, or any of the

03:14:02  16   issues raised in this case.

03:14:03  17        But with that, we will see you back here at 3:30.  Thank

03:14:08  18   you very much.

03:14:08  19        (Jury excused and the following transpired in open

03:14:09  20   court.)

03:14:38  21            THE COURT:  Thank you all.  Please be seated.

03:14:39  22   Mr. Umina, anything we need to take up at this point, sir?

03:14:43  23            MR. UMINA:  Your Honor, the only thing, our first

03:14:47  24   witness, who is under subpoena, Lieutenant Branham, last I

03:14:50  25   checked, he never showed up today for his subpoena.  We may

03:14:53  1    have an issue with our first witness.  Ms. Durst seems like

03:14:57  2    she knows something about it.

03:14:58  3              MS. DURST:  Well, Your Honor, I also had subpoenaed

03:15:01  4    Lieutenant Branham.  I think maybe for anticipating my case in

03:15:05  5    chief tomorrow and Thursday.  And I have received a call

03:15:09  6    wanting to find out, you know, which day he might be needed.

03:15:12  7    I talked to him during the lunch break and he indicated that

03:15:16  8    he had not received a subpoena from Mr. Umina's office.  I

03:15:20  9    advised him that we had received a notification last night

03:15:25  10   that a subpoena -- a return subpoena had been filed with the

03:15:28  11   Court, but he indicated he had not received any subpoena when

03:15:32  12   I talked to him at lunchtime.  So I have him scheduled to be

03:15:37  13   here tomorrow or obviously Thursday.  But he indicated he had

03:15:43  14   not received the subpoena.

03:15:45  15             MR. UMINA:  I'd like to shed some light on that, Your

03:15:47  16   Honor.

03:15:50  17             THE COURT:  Before you do that.  Does anyone know

03:15:53  18   Lieutenant Branham's current physical whereabouts?

03:15:56  19             MR. UMINA:  Not that I am aware of.  I assume

03:15:59  20   Ms. Durst does.  She just talked to him on a lunch break.

03:16:01  21             MS. DURST:  I don't physically know where he was,

03:16:04  22   Your Honor.  He left two numbers for my office to call so we

03:16:06  23   could let him know which day he might be needed.

03:16:09  24             THE COURT:  Understood.

03:16:10  25             Mr. Umina.

03:16:10   1          MR. UMINA:  Your Honor, I have information that I
03:16:12   2    think the Court would be interested in.  When I sent my
03:16:16   3    process server to his detachment, his administrative staff
03:16:22   4    refused the first subpoena.  They refused to accept service at
03:16:26   5    the West Virginia State Police.  Then my process server went
03:16:31   6    back on a second occasion.  The administrative staff attempted
03:16:35   7    to refuse the subpoena again.  It's my understanding he is the
03:16:38   8    detachment commander at the detachment.  And my process server
03:16:43   9    had to threaten him with the fact that they were obstructing
03:16:45   10   justice by refusing to accept the subpoena.  And had it not --
03:16:49   11   had they not finally accepted it prior to the final pretrial,
03:16:53   12   I was going to call this to the Court's attention if they
03:16:55   13   continued to refuse that subpoena.
03:16:57   14          So, Your Honor, what I think I am dealing with here is a
03:17:00   15   hostile witness.  Additionally, defense counsel reached out to
03:17:05   16   me yesterday and asked if I could share my order of witnesses.
03:17:09   17   They know that I have Branham under subpoena.  I hadn't filed
03:17:13   18   my return.  I hadn't told them that.  So how did they know
03:17:17   19   that I had Branham under subpoena unless Branham told them
03:17:20   20   that I had them under subpoena?  I haven't filed the return,
03:17:24   21   and I haven't shared that information so I think I have a
03:17:27   22   really serious issue going on here with Sergeant Branham, Your
03:17:30   23   Honor, and I would ask the Court to compel him appearing in
03:17:33   24   this court, and I would like to stay these proceedings because
03:17:37   25   he will be our first witness in this case, and when he does

03:17:39  1    come here, Your Honor, I would ask to treat him as hostile.

03:17:43  2         THE COURT:  Well, hence my question, where his

03:17:45  3    physical whereabouts may be.

03:17:47  4       Ms. Durst, we are going to take a break.  Since you have

03:17:52  5    contact information for Lieutenant Branham, I would like to

03:17:55  6    know where he is, how long it might take him to get here

03:18:00  7    because we are going to have significant discussion with him.

03:18:03  8       Mr. Umina, have you filed return on that subpoena?

03:18:07  9         MR. UMINA:  Yes, Your Honor.  I filed it last night.

03:18:09  10        THE COURT:  What are the current physical whereabouts

03:18:15  11   of your process server?

03:18:18  12        MR. UMINA:  Nathan Crum, he said he could be here.

03:18:21  13   Can you get him on the phone, please?  Thank you.

03:18:23  14        THE COURT:  Where is he?

03:18:25  15        MR. UMINA:  He is out of Fairmont.

03:18:27  16        THE COURT:  Okay.  Why don't you check with that

03:18:29  17   gentleman.

03:18:29  18      Ms. Durst, if you would kindly find out where

03:18:33  19   Lieutenant Branham physically is at this moment, and we will

03:18:38  20   reconvene in 15 minutes.

03:35:44  21      (Recess taken at this time 3:18 p.m. - 3:35 p.m.)

03:35:44  22        THE COURT:  Thank you all.  Please be seated.

03:35:50  23      Mr. Umina, do you have the subpoena that was ultimately

03:35:51  24   served?

03:35:52  25        MR. UMINA:  I have an electronic copy, Your Honor, I

03:35:55  1    can share with the Court right now.  And also, the return was

03:36:13  2    filed at docket number 189 shortly after 12:01 a.m., this

03:36:21  3    morning.

03:36:22  4        In addition, our process server, Nathan Crum, was en

03:36:28  5    route here from Morgantown.  He arrived shortly after we took

03:36:32  6    a recess.  We gave him a call and he was willing to come down

03:36:34  7    and explain his experience in serving Lieutenant Branham.

03:36:41  8            THE COURT:  What date and time did the subpoena

03:36:44  9    compel Sergeant Branham's appearance here in this court?

03:36:51  10           MR. UMINA:  May I retrieve my laptop, Your Honor?

03:36:51  11           THE COURT:  Please.

03:37:27  12           MR. UMINA:  Just reconnecting the wifi.

03:37:29  13           THE COURT:  Thank you.  While we are doing that,

03:37:31  14   where is Sergeant Branham, Ms. Durst?

03:37:33  15           MS. DURST:  Your Honor, I spoke to Sergeant Branham.

03:37:36  16   He was out running, and he said that he was about a mile from

03:37:40  17   the detachment.  Would head back to the detachment.  And he

03:37:43  18   said it would take him -- by the time he got in his uniform --

03:37:46  19   he is in Fairmont -- I'm sorry.  I just assumed that, Your

03:37:49  20   Honor.  He would be probably about an hour, until he could

03:37:53  21   make it here.  Again, he advised he had not received the

03:37:59  22   subpoena, Your Honor.  And just for --

03:38:02  23           THE COURT:  I know.  Date and time of that subpoena

03:38:06  24   to compel his attendance, Mr. Umina?

03:38:08  25           MR. UMINA:  4-6-2021 at 9:00 a.m., Your Honor.

03:38:16    1            THE COURT:  Can I trouble you to forward that

03:38:18    2    subpoena to Ms. Mannon, please?

03:38:20    3            MR. UMINA:  Yes, Your Honor.

03:38:21    4            THE COURT:  Thank you.  Sorry, Ms. Durst.  I

03:38:27    5    interrupted you.

03:38:27    6            MS. DURST:  No worries, Your Honor.  I just wanted to

03:38:30    7    note for the record that I had not spoken to Sergeant Branham

03:38:34    8    at all before this afternoon, Your Honor, at lunchtime when he

03:38:38    9    had called my office.  So to the extent that there is any

03:38:41   10    implication in Mr. Umina's statement that I somehow influenced

03:38:46   11    Lieutenant Branham to be here or not be here, I have not had

03:38:50   12    any communications with him since the deposition until this

03:38:52   13    afternoon to let him know that I would try to call him at the

03:38:56   14    end of today to let him know when I needed him for my

03:38:59   15    subpoena.  And that is when I told him that plaintiff's

03:39:02   16    counsel had filed a return of service on -- for a subpoena for

03:39:06   17    him that I got when I woke up this morning.  That came through

03:39:10   18    about 12:30 last night.

03:39:12   19            MR. UMINA:  Your Honor, I would like to read an email

03:39:14   20    from Mr. Carroll that I received at 6:37 p.m., yesterday which

03:39:22   21    Ms. Durst was copied, Mr. Prince, and Mr. Hogan.

03:39:28   22            "Ryan, as we had identified radio logs in our exhibit

03:39:34   23    list, I have attached the audio logs we plan to play for the

03:39:39   24    jury.  Please let us know whether you have any objections to

03:39:42   25    the same.  Also, I wanted to ask if you would be willing to

03:39:47  1   share your anticipated order of witnesses.  The reason I ask

03:39:51  2   is, I think we may have subpoenaed some of the same folks,

03:39:55  3   such as Branham and Savasman; just thought it might help

03:40:01  4   give -- might help give those individuals a better idea of how

03:40:07  5   long they will be needed."

03:40:09  6       That is it 6:37 p.m., Your Honor.  The subpoena return

03:40:13  7   was not filed until after midnight, and I had not communicated

03:40:17  8   that in any way to them.

03:40:19  9           THE COURT:  I don't for a second -- sit down,

03:40:22  10  counsel.  Not for a second do I believe counsel told Sergeant

03:40:29  11  Branham not to be here.  I don't know what the story is,

03:40:31  12  refusing to accept service and the rest is, but we are not

03:40:39  13  diving into that pool, because I don't believe that for a

03:40:43  14  second.

03:40:49  15      Is there any other witness you have here ready to

03:40:51  16  testify, Mr. Umina?

03:40:53  17          MR. UMINA:  Your Honor, we also have Dr. Savasman,

03:40:55  18  the medical director, under subpoena who was supposed to be

03:40:59  19  witness two who, it's our understanding, Your Honor, is not in

03:41:03  20  the building either.

03:41:04  21          THE COURT:  Has anyone looked?

03:41:07  22          MR. UMINA:  We have asked.  We can go look again.

03:41:10  23          THE COURT:  If someone could go kindly do that,

03:41:14  24  because my immediate concern is the complete waste of the

03:41:20  25  jury's time that we are now involved in.

03:41:22  1       And let me be clear.  I expect counsel to cooperate with

03:41:28  2   respect to the order of witnesses, coordinating calendars

03:41:32  3   scheduled to accommodate witnesses, and each other.  I thought

03:41:35  4   I made that clear at the pretrial conference.  I thought, just

03:41:38  5   by nature of the profession you have all chosen, that that

03:41:41  6   expectation would be clearly understood.

03:41:47  7       Of paramount concern to me is wasting our jurors' time,

03:41:52  8   and that is where we are.  We are not going to have hearings

03:42:01  9   at every break during this proceeding.  Witnesses are to be

03:42:05 10   here, counsel is to be prepared, so that we can use our

03:42:09 11   jurors' time as efficiently as possible.

03:42:12 12       I will deal with this with Sergeant Branham.  I will deal

03:42:17 13   with the medical examiner, if necessary.  You all need to work

03:42:21 14   together and make sure folks are here when they are expected

03:42:25 15   and waiting to testify.  I will not tolerate this and waste

03:42:30 16   those people's time anymore.

03:42:36 17       Is Dr. Savasman anywhere to be found?

03:42:38 18            MR. PRINCE:  Your Honor, Dr. Savasman is not present.

03:42:41 19   We went down to the first floor as well, he is not in the

03:42:44 20   building.  He has not been seen.

03:42:46 21            MR. UMINA:  Your Honor, I provided letters with both

03:42:48 22   of those subpoenas asking both of those individuals to call my

03:42:52 23   office so that we may not waste their time and so that we can

03:42:56 24   coordinate schedules, and I didn't receive a call from either.

03:42:59 25   Additionally, I did pay the additional $3,000 to the state

03:43:02  1   medical examiner's office weeks ago as required.

03:43:07  2        So, Your Honor, I am not sure what their reason is,

03:43:10  3   because like Ms. Durst, I provided a letter to both of these

03:43:14  4   witnesses.

03:43:14  5        THE COURT:  We are certainly going to ask them,

03:43:16  6   Mr. Umina.  I'm certainly going to ask them.

03:43:25  7        Does anyone have contact information or have any line of

03:43:28  8   communication with Dr. Savasman?  Am I pronouncing his name

03:43:32  9   correct?

03:43:32  10       MS. DURST:  I think that is the correct

03:43:34  11   pronunciation, Your Honor.

03:43:38  12       THE COURT:  Mr. Umina, instead of forwarding the

03:43:41  13   subpoenas, I will ask you to file both of the subpoenas.  I

03:43:45  14   have the returns.  Please file the subpoenas along with any

03:43:46  15   cover letter or any information sent to the --

03:43:48  16       MR. UMINA:  Your Honor, is it cover -- they are all

03:43:51  17   in the same document.

03:43:51  18       THE COURT:  That's fine absolutely.  And you can file

03:43:54  19   them altogether as one, whatever is easiest.  I just want them

03:43:56  20   in the record.

03:43:57  21       Ms. Durst, I am going to ask you -- I realize he is

03:44:00  22   not your client, and not your responsibility, to contact

03:44:03  23   Sergeant Branham.  We are not waiting an hour for him today.

03:44:06  24   He is to be here at 9:00 a.m., tomorrow morning.

03:44:14  25       My apologies to Mr. Crum.  I realize he is also probably

03:44:18  1    on his way.  If I could trouble someone to let him know that I
03:44:21  2    would also like him to be here at 9:00 a.m., tomorrow morning
03:44:23  3    if that is possible for him.  I realize he is not under
03:44:26  4    subpoena.  If that is inconvenient for him, let me know.
03:44:29  5        Ma'am, I will direct my comments to you, it's clear you
03:44:32  6    are going to be responsible for this; if you would reach out
03:44:33  7    to Mr. Crum, thank him for his efforts to get here.  I don't
03:44:37  8    want him rushing down the road either, but if he could be here
03:44:40  9    at 9:00 a.m., tomorrow, I would like to hear more from him
03:44:46  10   about the circumstances, please.  Thank you very much.
03:44:49  11       It's now quarter 'til four.  We are going to bring the
03:44:53  12   jury back in and excuse them for the day.  I, of course, as
03:44:57  13   always, will take the blame for this.  It is not to occur
03:45:00  14   again.  If folks aren't here when you anticipate them to be
03:45:04  15   here, they are under subpoena, let me know so that we can do
03:45:08  16   something about it.  Sergeant Branham being on a run, needing
03:45:11  17   a shower, and change of clothes, does us no good.  Please
03:45:15  18   communicate that to him as well.  I will address it with him
03:45:18  19   again tomorrow.  If he was served with a valid, enforceable
03:45:22  20   subpoenaed issued from this court as a law enforcement officer
03:45:23  21   in the State of West Virginia, and simply chose not to be
03:45:27  22   here, he has some serious explaining to do and will face
03:45:29  23   serious consequences in this court.
03:45:32  24       Again, I will not tolerate the waste of these jurors'
03:45:35  25   time for things like this.  It is inexcusable.

03:45:40   1        Is there anything else we need to take up today?

03:45:42   2        Counsel, of course, will be here at 9:00 a.m., tomorrow.

03:45:44   3   As well, we are going to hear from Mr. Crum, and then we are

03:45:47   4   going to hear from Sergeant Branham.  If we can get

03:45:50   5   Dr. Savasman here, that would also be beneficial.  Because if

03:45:51   6   he has been served with a subpoena as the chief medical

03:45:53   7   examiner of the state of West Virginia -- is that his title,

03:45:56   8   Mr. Umina?

03:45:56   9        MR. UMINA:  I believe so, Your Honor.

03:45:57   10        THE COURT:  Or he works in the medical examiner's

03:45:59   11   office?

03:45:59   12        MR. UMINA:  I know that he was served and he knows he

03:46:02   13   got service because I got the bill which was paid.  So there

03:46:06   14   is no way I am getting a bill for $3,000, Your Honor, if he

03:46:10   15   didn't receive my subpoena.

03:46:12   16        THE COURT:  If he also received a valid, enforceable

03:46:15   17   subpoena of this Court and did not appear pursuant to that

03:46:19   18   subpoena, he also is going to face significant consequences.

03:46:24   19   I am not kidding.  This is not happening again.  It's not.

03:46:30   20        I am not really sure what I can do about it if it happens

03:46:33   21   again, but it better not happen again.

03:46:36   22        Sir, could I ask you to bring our jury back in.  Thank

03:46:39   23   you.

03:47:38   24        (Jury returned to the courtroom and the following

03:47:39   25   transpired in open court.)

03:47:40  1          THE COURT:  Ladies and gentlemen, due to a scheduling

03:47:42  2     issue of my creation, we are not going to hear from our first

03:47:47  3     witness until we reconvene tomorrow.  We will, of course,

03:47:52  4     convene at 10:00.

03:47:54  5          Mr. McCartney, if you are not here by ten, we will wait

03:47:57  6     for you, sir.  Please take your time.  But my experience with

03:48:03  7     the vaccination process is it's rather efficient, but we will

03:48:06  8     certainly wait for you.  Please don't rush or be hurried in

03:48:09  9     any way.

03:48:10  10          We will plan a target start time of 10:00 for your

03:48:14  11     purposes, ladies and gentlemen.  So we are going to excuse you

03:48:16  12     for the day.  We will see you back here at 10:00 a.m.,

03:48:19  13     tomorrow.

03:48:22  14          Something I neglected to consider earlier today for

03:48:26  15     which I will apologize, I like a cold room.  I realize my

03:48:32  16     temperature preferences may not be in line with everyone else

03:48:35  17     in the world.  We will make sure it is a little more temperate

03:48:37  18     in here tomorrow, as opposed to my usual preferred

03:48:41  19     temperature.  My apologies for that.  But we will excuse you

03:48:44  20     for the day.  See you at 10:00 tomorrow morning, and we will

03:48:47  21     hear from our first witness.

03:48:49  22          Please do not discuss the case with anyone, that includes

03:48:52  23     amongst yourselves or any fellow jurors or anyone else.

03:48:55  24     Please blame me when you get home if someone asks you what you

03:48:59  25     have been doing today.  Tell them I won't let you talk about

03:49:02  1    it.

03:49:02  2        Also, please continue to refrain from any independent

03:49:06  3    efforts to investigate, not only in this case, or any issues

03:49:08  4    we have discussed so far in this case.

03:49:10  5        With that, we thank you for your time.  I certainly thank

03:49:13  6    you for your patience here today.  We will see you all at

03:49:15  7    10:00 in the morning.  Thank you so much.

03:49:42  8        (Jury excused, and the following transpired in open

03:49:43  9    court.)

03:49:44  10        THE COURT:  Thank you.  We will convene at 9:00

03:49:47  11    tomorrow morning.  Sergeant Branham is to be here.  Mr. Crum

03:49:50  12    should be here.  I don't know about the medical examiner -- if

03:49:56  13    no one has a line to him -- but if someone can kindly reach

03:49:58  14    out.  It's still before 4:00 anyway on a workday.  He is also

03:50:03  15    to be here at 9:00 a.m., tomorrow.

03:50:08  16        FEMALE SPEAKER:  Your Honor, I just spoke to

03:50:09  17    Mr. Crum.  He has to go to Columbus at 9:00 a.m.  He can

03:50:12  18    appear by video or he said he can send someone from his office

03:50:16  19    who attempted service the first time it was refused, and he

03:50:19  20    can be here at 9:00 a.m.

03:50:20  21        THE COURT:  If Mr. Crum can join us by telephone that

03:50:23  22    will suffice for me.  Please pass along my thanks to Mr. Crum.

03:50:27  23    I realize he wasn't on the witness list for this case.  We

03:50:34  24    will call him from -- if he has somewhere where we can reach

03:50:38  25    him.  I don't anticipate occupying many minutes of his day.

03:50:43  1          To be clear, counsel every day is to confer when we

03:50:47  2   adjourn to discuss who everyone intends to call the following

03:50:51  3   day and in what order.  There is no rule or order of this

03:50:57  4   Court that requires it, but there will be going forward.  This

03:51:00  5   is not acceptable.  I expect counsel to have a collegial and

03:51:07  6   working relationship.  It is clear that has deteriorated in

03:51:12  7   this case.  I don't expect everybody to be friends.  I realize

03:51:15  8   this is litigation, and that is an adversarial process.  We're

03:51:19  9   not wasting the jurors' time another second during the course

03:51:22  10  of this trial.  And I will begin rectifying that at 9:00 a.m.,

03:51:26  11  tomorrow in this courtroom.

03:51:27  12         We are adjourned until then.

          13         (Proceedings adjourned at 3:51 p.m.)

          14                   C E R T I F I C A T E

          15         I, Jill M. Cutter, Registered Professional Reporter and

          16  Official Reporter for the United States District Court for the

          17  Northern District of West Virginia, so hereby certify that the

          18  foregoing is a correct transcript to the best of my ability of

          19  the proceedings in the above-styled action on April 6, 2021,

          20  as reported by me in stenotypy.

          21         I certify that the transcript fees and format comply with

          22  those prescribed by the Court and Judicial conference of the

          23  United States.

          24                   Given under by hand this day, April 26, 2021.

          25

1                           /s/ Jill M. Cutter, RPR

2                        Official Reporter, United States
                         US District Court for the Northern
3                        US District of West Virginia

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

## $

**$3,000** [2] - 206:25, 209:14

## /

**/s** [1] - 213:1

## 1

**10:00** [8] - 159:16, 159:18, 159:22, 210:4, 210:10, 210:12, 210:20, 211:7
**125** [1] - 156:15
**12:01** [1] - 203:2
**12:30** [1] - 204:18
**12:58** [2] - 158:4, 158:20
**15** [2] - 199:9, 202:20
**189** [1] - 203:2
**1:18-CV-186** [1] - 156:3
**1:59** [1] - 158:20

## 2

**2** [1] - 179:21
**200** [1] - 156:18
**2017** [3] - 179:21, 189:4, 189:5
**2021** [4] - 156:12, 158:1, 212:19, 212:24
**2414** [1] - 156:22
**250** [3] - 190:3, 190:9, 190:16
**25th** [5] - 164:22, 165:10, 165:13, 165:24, 166:4
**26** [1] - 212:24
**26501** [1] - 156:16
**26508** [2] - 156:19, 156:23
**28-year-old** [1] - 186:17
**2:00** [3] - 158:9, 158:10, 158:18
**2:15** [1] - 158:12
**2d** [1] - 181:20
**2nd** [3] - 183:1, 189:3, 189:5

## 3

**3:18** [1] - 202:21
**3:30** [2] - 199:9, 199:17

**3:35** [1] - 202:21
**3:51** [1] - 212:13

## 4

**4** [2] - 165:8, 196:12
**4-6-2021** [1] - 203:25
**40-caliber** [1] - 180:7
**48** [1] - 195:2
**4:00** [1] - 211:14

## 5

**50** [1] - 187:8
**50-yard** [1] - 187:15

## 6

**6** [4] - 156:12, 156:18, 158:1, 212:19
**6:37** [2] - 204:20, 205:6

## 9

**9:00** [10] - 203:25, 207:24, 208:2, 208:9, 209:2, 211:10, 211:15, 211:17, 211:20, 212:10

## A

**a.m** [11] - 203:2, 203:25, 207:24, 208:2, 208:9, 209:2, 210:12, 211:15, 211:17, 211:20, 212:10
**ability** [2] - 181:11, 212:18
**able** [10] - 159:3, 176:17, 177:2, 179:15, 184:4, 184:7, 192:17, 196:5, 196:6, 196:7
**above-styled** [2] - 156:11, 212:19
**absent** [1] - 186:20
**absolute** [2] - 175:8, 175:9
**absolutely** [1] - 207:18
**accelerate** [2] - 178:2, 184:22
**accelerated** [1] - 185:5
**accelerating** [2] - 197:25, 198:2

**accelerator** [1] - 181:13
**accept** [8] - 170:10, 171:1, 172:8, 172:10, 173:19, 201:4, 201:10, 205:12
**acceptable** [1] - 212:5
**accepted** [1] - 201:11
**access** [4] - 191:7, 191:10, 191:13
**accommodate** [2] - 159:22, 206:3
**accordingly** [1] - 175:16
**account** [2] - 161:11, 183:22
**accountable** [1] - 178:25
**accurately** [1] - 172:16
**ACTION** [1] - 156:3
**action** [6] - 156:12, 168:14, 168:15, 168:19, 174:10, 212:19
**actions** [3] - 165:19, 165:23
**actors** [1] - 179:2
**actual** [1] - 190:21
**addition** [1] - 203:4
**additional** [1] - 206:25
**additionally** [2] - 201:15, 206:25
**address** [2] - 161:6, 208:18
**addressed** [2] - 165:9, 171:19
**adjacent** [2] - 191:19, 191:21
**adjourn** [1] - 212:2
**adjourned** [2] - 212:12, 212:13
**adjournment** [2] - 174:4, 174:7
**administer** [2] - 194:6, 194:7
**administrative** [2] - 201:3, 201:6
**Administratrix** [1] - 156:4
**administratrix** [1] - 168:17
**admissible** [5] - 163:5, 171:7, 172:4, 172:7, 172:9
**admitted** [1] - 163:19
**advance** [2] - 167:1, 188:21
**adversarial** [1] - 212:8

**adverse** [1] - 159:20
**advised** [3] - 182:1, 200:9, 203:21
**affairs** [1] - 172:24
**afternoon** [5] - 167:21, 188:16, 199:8, 204:8, 204:13
**age** [1] - 173:6
**agents** [1] - 175:13
**aggressive** [1] - 183:18
**aggressively** [1] - 184:22
**ago** [2] - 187:18, 207:1
**agree** [4] - 163:13, 170:11, 177:6, 184:20
**agreed** [1] - 167:3
**ahead** [1] - 188:14
**aided** [1] - 156:25
**allegations** [3] - 187:2, 187:3, 187:6
**allow** [2] - 171:12, 191:4
**allowed** [1] - 178:19
**almost** [2] - 190:12, 191:24
**alone** [1] - 184:23
**altogether** [1] - 207:19
**ambulance** [1] - 194:5
**Amendment** [3] - 178:12, 179:3, 186:7
**American** [1] - 179:6
**Americans** [3] - 185:18, 187:18, 187:22
**amount** [1] - 188:10
**ample** [1] - 186:10
**analysis** [1] - 170:22
**answer** [5] - 171:23, 182:7, 186:13, 186:22, 196:14
**answered** [1] - 196:15
**answers** [1] - 175:24
**anticipate** [3] - 188:10, 208:14, 211:25
**anticipated** [1] - 205:1
**anticipating** [1] - 200:4
**anyway** [1] - 211:14
**apologies** [4] - 161:1, 161:4, 207:25, 210:19
**apologize** [1] - 210:15
**apparatuses** [1] - 191:17
**apparent** [1] - 173:16
**appear** [3] - 173:14, 209:17, 211:18

**appearance** [2] - 173:6, 203:9
**APPEARANCES** [1] - 156:14
**appeared** [1] - 191:7
**appearing** [2] - 193:3, 201:23
**applies** [1] - 169:17
**apply** [1] - 173:2
**appointment** [1] - 159:15
**appreciate** [1] - 199:5
**appropriate** [4] - 161:21, 186:25, 197:5, 197:6
**April** [5] - 156:12, 158:1, 165:8, 212:19, 212:24
**area** [14] - 184:15, 190:4, 190:16, 190:18, 190:24, 190:25, 191:2, 191:3, 191:14, 191:16, 192:6, 193:16, 193:24
**areas** [1] - 198:12
**arguably** [1] - 164:24
**argue** [1] - 166:10
**argued** [1] - 171:4
**argument** [2] - 161:6, 166:12
**arguments** [5] - 169:18, 169:21, 169:22, 170:1, 170:2
**armed** [9] - 160:2, 160:5, 161:9, 161:17, 162:7, 162:23, 163:9, 189:23, 193:6
**arms** [2] - 181:11, 185:20
**arresting** [1] - 180:18
**arrived** [2] - 184:1, 203:5
**articulated** [1] - 167:7
**aside** [1] - 177:2
**assign** [1] - 173:13
**assist** [5] - 189:12, 189:16, 189:24, 190:2, 190:9
**assisting** [1] - 189:11
**assume** [1] - 200:19
**assumed** [2] - 196:19, 203:19
**assured** [1] - 175:8
**AT** [1] - 156:2
**attach** [1] - 171:1
**attached** [1] - 204:23
**attempt** [3] - 164:14, 175:13, 190:13

2

attempted [3] - 166:4, 201:6, 211:19
attempting [2] - 190:12, 195:18
attempts [2] - 174:18, 190:9
attendance [1] - 203:24
attention [2] - 174:22, 201:12
attorney [5] - 171:5, 171:6, 171:9, 171:13, 195:4
attorneys [4] - 173:21, 173:22, 175:5, 175:13
audio [1] - 204:23
August [6] - 179:21, 181:20, 183:1, 189:3, 189:5, 196:12
Austin [1] - 156:17
authorized [1] - 186:4
automobile [1] - 191:3
available [1] - 195:11
avoid [1] - 175:6
aware [2] - 165:8, 200:19

## B

backed [2] - 191:18, 191:21
background [4] - 172:23, 197:7, 197:8, 197:11
backing [1] - 193:2
Bailey [1] - 156:18
ball [1] - 186:18
based [5] - 159:24, 161:12, 169:24, 172:4, 197:13
basic [2] - 178:22, 185:17
basis [3] - 162:24, 163:8, 164:1
bear [1] - 185:20
begin [8] - 168:1, 176:9, 176:20, 189:16, 189:24, 194:6, 194:7, 212:10
begins [1] - 179:21
behalf [1] - 196:22
behind [4] - 159:1, 188:5, 198:11
belief [3] - 160:1, 193:22, 198:16
believes [1] - 171:7
belong [1] - 158:25
below [2] - 181:10, 184:6

Ben [1] - 179:12
beneficial [1] - 209:5
Benjamin [1] - 156:17
best [1] - 212:18
better [3] - 168:3, 205:4, 209:21
between [1] - 179:10
beyond [1] - 187:3
bias [1] - 173:5
Bill [2] - 185:18, 187:16
bill [2] - 209:13, 209:14
birthday [1] - 186:18
bit [1] - 167:25
black [6] - 179:23, 179:25, 183:16, 183:23, 189:18, 190:7
blame [3] - 174:24, 208:13, 210:24
bled [1] - 178:9
body [3] - 181:10, 183:25, 184:6
bother [1] - 180:5
bound [1] - 170:10
box [1] - 159:4
Branham [25] - 192:2, 194:12, 196:10, 197:18, 198:7, 199:24, 200:4, 201:17, 201:19, 201:22, 202:5, 202:19, 203:7, 203:14, 203:15, 204:7, 204:11, 205:3, 205:11, 206:12, 207:23, 208:16, 209:4, 211:11
Branham's [2] - 200:18, 203:9
break [9] - 159:10, 167:21, 177:14, 177:16, 199:8, 200:7, 200:20, 202:4, 206:9
breaker [1] - 186:8
brief [2] - 159:24, 168:2
bring [7] - 159:7, 167:12, 168:14, 172:22, 174:21, 208:11, 209:22
brings [2] - 178:11, 183:9
broad [1] - 188:5
broke [1] - 188:4
broken [1] - 179:9
brought [1] - 168:19

Brown [1] - 156:21
building [3] - 159:16, 205:20, 206:20
bullet [1] - 181:4
buries [1] - 186:15

## C

C1 [1] - 181:5
calculus [3] - 160:9, 160:12, 160:22
calendars [1] - 206:2
Canyon [1] - 156:18
capacity [4] - 156:4, 156:9, 168:16, 168:21
car [1] - 184:17
care [2] - 173:24, 176:11
carefully [1] - 174:5
Carnegie [1] - 190:16
Carroll [8] - 156:21, 160:25, 161:1, 162:16, 163:10, 164:20, 189:1, 204:20
CARROLL [11] - 161:2, 161:5, 161:25, 162:3, 162:6, 162:11, 162:18, 162:25, 163:7, 163:11, 164:9
case [93] - 160:8, 160:10, 161:21, 162:21, 163:13, 165:15, 165:20, 166:21, 167:22, 167:24, 167:25, 168:9, 168:12, 168:14, 168:20, 168:23, 168:25, 169:3, 169:11, 169:17, 170:4, 170:7, 170:15, 170:21, 170:24, 171:5, 173:5, 173:11, 174:1, 174:7, 174:8, 174:17, 174:18, 175:6, 175:15, 175:17, 175:23, 176:5, 176:10, 176:15, 178:1, 178:2, 178:18, 178:22, 179:5, 180:3, 181:8, 181:14, 181:24, 182:3, 182:8, 182:9, 182:21, 183:24, 184:5, 184:8,

184:12, 184:20, 185:11, 185:13, 185:22, 186:1, 186:14, 186:22, 187:1, 187:6, 187:8, 187:10, 187:12, 187:14, 188:22, 188:23, 188:24, 194:24, 195:8, 195:12, 196:19, 197:8, 198:20, 198:21, 199:3, 199:13, 199:15, 199:16, 200:4, 201:25, 210:22, 211:3, 211:4, 211:23, 212:7
caused [1] - 179:4
center [2] - 193:4, 193:8
certain [2] - 168:3, 171:25
certainly [12] - 160:23, 162:15, 167:2, 168:10, 177:22, 187:25, 199:11, 207:5, 207:6, 210:8, 211:5
certify [2] - 212:17, 212:21
chair [1] - 176:1
chance [3] - 159:11, 169:6, 199:8
change [1] - 208:17
charges [1] - 165:11
chase [2] - 162:22, 163:14
check [1] - 202:16
checked [2] - 191:7, 199:25
chief [2] - 200:5, 209:6
children [4] - 179:17, 186:16, 189:3
chimed [1] - 162:21
choose [2] - 172:12, 178:25
chose [1] - 208:21
chosen [1] - 206:5
Christy [2] - 168:16, 179:13
CHRISTY [1] - 156:3
circumstances [3] - 161:21, 197:5, 208:10
citizens [1] - 197:4
citizens' [1] - 178:19
civil [4] - 168:14, 168:19, 168:23, 174:10
CIVIL [1] - 156:3

civilian [1] - 191:6
claim [2] - 166:20, 169:10
claims [4] - 166:23, 184:10, 184:25, 187:1
CLARKSBURG [1] - 156:2
Clarksburg [1] - 156:12
clear [6] - 162:14, 206:1, 206:4, 208:5, 212:1, 212:6
cleared [1] - 166:25
clearest [1] - 180:9
clearing [3] - 178:4, 180:4, 195:25
clearly [4] - 172:19, 182:22, 192:20, 206:6
client [2] - 171:9, 207:22
client's [1] - 168:25
close [1] - 168:11
closing [3] - 169:18, 169:21, 169:25
clothes [1] - 208:17
clutch [1] - 184:18
cold [1] - 210:15
collegial [1] - 212:5
Columbus [1] - 211:17
column [1] - 178:8
combine [1] - 187:7
coming [4] - 183:19, 191:22, 193:15, 194:10
commander [1] - 201:8
commands [5] - 192:23, 192:25, 193:9, 193:12, 193:18
commence [1] - 167:24
commenced [1] - 162:20
comment [3] - 163:11, 170:15, 170:20
comments [3] - 170:18, 170:21, 208:5
commitment [1] - 164:15
common [2] - 184:21, 184:23
communicate [3] - 175:13, 175:14, 208:18
communicated [1] -

3

205:7
**communication** [2] -
183:3, 207:8
**communications** [1] -
204:12
**community** [1] -
197:12
**company** [1] - 199:12
**compel** [3] - 201:23,
203:9, 203:24
**compelling** [1] -
163:25
**competent** [1] -
172:10
**competing** [1] -
196:19
**complaint** [3] - 166:3,
166:8, 166:10
**complete** [3] - 176:18,
196:7, 205:24
**completed** [1] -
196:11
**completely** [1] -
160:22
**compliance** [1] -
158:8
**complicated** [2] -
188:22, 188:23
**comply** [6] - 178:21,
192:25, 193:11,
193:18, 193:19,
212:21
**computer** [1] - 156:25
**computer-aided** [1] -
156:25
**concern** [3] - 176:14,
205:24, 206:7
**concerned** [1] - 173:9
**concerning** [1] -
175:14
**concerns** [3] - 164:25,
178:2, 185:23
**concluded** [1] - 170:2
**conclusion** [8] -
169:2, 169:11,
169:16, 170:17,
174:11, 175:12,
176:8, 198:21
**conduct** [1] - 195:5
**conducted** [2] - 158:1,
196:25
**conducting** [1] -
197:11
**conducts** [1] - 194:13
**confer** [1] - 212:1
**conference** [2] -
206:4, 212:22
**confined** [1] - 191:17
**conflicting** [1] -
173:19

**conform** [1] - 172:14
**consequences** [2] -
208:23, 209:18
**consider** [8] - 165:17,
167:6, 170:3,
170:17, 172:2,
173:15, 173:25,
210:14
**consideration** [3] -
165:21, 172:6,
173:14
**considered** [1] -
165:17
**considering** [1] -
166:21
**consistent** [1] -
166:22
**console** [2] - 193:4,
193:8
**Constitution** [3] -
178:13, 185:18,
187:16
**constitutional** [4] -
178:19, 178:24,
179:5, 185:23
**contact** [5] - 175:2,
195:3, 202:5, 207:7,
207:22
**contacted** [1] - 166:19
**contentions** [1] -
169:23
**continue** [2] - 191:5,
211:2
**continued** [3] -
192:16, 193:19,
201:13
**continues** [1] - 193:8
**continuing** [3] -
192:22, 193:17,
195:20
**convene** [2] - 210:4,
211:10
**converse** [3] - 175:1,
175:3, 175:7
**conversing** [1] - 175:6
**conveyed** [1] - 195:4
**cooperate** [2] -
181:22, 206:1
**cooperating** [1] -
182:2
**coordinate** [1] -
206:24
**coordinating** [1] -
206:2
**copied** [1] - 204:21
**copy** [2] - 182:19,
202:25
**cord** [2] - 181:6, 181:9
**Corey** [4] - 179:22,
181:25, 183:1,

189:10
**correct** [6] - 160:16,
162:3, 183:6, 207:9,
207:10, 212:18
**correctional** [1] -
197:3
**counsel** [23] - 158:10,
159:2, 167:22,
168:24, 168:25,
169:9, 169:14,
174:13, 177:10,
177:12, 177:24,
188:9, 188:15,
199:6, 201:15,
204:16, 205:10,
206:1, 206:10,
209:2, 212:1, 212:5
**countless** [1] - 186:19
**County** [15] - 166:24,
178:4, 179:7,
179:20, 179:25,
185:23, 185:25,
186:2, 188:25,
189:6, 190:1,
190:25, 191:13,
192:12, 192:21
**couple** [1] - 177:20
**course** [16] - 159:17,
164:6, 168:4, 168:6,
168:13, 169:8,
170:6, 170:16,
171:2, 174:4, 174:9,
175:18, 208:12,
209:2, 210:3, 212:9
**court** [16] - 158:3,
158:22, 166:7,
167:12, 167:15,
172:19, 174:7,
175:11, 199:20,
201:24, 203:9,
208:20, 208:23,
209:25, 211:9
**Court** [28] - 161:14,
162:7, 162:19,
170:8, 170:18,
170:20, 171:24,
172:5, 174:4,
174:14, 174:20,
174:22, 175:5,
175:19, 177:7,
177:10, 177:23,
179:2, 188:15,
200:11, 201:2,
201:23, 203:1,
209:17, 212:4,
212:16, 212:22,
213:2
**COURT** [60] - 156:1,
158:5, 158:16,
158:18, 158:23,

160:14, 160:19,
160:24, 161:1,
161:3, 161:23,
162:2, 162:5, 162:9,
162:15, 162:24,
163:4, 163:8,
163:17, 163:24,
164:10, 164:15,
164:18, 166:14,
166:17, 167:2,
167:11, 167:16,
176:25, 177:5,
177:7, 177:22,
188:9, 188:13,
199:6, 199:21,
200:17, 200:24,
202:2, 202:10,
202:22, 203:8,
203:11, 203:13,
203:23, 204:1,
204:4, 205:9,
205:21, 205:23,
207:5, 207:12,
207:18, 209:10,
209:16, 210:1,
211:10, 211:21
**Court's** [8] - 161:12,
164:20, 165:8,
165:25, 166:22,
170:13, 170:19,
201:12
**courthouse** [1] -
178:11
**courtroom** [10] -
158:9, 167:14,
172:22, 174:2,
175:4, 175:25,
176:17, 177:9,
209:24, 212:11
**cover** [6] - 181:16,
183:21, 187:25,
188:1, 207:15,
207:16
**coverup** [1] - 186:11
**CPR** [1] - 194:7
**Cranberry** [1] - 156:22
**create** [1] - 195:5
**creation** [1] - 210:2
**credibility** [1] - 171:17
**criminal** [5] - 161:18,
165:11, 166:3,
166:8, 166:10
**cross** [2] - 163:25,
164:6
**cross-examination** [1]
- 163:25
**crossed** [1] - 159:20
**cruiser** [29] - 180:5,
180:19, 191:9,

191:12, 191:20,
191:21, 191:24,
192:7, 192:9,
192:10, 192:11,
192:14, 192:15,
192:17, 192:19,
192:20, 192:22,
195:16, 195:17,
195:18, 195:19,
195:20, 196:1,
196:4, 196:6
**Crum** [9] - 202:12,
203:4, 207:25,
208:7, 209:3,
211:11, 211:17,
211:21, 211:22
**curious** [2] - 164:16,
174:23
**current** [2] - 200:18,
202:10
**Cutter** [2] - 212:15,
213:1

## D

**date** [2] - 203:8,
203:23
**David** [2] - 168:21,
188:24
**DAVID** [1] - 156:8
**daylight** [1] - 188:5
**deadly** [6] - 165:18,
165:22, 183:16,
185:11, 197:6,
198:18
**deal** [3] - 159:21,
206:12
**dealing** [1] - 201:14
**dealings** [1] - 173:1
**death** [1] - 178:10
**debris** [1] - 185:3
**decide** [2] - 175:23,
176:9
**deem** [1] - 163:4
**defendant** [44] -
168:20, 168:25,
169:11, 169:12,
178:5, 179:7,
179:19, 179:22,
179:24, 180:4,
180:7, 180:11,
180:15, 180:18,
180:21, 181:1,
181:14, 181:22,
182:4, 182:10,
182:11, 182:12,
182:15, 182:19,
182:22, 182:23,
183:6, 183:12,
183:13, 183:21,

184:9, 184:10,
184:13, 184:16,
184:25, 186:2,
186:6, 186:7, 186:8,
186:23, 188:3,
196:22
**Defendant** [5] -
156:10, 156:20,
160:14, 161:8, 164:4
**defendant's** [5] -
180:15, 180:23,
181:18, 183:9, 185:9
**defendants** [1] -
168:20
**defense** [2] - 169:14,
201:15
**defer** [1] - 169:1
**degree** [1] - 172:12
**deliberation** [2] -
175:14, 175:18
**deliberations** [3] -
173:2, 174:12,
176:20
**denied** [2] - 166:15,
179:19
**Dennis** [2] - 165:15,
194:20
**depart** [1] - 199:12
**department** [7] -
178:21, 189:8,
189:9, 189:11,
189:13, 190:1,
195:10
**Department** [8] -
166:25, 185:24,
186:3, 188:25,
189:7, 191:13,
192:13, 192:21
**deposition** [5] -
160:11, 160:15,
165:16, 195:24,
204:12
**deputies** [3] - 162:22,
163:13, 194:9
**deputy** [1] - 161:10,
162:21, 189:6,
189:8, 189:12,
190:14, 190:15,
190:17, 190:18,
190:23, 194:2
**Deputy** [87] - 161:17,
162:18, 162:20,
163:6, 164:8,
164:12, 179:22,
182:1, 182:10,
182:11, 182:12,
182:17, 182:19,
182:22, 183:6,
188:24, 189:2,
189:6, 189:13,

189:15, 189:16,
189:24, 190:5,
190:8, 190:11,
190:14, 190:16,
190:21, 190:24,
191:1, 191:4, 191:6,
191:7, 191:9,
191:11, 191:18,
191:20, 191:22,
191:24, 191:25,
192:7, 192:9,
192:10, 192:16,
192:21, 193:1,
193:6, 193:8,
193:13, 193:17,
193:20, 193:21,
194:2, 194:5,
194:14, 194:15,
194:17, 194:21,
194:22, 195:6,
195:9, 195:14,
195:21, 195:24,
196:2, 196:8, 196:9,
196:12, 196:22,
197:15, 197:19,
197:20, 197:21,
197:24, 198:1,
198:2, 198:13,
198:14, 198:15,
199:3
**describe** [1] - 193:13
**described** [1] - 192:4
**description** [1] - 190:6
**designation** [2] -
166:6, 166:9
**designed** [2] - 169:6,
169:23
**despite** [1] - 174:18
**detachment** [5] -
201:3, 201:8, 203:17
**detailed** [2] - 168:10,
176:19
**details** [1] - 167:25
**deteriorated** [1] -
212:6
**determination** [1] -
173:12
**determine** [7] -
165:22, 170:4,
170:25, 172:12,
172:24, 173:18,
197:4
**determining** [2] -
172:10, 173:12
**developed** [1] -
196:16
**different** [3] - 182:25,
195:22
**difficult** [3] - 186:13,
186:21, 188:22

**dire** [1] - 158:1
**direct** [2] - 171:24,
208:5
**directed** [1] - 175:18
**direction** [1] - 196:8
**directly** [3] - 180:8,
193:20, 195:7
**director** [1] - 205:18
**dirt** [3] - 180:1, 180:2,
180:23
**disagree** [1] - 164:20
**discharged** [3] -
193:23, 193:24,
194:1
**discrepancies** [1] -
173:16
**discrepancy** [1] -
173:15
**discuss** [9] - 159:6,
174:8, 174:17,
174:18, 175:16,
176:15, 199:13,
210:22, 212:2
**discussed** [3] -
179:16, 188:11,
211:4
**discussion** [2] -
159:24, 202:7
**discussions** [1] -
183:1
**dispute** [1] - 176:25
**disregard** [4] - 170:21,
171:20, 172:1, 172:3
**distract** [1] - 175:23
**DISTRICT** [2] - 156:1,
156:1
**district** [1] - 175:11
**District** [5] - 156:12,
212:16, 212:17,
213:2, 213:3
**disturbance** [2] -
185:1, 198:9
**diving** [1] - 205:13
**docket** [1] - 203:2
**document** [1] - 207:17
**doubt** [1] - 187:3
**down** [9] - 166:2,
176:1, 178:9,
180:23, 188:5,
203:6, 205:9,
206:19, 208:8
**Dr** [5] - 205:17,
206:17, 206:18,
207:8, 209:5
**draw** [3] - 169:20,
171:8, 171:21
**drive** [3] - 183:17,
184:19, 193:20
**driven** [2] - 179:24,
189:14

**driver's** [1] - 192:8
**driving** [5] - 189:18,
189:21, 191:5,
191:25, 192:8
**drove** [1] - 180:23
**ducks** [1] - 158:11
**due** [1] - 210:1
**during** [22] - 160:2,
167:25, 168:4,
168:6, 168:12,
168:22, 169:8,
169:24, 170:6,
170:16, 171:2,
171:24, 173:22,
174:4, 174:7, 174:9,
174:11, 175:3,
179:13, 200:7,
206:9, 212:9
**Durst** [14] - 156:20,
158:16, 160:24,
166:19, 188:10,
200:1, 200:20,
202:4, 202:18,
203:14, 204:4,
204:21, 207:3,
207:21
**DURST** [13] - 158:17,
160:25, 165:6,
166:16, 167:10,
177:1, 188:12,
188:15, 200:3,
200:21, 203:15,
204:6, 207:10
**Durst.........................
.........187** [1] - 157:4
**duty** [3] - 171:5, 189:6,
189:10

**E**

**ear** [1] - 181:2
**early** [1] - 159:17
**easiest** [1] - 207:19
**East** [1] - 190:24
**easy** [1] - 186:9
**effect** [4] - 161:8,
163:2, 171:15,
171:17
**efficient** [2] - 177:15,
210:7
**efficiently** [1] - 206:11
**effort** [1] - 192:11
**efforts** [2] - 208:7,
211:3
**either** [6] - 170:15,
174:8, 198:16,
205:20, 206:24,
208:8
**electronic** [1] - 202:25
**email** [1] - 204:19

**emphasize** [1] - 170:9
**en** [1] - 203:4
**end** [4] - 167:4,
169:25, 189:3,
204:14
**ended** [1] - 175:17
**enforce** [1] - 178:25
**enforceable** [2] -
208:19, 209:16
**enforcement** [5] -
193:12, 196:24,
197:3, 197:13,
208:20
**engine** [2] - 193:15,
197:25
**entered** [1] - 195:25
**entering** [1] - 180:4
**entire** [1] - 180:19
**entirely** [2] - 170:21,
171:20
**entitled** [2] - 175:10,
176:1
**entry** [1] - 193:24
**equivocation** [1] -
197:16
**established** [1] -
186:12
**estate** [2] - 156:5,
168:17
**evaluate** [2] - 172:20,
187:5
**evaluating** [1] -
165:18
**evaluation** [1] -
172:11
**evening** [1] - 174:24
**event** [4] - 160:23,
164:2, 172:18,
180:19
**events** [3] - 161:23,
164:22, 186:19
**everyday** [2] - 172:23,
173:1
**evidence** [89] - 163:4,
164:3, 164:19,
164:21, 165:1,
166:11, 167:4,
168:11, 168:12,
169:5, 169:7,
169:10, 169:12,
169:13, 169:14,
169:15, 169:16,
169:19, 169:21,
169:22, 169:24,
170:5, 170:15,
170:20, 171:3,
171:6, 171:8,
171:11, 171:12,
171:15, 171:18,
171:25, 172:1,

172:2, 172:5, 172:9,
172:10, 173:11,
173:15, 174:12,
176:13, 176:16,
178:5, 178:18,
178:20, 178:22,
179:4, 179:19,
180:2, 180:3, 180:6,
180:16, 180:17,
180:22, 181:8,
181:14, 181:16,
181:19, 181:24,
182:3, 182:7, 182:8,
182:9, 182:12,
182:21, 183:11,
183:23, 184:3,
184:5, 184:8,
184:12, 184:24,
185:1, 185:2, 185:4,
186:1, 186:10,
187:5, 187:7, 193:4,
194:18, 197:23,
198:6, 198:8,
198:19, 198:24,
199:2
**evidentiary** [1] - 160:9
**exact** [1] - 162:6
**exactly** [3] - 162:5,
163:24, 187:6
**examination** [2] -
163:25, 173:22
**examiner** [3] - 206:13,
209:7, 211:12
**examiner's** [2] -
207:1, 209:10
**example** [1] - 187:2
**exception** [1] - 177:1
**excluded** [4] - 161:7,
161:16, 172:6, 177:9
**excludes** [1] - 172:5
**exclusion** [2] -
164:21, 177:3
**exclusive** [1] - 170:7
**excuse** [3] - 208:12,
210:11, 210:19
**excused** [2] - 199:19,
211:8
**executioner** [3] -
178:17, 180:25,
187:25
**exhibit** [5] - 166:7,
166:9, 166:12,
166:24, 204:22
**exhibits** [4] - 166:9,
167:4, 176:12,
198:25
**exit** [1] - 181:3
**exited** [4] - 192:7,
192:10, 192:14,
195:17

**exiting** [2] - 180:19,
195:16
**expect** [3] - 206:1,
212:5, 212:7
**expectation** [1] -
206:6
**expected** [1] - 206:14
**experience** [5] -
172:23, 196:24,
197:13, 203:7, 210:6
**expert** [11] - 165:14,
165:20, 177:2,
185:9, 194:19,
195:7, 196:19,
196:20, 196:21,
197:10
**experts** [3] - 163:12,
177:9, 197:14
**explain** [2] - 182:6,
197:17, 203:7
**explained** [1] - 168:22
**explaining** [1] -
208:22
**explanation** [1] -
182:15
**express** [2] - 172:18,
176:4
**expressions** [1] -
170:19
**expressly** [1] - 171:14
**extensive** [1] - 183:11
**extensively** [1] -
177:10
**extent** [1] - 204:9

## F

**face** [4] - 176:1, 178:7,
208:22, 209:18
**fact** [14] - 161:16,
163:3, 166:19,
174:21, 182:18,
183:1, 183:17,
183:22, 183:25,
184:16, 184:23,
194:22, 195:1, 201:9
**factors** [3] - 165:16,
165:18, 165:21
**facts** [13] - 170:4,
170:7, 170:19,
170:23, 170:24,
172:14, 173:8,
174:19, 174:21,
176:5, 179:16,
188:23, 196:16
**factual** [1] - 176:10
**fail** [1] - 172:14
**failed** [2] - 183:22,
193:11
**Fairmont** [2] - 202:15,

203:19
**fairness** [1] - 174:9
**faithfully** [1] - 174:6
**false** [2] - 183:5,
183:21
**falsehood** [1] - 172:15
**family** [3] - 174:23,
179:12, 198:18
**far** [2] - 165:1, 211:4
**father** [4] - 179:14,
186:15, 186:16,
186:17
**father's** [1] - 186:19
**fathers** [1] - 185:16
**Faulkner** [3] - 196:23,
197:7
**faulty** [1] - 172:18
**favor** [2] - 187:8,
199:3
**fear** [1] - 188:3
**federal** [1] - 178:11
**fees** [1] - 212:21
**fellow** [3] - 174:22,
175:22, 210:23
**felt** [1] - 174:21
**FEMALE** [1] - 211:16
**female** [1] - 191:3
**few** [1] - 176:8
**field** [5] - 170:8,
179:20, 181:19,
187:11, 187:13
**file** [3] - 207:13,
207:14, 207:18
**filed** [11] - 158:2,
166:3, 166:7,
200:10, 201:17,
201:20, 202:8,
202:9, 203:2,
204:16, 205:7
**final** [6] - 170:22,
174:12, 174:13,
176:18, 178:10,
201:11
**finally** [1] - 201:11
**fine** [1] - 207:18
**fingers** [1] - 159:20
**fire** [1] - 180:16
**fired** [6] - 178:5,
180:11, 181:1,
194:4, 197:22
**firm** [1] - 164:15
**firmly** [1] - 186:12
**first** [16] - 159:13,
160:5, 172:11,
173:15, 181:18,
188:17, 194:9,
199:10, 199:23,
200:1, 201:4,
201:25, 206:19,
210:2, 210:21,

211:19
**fitting** [1] - 173:17
**five** [4] - 180:11,
183:23, 184:4,
184:20
**fix** [1] - 158:24
**Flanagan** [1] - 156:21
**flee** [1] - 190:13
**floor** [1] - 206:19
**floorboard** [4] -
160:15, 160:22,
193:3, 193:8
**flung** [1] - 185:3
**focus** [1] - 199:1
**folks** [6] - 184:11,
186:9, 195:2, 205:2,
206:14, 208:14
**follow** [1] - 180:22
**followed** [2] - 179:24,
186:12
**following** [11] - 158:3,
158:21, 167:14,
168:23, 169:16,
174:6, 183:12,
199:19, 209:24,
211:8, 212:2
**foot** [1] - 183:19
**football** [2] - 187:11,
187:15
**force** [18] - 160:9,
165:18, 165:22,
166:25, 183:16,
185:11, 185:15,
186:3, 186:4, 186:7,
197:1, 197:5, 197:6,
198:18, 198:20
**foregoing** [1] - 212:18
**forever** [2] - 187:22,
187:23
**forgot** [1] - 158:5
**form** [1] - 176:4
**format** [1] - 212:21
**formula** [1] - 172:20
**formulate** [1] - 197:8
**Forsyth** [54] - 161:8,
161:17, 164:4,
168:21, 188:24,
189:2, 189:6,
189:16, 189:24,
190:5, 190:8,
190:11, 190:14,
190:16, 190:21,
190:24, 191:4,
191:6, 191:11,
191:18, 191:22,
191:24, 191:25,
192:7, 192:9,
192:10, 192:16,
192:21, 193:1,
193:6, 193:8,

193:13, 193:17,
193:20, 193:21,
194:2, 194:14,
194:17, 194:21,
195:6, 196:2, 196:8,
196:9, 196:12,
196:22, 197:15,
197:19, 197:21,
197:24, 198:1,
198:2, 198:13,
198:15, 199:3
**FORSYTH** [1] - 156:8
**Forsyth's** [4] - 160:15,
191:9, 191:20,
195:21
**forth** [1] - 170:10
**forward** [6] - 191:23,
192:16, 192:22,
196:8, 204:1, 212:4
**forward-moving** [1] -
196:8
**forwarding** [1] -
207:12
**foundation** [1] - 165:2
**foundational** [1] -
178:23
**founding** [1] - 185:16
**four** [2] - 180:10,
208:11
**Fourth** [3] - 178:12,
179:3, 186:7
**Fowler** [1] - 156:21
**fracturing** [1] - 181:5
**free** [4] - 164:6,
175:25, 185:21,
187:19
**freedom** [1] - 185:19
**friends** [1] - 212:7
**front** [7] - 178:6,
180:8, 180:12,
180:14, 195:18,
195:19, 196:4
**full** [1] - 158:7
**fully** [1] - 176:20
**functions** [1] - 167:6

## G

**games** [1] - 186:18
**gas** [10] - 180:3,
183:19, 191:11,
191:15, 191:18,
191:19, 191:23,
193:14, 193:16,
197:24
**gate** [1] - 167:6
**gatekeeping** [1] -
167:6
**gear** [5] - 177:25,
184:17, 185:7,

188:7, 198:1
**gears** [1] - 181:12
**general** [1] - 190:15
**generations** [1] -
187:19
**gentleman** [3] -
189:10, 196:23,
202:17
**gentlemen** [19] -
167:17, 177:13,
177:25, 180:10,
181:4, 181:16,
182:4, 182:7, 183:4,
183:20, 184:21,
185:6, 186:21,
186:22, 188:16,
198:3, 199:7, 210:1,
210:11
**Given** [1] - 212:24
**given** [8] - 159:3,
159:15, 164:3,
165:2, 165:14,
172:11, 179:15,
187:21
**Glasser** [1] - 156:18
**goals** [1] - 187:14
**government** [6] -
178:14, 178:15,
179:2, 185:22,
187:20, 187:24
**grant** [1] - 177:7
**great** [2] - 159:9,
185:17
**greater** [1] - 176:1
**Greenbag** [1] - 156:15
**ground** [2] - 185:1,
198:8
**grounds** [1] - 160:7
**grow** [1] - 199:11
**grown** [1] - 191:14
**grown-up** [1] - 191:14
**guaranteed** [1] -
187:17
**guess** [1] - 166:18
**gun** [1] - 179:10
**gunned** [1] - 188:5
**guys** [3] - 158:18,
159:10, 188:19

## H

**hand** [5] - 170:9,
173:24, 177:16,
178:14, 212:24
**hands** [8] - 181:11,
185:22, 187:20,
188:4, 192:24,
193:10
**harm** [1] - 179:4
**head** [1] - 203:17

**hear** [26] - 167:21,
168:11, 170:5,
171:2, 172:16,
173:23, 175:24,
182:18, 190:19,
190:21, 194:3,
195:9, 195:14,
195:16, 196:10,
196:13, 196:16,
196:18, 196:20,
196:21, 197:15,
208:9, 209:3, 209:4,
210:2, 210:21
**heard** [14] - 160:5,
162:7, 163:9,
173:25, 174:13,
189:22, 190:1,
193:14, 194:16,
196:3, 197:24,
198:24, 199:2
**hearing** [2] - 158:4,
158:21
**hearings** [1] - 206:8
**hearsay** [4] - 160:5,
161:6, 161:7, 164:3
**heartbreaking** [1] -
179:21
**heavy** [1] - 183:19
**help** [5] - 168:3, 168:5,
175:20, 205:3, 205:4
**helpful** [1] - 162:19
**hence** [1] - 202:2
**hereby** [1] - 212:17
**hesitation** [1] - 197:16
**High** [1] - 190:4
**higher** [1] - 196:6
**himself** [4] - 172:19,
180:8, 184:16,
198:19
**hired** [1] - 194:19
**history** [2] - 161:13,
161:18
**Hogan** [3] - 156:17,
179:12, 204:21
**hold** [1] - 178:25
**holding** [1] - 184:18
**holster** [1] - 180:8
**home** [4] - 174:24,
189:2, 198:17,
210:24
**Honor** [54] - 158:15,
158:17, 160:3,
160:17, 160:25,
161:5, 162:4,
162:11, 162:19,
163:1, 163:12,
163:19, 164:9,
164:12, 165:6,
166:2, 166:13,
166:16, 166:18,

176:23, 177:1,
177:6, 177:21,
188:8, 199:23,
200:3, 200:16,
200:22, 201:1,
201:14, 201:23,
202:1, 202:9,
202:25, 203:10,
203:15, 203:20,
203:22, 203:25,
204:3, 204:6, 204:8,
204:19, 205:6,
205:17, 205:19,
206:18, 206:21,
207:2, 207:11,
207:16, 209:9,
209:14, 211:16
**Honorable** [1] -
156:12
**hope** [1] - 179:15
**hostile** [2] - 201:15,
202:1
**hour** [2] - 203:20,
207:23
**hours** [1] - 195:3
**human** [2] - 175:1,
186:14
**hundred** [1] - 187:2
**hundreds** [1] - 187:18
**hurried** [1] - 210:8

## I

**idea** [4] - 158:6, 160:6,
163:22, 205:4
**identified** [4] - 166:6,
166:8, 166:11,
204:22
**identifies** [1] - 191:12
**ignored** [1] - 179:9
**immediate** [1] -
205:24
**impaneled** [1] - 158:2
**impartiality** [2] - 175:9
**implication** [1] -
204:10
**important** [5] - 163:2,
174:5, 181:7, 187:21
**importantly** [1] - 181:3
**impression** [1] - 176:2
**improbability** [1] -
173:10
**improper** [1] - 175:16
**incident** [6] - 161:13,
165:10, 165:13,
165:24, 166:4,
194:11
**incidents** [1] - 164:22
**include** [1] - 185:17
**included** [1] - 185:20

**includes** [2] - 174:23,
210:22
**including** [1] - 187:19
**inconvenient** [1] -
208:4
**independent** [2] -
199:15, 211:2
**INDEX** [1] - 157:1
**indicated** [8] - 177:13,
193:5, 194:12,
195:10, 198:22,
200:7, 200:11,
200:13
**indicating** [1] - 171:14
**indication** [1] - 160:21
**individual** [3] - 156:9,
160:4, 168:21
**individuals** [4] -
197:3, 197:12,
205:4, 206:22
**inexcusable** [1] -
208:25
**inference** [2] - 171:8,
171:21
**inferences** [1] -
169:19
**influenced** [2] - 176:7,
204:10
**information** [19] -
160:6, 162:23,
163:14, 163:15,
163:20, 163:23,
165:13, 189:19,
189:22, 190:1,
192:1, 193:6, 195:4,
196:15, 201:1,
201:21, 202:5,
207:7, 207:15
**injured** [2] - 193:22,
198:17
**inquired** [1] - 196:15
**inside** [1] - 178:3
**instant** [1] - 181:10
**instantly** [2] - 178:8,
181:9
**instead** [6] - 169:5,
181:3, 187:4,
193:12, 207:12
**instruct** [5] - 169:17,
172:1, 179:2, 187:4,
195:2
**instructed** [2] - 172:3,
174:14
**instructing** [1] -
170:16
**instructions** [15] -
159:8, 165:5,
167:20, 168:2,
168:8, 168:10,
170:2, 170:11,

170:13, 174:6,
176:18, 176:19,
177:15, 198:22,
199:13
**insuring** [1] - 187:22
**intend** [2] - 162:12,
184:23
**intended** [3] - 168:8,
185:24, 192:18
**intends** [2] - 169:7,
212:2
**intention** [2] - 180:18,
192:10
**intentionally** [1] -
172:15
**interchange** [1] -
174:15
**interest** [2] - 173:4
**interested** [1] - 201:2
**interestingly** [1] -
194:18
**interject** [1] - 167:5
**interrupt** [1] - 173:21
**interrupted** [1] - 204:5
**introduce** [8] - 169:7,
169:8, 169:10,
169:12, 169:13,
169:14, 169:15,
181:16
**introduced** [2] -
171:12, 198:25
**introduction** [1] -
168:9
**invade** [1] - 170:8
**investigate** [2] -
194:11, 211:3
**investigated** [1] -
185:13
**investigating** [4] -
181:21, 181:25,
182:13, 184:1
**investigation** [3] -
194:14, 196:11,
196:17
**involved** [2] - 189:15,
205:25
**issue** [10] - 159:7,
160:17, 161:16,
164:19, 194:21,
195:1, 198:13,
200:1, 201:22, 210:2
**issued** [1] - 208:20
**issues** [5] - 164:23,
174:1, 176:10,
199:16, 211:3
**itself** [3] - 160:4,
178:8, 181:4

7

## J

**Jeep** [66] - 177:25, 178:4, 178:6, 179:23, 179:25, 180:9, 180:12, 180:14, 180:16, 181:12, 183:16, 183:22, 183:23, 183:24, 184:4, 184:7, 184:8, 184:24, 185:1, 185:3, 185:4, 185:7, 186:5, 186:6, 188:7, 189:18, 189:19, 190:5, 190:7, 190:10, 190:11, 190:12, 190:17, 190:19, 190:23, 191:1, 191:5, 191:18, 191:20, 191:23, 192:3, 192:5, 192:12, 193:2, 193:15, 193:19, 193:20, 193:23, 193:24, 194:1, 194:6, 196:1, 196:2, 196:5, 196:7, 196:10, 197:15, 197:17, 197:21, 198:6, 198:11, 198:12, 198:13, 198:15
**Jill** [2] - 212:15, 213:1
**job** [2] - 176:9, 186:9
**jobs** [2] - 188:19, 188:20
**join** [2] - 177:3, 211:21
**joint** [3] - 166:6, 166:9, 177:8
**Jontz** [2] - 156:5, 168:18
**judge** [6] - 163:11, 170:14, 178:16, 180:24, 186:25, 187:24
**Judge** [4] - 156:12, 156:12, 187:4, 198:22
**judges** [4] - 170:7, 170:23, 170:24, 171:16
**Judicial** [1] - 212:22
**July** [5] - 164:22, 165:10, 165:13, 165:24, 166:4
**jump** [1] - 177:17
**jumped** [1] - 180:4
**juries** [1] - 178:24
**juror** [2] - 173:3, 176:2

**jurors** [11] - 159:4, 168:6, 169:20, 170:22, 171:16, 174:23, 175:10, 175:22, 176:7, 186:9, 210:23
**jurors'** [4] - 206:7, 206:11, 208:24, 212:9
**jury** [31] - 158:1, 158:4, 158:6, 158:21, 159:7, 159:18, 164:25, 165:4, 167:12, 167:14, 168:1, 168:22, 170:3, 170:16, 174:16, 175:3, 175:14, 175:15, 175:17, 175:22, 178:16, 180:24, 187:24, 188:16, 199:7, 199:19, 204:24, 208:12, 209:22, 209:24, 211:8
**Jury** [1] - 156:11
**jury's** [1] - 205:25
**justice** [2] - 179:20, 188:4, 201:10
**justification** [1] - 183:15
**justified** [6] - 165:22, 182:5, 185:12, 197:2, 198:18, 198:20

## K

**keep** [7] - 159:19, 174:10, 175:21, 176:8, 176:16, 197:10, 197:14
**kept** [1] - 167:6
**key** [2] - 176:8, 183:22
**kidding** [1] - 209:19
**killed** [4] - 184:9, 186:23, 193:22, 198:17
**killing** [9] - 178:3, 178:14, 182:5, 182:16, 183:7, 184:3, 185:22, 186:11, 187:20
**kind** [8] - 165:10, 191:8, 191:9, 191:14, 191:19, 192:4, 192:11, 198:23
**kindly** [3] - 202:18, 205:23, 211:13

**Kleeh** [1] - 156:12
**knowing** [1] - 163:20
**knowingly** [1] - 178:19
**known** [1] - 182:13
**knows** [2] - 200:2, 209:12

## L

**lack** [2] - 166:23, 173:4
**ladies** [19] - 167:16, 177:13, 177:25, 180:10, 181:4, 181:15, 182:3, 182:7, 183:4, 183:20, 184:21, 185:6, 186:20, 186:22, 188:16, 198:3, 199:7, 210:1, 210:11
**laptop** [1] - 203:10
**Last** [1] - 160:4
**last** [8] - 162:7, 162:23, 163:9, 189:22, 199:24, 200:9, 202:9, 204:18
**lastly** [1] - 166:2
**late** [1] - 159:19
**law** [15] - 160:8, 161:22, 168:11, 169:17, 170:10, 170:11, 170:12, 170:14, 172:8, 174:14, 193:12, 196:24, 197:3, 197:13, 208:20
**lawful** [1] - 193:11
**lawyer** [2] - 161:4, 173:23
**lawyers** [1] - 169:6
**lead** [1] - 179:25
**learn** [2] - 167:17, 181:18
**learned** [1] - 184:19
**least** [1] - 195:2
**leave** [3] - 163:22, 175:25
**led** [1] - 180:2
**left** [4] - 179:10, 191:19, 191:21, 200:22
**Legal** [1] - 156:15
**legal** [3] - 176:12, 176:14, 186:25
**legally** [2] - 172:4, 172:6
**legs** [1] - 181:11
**lengthy** [1] - 159:9

**lethal** [4] - 183:15, 186:3, 186:4
**letter** [2] - 207:3, 207:15
**letters** [1] - 206:21
**liable** [1] - 179:3
**liberty** [2] - 170:21, 187:22
**lie** [1] - 188:1
**Lieutenant** [8] - 192:2, 199:24, 200:4, 200:18, 202:5, 202:19, 203:7, 204:11
**lieutenant** [1] - 194:12
**life** [4] - 178:10, 186:14, 186:19, 187:22
**light** [2] - 173:10, 200:15
**limine** [1] - 165:9
**limp** [1] - 183:25
**line** [5] - 182:17, 187:15, 207:7, 210:16, 211:13
**list** [3] - 187:17, 204:23, 211:23
**listen** [5] - 174:5, 182:3, 195:15, 197:9, 197:14
**listener** [1] - 163:2
**litigation** [1] - 212:8
**lives** [1] - 172:23
**LLP** [1] - 156:18
**local** [1] - 179:6
**location** [1] - 195:23
**lodged** [2] - 178:7, 181:4
**logistical** [2] - 159:6, 167:18
**logs** [2] - 204:22, 204:23
**look** [2] - 198:11, 205:22
**looked** [2] - 193:2, 205:21
**looks** [1] - 198:9
**lose** [1] - 186:17
**loses** [1] - 186:15
**loss** [1] - 181:11
**lost** [1] - 191:1
**loud** [1] - 192:23
**Love** [28] - 179:22, 181:25, 182:1, 182:10, 182:11, 182:12, 182:17, 182:19, 182:22, 183:1, 183:6, 189:10, 189:16, 189:24, 191:1,

191:7, 194:5, 194:15, 194:17, 194:22, 195:6, 195:9, 195:24, 196:12, 197:20, 197:21, 198:14
**Love's** [1] - 195:14
**lump** [1] - 165:10
**lunch** [2] - 200:7, 200:20
**lunchtime** [2] - 200:12, 204:8

## M

**ma'am** [1] - 208:5
**magic** [1] - 172:20
**man** [3] - 178:3, 186:5, 189:8
**manner** [3] - 173:6, 183:18, 184:24
**Mannon** [1] - 204:2
**manual** [2] - 184:14, 184:17
**Marion** [17] - 166:24, 178:4, 179:7, 179:19, 179:25, 185:23, 185:25, 186:2, 188:25, 189:6, 190:1, 190:4, 190:25, 191:13, 192:12, 192:20, 194:4
**marked** [2] - 191:12, 192:20
**matching** [1] - 190:6
**matter** [4] - 174:22, 175:9, 178:24, 180:21
**mattered** [1] - 180:17
**matters** [2] - 168:3, 173:11
**McCartney** [1] - 210:5
**McCartney's** [2] - 159:15, 159:23
**mean** [3] - 161:3, 184:25, 187:6
**mean..** [1] - 164:14
**means** [4] - 175:5, 187:7, 191:15, 191:16
**medical** [6] - 205:18, 206:13, 207:1, 209:6, 209:10, 211:12
**member** [2] - 175:15, 188:24
**members** [2] - 174:16, 175:15
**memory** [2] - 176:2,

8

176:6
**mention** [2] - 158:5, 158:7
**mentioned** [3] - 181:2, 185:16, 196:21
**merely** [1] - 160:3
**midnight** [1] - 205:7
**might** [6] - 167:17, 200:6, 200:23, 202:6, 205:3, 205:4
**mile** [1] - 203:16
**mind** [7] - 164:4, 174:10, 176:8, 176:16, 180:23, 197:10, 197:14
**minor** [2] - 179:17, 186:16
**minutes** [7] - 162:1, 177:20, 178:10, 184:2, 199:9, 202:20, 211:25
**misbelief** [1] - 167:3
**missing** [1] - 186:20
**moment** [3] - 160:9, 177:19, 202:19
**Monell** [2] - 166:20, 166:23
**Morgantown** [6] - 156:16, 156:18, 156:19, 156:22, 156:23, 203:5
**morning** [7] - 203:3, 204:17, 207:24, 208:2, 210:20, 211:7, 211:11
**most** [2] - 159:4, 187:21
**motion** [6] - 159:25, 166:14, 176:22, 176:23, 177:4, 177:8, 185:11, 185:14
**motionless** [3] - 178:4, 186:5, 188:6
**motions** [1] - 165:9
**move** [7] - 178:9, 181:9, 181:11, 184:6, 192:16, 192:22, 195:20
**moved** [1] - 184:24
**moving** [11] - 180:5, 184:10, 194:1, 196:1, 196:5, 196:7, 196:8, 197:17, 198:6, 198:13, 198:15
**MR** [43] - 158:15, 160:3, 160:17, 160:20, 161:2, 161:5, 161:25,

162:3, 162:6, 162:11, 162:18, 162:25, 163:7, 163:11, 163:19, 164:9, 164:12, 164:17, 166:18, 176:23, 177:6, 177:20, 177:23, 199:23, 200:15, 200:19, 201:1, 202:9, 202:12, 202:15, 202:25, 203:10, 203:12, 203:25, 204:3, 204:19, 205:17, 205:22, 206:18, 206:21, 207:16, 209:9, 209:12
**MS** [13] - 158:17, 160:25, 165:6, 166:16, 167:10, 177:1, 188:12, 188:15, 200:3, 200:21, 203:15, 204:6, 207:10
**mud** [1] - 185:3
**Mundell** [7] - 162:18, 163:6, 163:7, 164:8, 164:12
**murder** [1] - 166:4
**must** [14] - 170:24, 171:20, 172:2, 172:4, 172:10, 172:12, 172:20, 173:2, 173:25, 175:2, 176:4, 178:20, 179:4, 187:9

## N

**name** [5] - 179:11, 189:10, 194:20, 196:23, 207:8
**names** [1] - 161:4
**Nathan** [3] - 156:21, 202:12, 203:4
**nation** [1] - 185:17
**nature** [1] - 206:5
**near** [2] - 181:2, 190:16
**necessary** [4] - 164:6, 174:20, 174:21, 206:13
**neck** [4] - 178:9, 181:5, 181:10, 184:6
**need** [10] - 158:9, 158:12, 159:21, 164:15, 165:4, 169:4, 177:18, 199:22, 206:13,

209:1
**needed** [6] - 182:15, 182:16, 200:6, 200:23, 204:14, 205:5
**needing** [1] - 208:16
**needs** [1] - 177:16
**nefarious** [1] - 195:5
**neglected** [1] - 210:14
**neutral** [7] - 178:2, 184:5, 184:7, 184:9, 184:16, 184:22, 197:18
**never** [3] - 160:12, 183:14, 199:25
**new** [1] - 166:22
**night** [3] - 200:9, 202:9, 204:18
**NO** [1] - 156:3
**nobody** [2] - 197:19
**none** [1] - 180:17
**normal** [2] - 159:3, 175:1
**north** [2] - 190:3, 190:8
**North** [1] - 190:4
**Northern** [2] - 212:17, 213:2
**NORTHERN** [1] - 156:1
**note** [5] - 165:25, 166:5, 166:13, 175:23, 204:7
**noted** [4] - 164:18, 165:3, 189:21, 192:19
**notes** [7] - 175:20, 175:21, 175:25, 176:1, 176:3, 176:5, 176:7
**nothing** [2] - 179:8, 179:9
**notification** [1] - 200:9
**number** [5] - 164:25, 165:16, 196:24, 196:25, 203:2
**numbers** [2] - 174:23, 200:22
**numerous** [1] - 165:9

## O

**oath** [2] - 165:20, 194:24
**obey** [1] - 174:6
**object** [2] - 160:7, 171:5
**objecting** [1] - 171:7
**objection** [8] - 164:1, 164:18, 165:3,

171:10, 171:13, 171:19, 176:25, 177:3
**objections** [3] - 171:3, 171:4, 204:24
**objective** [1] - 184:24
**obligated** [1] - 169:12
**observe** [2] - 173:8, 175:24
**observed** [1] - 179:23
**obstructing** [1] - 201:9
**obviously** [6] - 189:18, 192:8, 194:8, 197:20, 199:1, 200:13
**occasion** [1] - 201:6
**occasionally** [1] - 167:2
**occasions** [1] - 170:20
**occupied** [1] - 178:6
**occupying** [1] - 211:25
**occur** [2] - 172:14, 208:13
**OF** [1] - 156:1
**offense** [1] - 161:3
**offered** [3] - 164:4, 171:3, 171:11
**offers** [1] - 171:6
**office** [7] - 200:8, 200:22, 204:9, 206:23, 207:1, 209:11, 211:18
**officer** [12] - 161:11, 161:20, 163:20, 163:21, 166:5, 167:12, 179:10, 182:1, 182:17, 193:12, 197:13, 208:20
**officers** [6] - 163:15, 178:16, 178:18, 178:20, 190:22, 197:3
**Official** [2] - 212:16, 213:2
**official** [3] - 156:8, 168:21, 183:7
**once** [2] - 160:12, 191:5
**oncoming** [2] - 179:23, 190:11
**one** [19] - 159:6, 165:18, 165:21, 168:20, 175:2, 178:7, 180:10, 181:1, 183:22, 184:3, 184:18,

187:11, 192:8, 198:3, 198:4, 207:19, 211:13
**open** [11] - 158:3, 158:22, 159:17, 167:15, 174:10, 176:16, 180:16, 191:16, 199:19, 209:25, 211:8
**opening** [12] - 167:22, 168:24, 169:1, 169:2, 169:3, 169:5, 169:9, 169:22, 177:17, 194:16, 195:4
**OPENING** [1] - 157:2
**openings** [5] - 158:10, 158:12, 159:11, 159:13, 177:14
**opens** [1] - 191:14
**opinion** [4] - 170:19, 171:14, 176:4, 197:12
**opinions** [1] - 197:8
**opportunity** [6] - 173:8, 174:15, 188:20, 194:23, 196:13, 198:23
**opposed** [2] - 163:2, 210:18
**opposing** [1] - 177:23
**order** [13] - 165:8, 166:23, 167:18, 168:23, 175:19, 184:14, 187:11, 192:5, 201:16, 205:1, 206:2, 212:3
**otherwise** [1] - 173:22
**outcome** [1] - 173:5
**outlining** [1] - 168:25
**outside** [4] - 158:3, 158:21, 171:4, 174:1
**outweighed** [1] - 164:24
**overrule** [1] - 164:1
**overruled** [2] - 164:18, 165:3
**own** [9] - 165:14, 165:20, 172:11, 176:4, 176:6, 188:4, 191:3, 194:19, 195:7

## P

**p.m** [8] - 158:4, 158:20, 202:21, 204:20, 205:6, 212:13
**page** [1] - 179:8
**paid** [3] - 185:9,

9

194:20, 209:13
**paramount** [1] - 206:7
**park** [2] - 180:6,
192:15
**Parrish** [2] - 190:25,
191:8
**part** [5] - 160:12,
160:21, 166:21,
167:6, 196:5
**participating** [1] -
163:16
**parties** [11] - 167:3,
168:14, 168:19,
169:18, 169:24,
174:10, 175:4,
175:8, 175:10,
175:12, 186:18
**party** [3] - 169:3,
169:4, 169:7
**pass** [4] - 179:23,
190:13, 191:4,
211:22
**passed** [2] - 187:18,
190:17
**passenger** [1] - 191:2
**passenger's** [2] -
192:9, 195:17
**passing** [1] - 175:7
**past** [2] - 195:19,
196:25
**patience** [2] - 199:5,
211:6
**patrol** [1] - 179:22
**pattern** [1] - 161:4
**pay** [2] - 179:4, 206:25
**people** [3] - 175:2,
179:7, 185:25
**people's** [1] - 206:16
**perceived** [1] - 161:20
**percent** [2] - 187:2,
187:8
**permit** [1] - 174:16
**permitted** [6] - 170:15,
171:23, 173:20,
178:16, 187:24,
187:25
**person** [3] - 164:8,
174:19, 185:21
**personal** [2] - 168:17,
191:3
**Personal** [1] - 156:4
**persons** [1] - 174:17
**perspective** [2] -
195:20, 195:21
**pertinent** [1] - 163:14
**phase** [1] - 168:2
**Philip** [24] - 156:5,
168:18, 177:25,
178:7, 178:9,
179:12, 179:16,

179:20, 179:24,
180:18, 181:9,
182:5, 182:16,
183:14, 184:6,
184:9, 185:7,
185:25, 186:23,
187:19, 188:5,
188:7, 189:14,
197:20
**Philip's** [5] - 179:13,
179:14, 181:4,
181:10, 183:24
**phone** [2] - 183:2,
202:13
**photographs** [5] -
189:19, 191:16,
198:7, 198:10,
198:11
**photos** [1] - 192:20
**physical** [3] - 200:18,
202:3, 202:10
**physically** [2] -
200:21, 202:19
**pictures** [1] - 198:10
**piece** [1] - 186:20
**pistol** [1] - 180:7
**place** [2] - 180:5,
186:11
**plaintiff** [6] - 166:6,
168:15, 169:9,
187:9, 187:12,
199:10
**Plaintiff** [2] - 156:6,
156:14
**plaintiff's** [12] - 164:1,
165:14, 165:20,
169:2, 169:11,
169:14, 187:8,
194:19, 195:7,
196:20, 197:9,
204:15
**plaintiffs** [4] - 166:7,
168:15, 168:24,
169:25
**plan** [6] - 158:8, 159:6,
159:15, 159:22,
204:23, 210:10
**play** [4] - 162:8,
162:12, 166:20,
204:23
**played** [2] - 195:13,
195:25
**pleasure** [1] - 189:1
**PLLC** [2] - 156:15,
156:22
**podium** [1] - 159:1
**Poe** [1] - 156:21
**point** [21] - 158:13,
159:23, 167:23,
190:5, 190:10,

191:1, 191:22,
191:25, 192:4,
192:7, 193:1,
193:12, 193:21,
194:2, 194:8, 197:5,
197:9, 199:1, 199:8,
199:9, 199:22
**points** [1] - 187:13
**Police** [5] - 160:11,
192:3, 194:11,
194:13, 201:5
**police** [10] - 166:5,
177:10, 178:15,
178:18, 178:20,
179:3, 180:5,
180:19, 194:18,
196:11
**policies** [2] - 178:21,
185:24
**policing** [1] - 178:23
**policy** [3] - 166:25,
186:3, 186:8
**pool** [1] - 205:13
**portion** [1] - 170:25
**positioned** [1] - 180:8
**positions** [1] - 169:23
**possible** [6] - 173:18,
174:20, 180:9,
186:10, 206:11,
208:3
**pounce** [1] - 163:5
**prefer** [1] - 162:7
**preferences** [1] -
210:16
**preferred** [1] - 210:18
**prejudice** [4] - 161:14,
161:15, 171:9, 173:5
**preliminary** [6] -
159:8, 165:5,
167:19, 168:8,
176:19, 177:15
**preparation** [1] -
183:11
**prepared** [3] - 176:20,
188:13, 206:10
**preponderance** [1] -
187:5
**prescribed** [1] -
212:22
**presence** [2] - 171:4,
174:17
**present** [6] - 163:1,
169:18, 169:23,
182:1, 188:23,
206:18
**presented** [4] - 161:7,
161:8, 168:4, 195:11
**pretrial** [2] - 201:11,
206:4
**prevail** [2] - 187:12,

187:14
**previous** [1] - 199:13
**previously** [6] - 166:5,
166:8, 166:11,
167:7, 185:16,
194:24
**Prince** [4] - 156:17,
179:11, 198:21,
204:21
**PRINCE** [2] - 177:23,
206:18
**Prince's** [1] - 194:16
**principles** [1] - 176:8
**private** [2] - 191:2,
197:4
**probability** [1] - 173:9
**problem** [1] - 186:24
**problematic** [1] -
164:25
**procedures** [1] -
185:24
**proceed** [3] - 168:23,
169:10, 188:13
**proceeding** [1] - 206:9
**proceedings** [3] -
179:17, 201:24,
212:19
**Proceedings** [3] -
156:11, 156:24,
212:13
**process** [9] - 168:1,
168:22, 201:3,
201:5, 201:8,
202:11, 203:4,
210:7, 212:8
**produce** [1] - 169:8
**produced** [2] - 156:25,
169:24
**profession** [1] - 206:5
**Professional** [1] -
212:15
**proffer** [1] - 164:14
**proffered** [1] - 165:3
**promised** [1] - 167:19
**promptly** [1] - 158:12
**pronouncing** [1] -
207:8
**pronunciation** [1] -
207:11
**properly** [1] - 171:7
**protect** [4] - 179:6,
185:25, 198:18
**protected** [1] - 187:23
**protections** [5] -
178:12, 178:13,
178:23, 178:24
**prove** [19] - 161:19,
179:8, 180:13,
180:15, 181:10,
182:14, 183:4,

183:5, 183:8,
183:20, 185:6,
186:1, 186:6,
186:23, 187:1,
187:3, 188:2
**proven** [1] - 179:1
**provide** [2] - 163:13,
186:10
**provided** [3] - 192:2,
206:21, 207:3
**province** [1] - 170:9
**proving** [1] - 163:2
**proximity** [1] - 164:2
**pulled** [2] - 180:7,
191:9
**Pullin** [1] - 156:21
**pulls** [1] - 191:13
**pulse** [1] - 194:6
**purpose** [2] - 161:9,
164:3
**purposes** [1] - 210:11
**pursuant** [1] - 209:17
**pursue** [1] - 190:10
**pursued** [1] - 192:12
**pursuit** [9] - 160:2,
162:21, 189:12,
189:13, 189:15,
189:16, 189:25,
190:2, 190:9
**put** [3] - 158:25,
162:8, 165:7

## Q

**quarter** [1] - 208:11
**questions** [4] -
173:20, 176:12,
176:14, 196:14
**quickly** [1] - 167:17
**quite** [2] - 161:2,
161:5

## R

**radio** [17] - 160:1,
160:20, 161:24,
162:16, 163:14,
189:20, 189:21,
190:2, 190:7,
190:15, 190:18,
190:20, 190:22,
193:5, 194:3, 194:9,
204:22
**radioed** [2] - 190:14,
194:3
**raise** [2] - 173:24,
177:16
**raised** [2] - 174:1,
199:16
**rather** [2] - 162:13,

210:7
**Rd** [1] - 156:18
**reach** [4] - 176:21, 208:6, 211:13, 211:24
**reached** [2] - 160:15, 201:15
**reaching** [4] - 160:22, 174:11, 193:3, 193:7
**reactions** [1] - 159:20
**read** [2] - 173:25, 204:19
**ready** [2] - 159:11, 205:15
**realize** [6] - 207:21, 207:25, 208:3, 210:15, 211:23, 212:7
**really** [2] - 201:22, 209:20
**realtime** [1] - 156:24
**rear** [3] - 192:11, 192:13, 192:17
**reason** [8] - 160:13, 161:15, 164:5, 180:16, 188:3, 191:10, 205:1, 207:2
**reasonable** [6] - 161:11, 161:20, 187:3, 188:3, 193:21, 198:16
**reasons** [1] - 167:7
**rebuttal** [1] - 169:15
**receive** [3] - 168:12, 206:24, 209:15
**received** [11] - 176:13, 176:16, 200:5, 200:8, 200:9, 200:11, 200:14, 203:21, 204:20, 209:16
**Recess** [2] - 158:20, 202:21
**recess** [3] - 174:4, 174:7, 203:6
**recollection** [1] - 172:17
**reconciled** [1] - 173:16
**reconnecting** [1] - 203:12
**reconsider** [1] - 166:14
**reconvene** [3] - 199:9, 202:20, 210:3
**record** [12] - 162:14, 165:7, 165:12, 166:1, 166:13, 166:14, 166:19, 167:7, 172:1, 172:3,

204:7, 207:20
**recorded** [1] - 156:24
**rectifying** [1] - 212:10
**reference** [1] - 160:1
**refrain** [2] - 199:14, 211:2
**refuse** [2] - 201:7, 201:13
**refused** [6] - 181:22, 181:23, 196:14, 201:4, 211:19
**refusing** [2] - 201:10, 205:12
**refuted** [1] - 195:7
**regard** [6] - 166:3, 174:6, 196:16, 197:1, 197:11, 197:15
**Registered** [1] - 212:15
**relationship** [1] - 212:6
**relevance** [1] - 164:23
**relevant** [7] - 161:15, 164:19, 164:22, 165:2, 165:14, 165:24, 166:11
**reliability** [1] - 172:24
**relied** [2] - 160:12, 163:15
**relief** [2] - 160:12, 160:13
**rely** [3] - 177:10, 177:12, 184:23
**remain** [1] - 174:3
**remainder** [1] - 162:22
**remains** [1] - 164:19
**remember** [5] - 175:20, 184:6, 193:4, 195:15, 199:12
**remind** [1] - 162:22
**remove** [1] - 194:5
**removed** [1] - 183:25
**rendered** [2] - 181:12, 181:13
**rendering** [1] - 178:9
**reply** [1] - 176:6
**report** [2] - 174:19, 174:21
**reported** [1] - 212:20
**Reporter** [3] - 212:15, 212:16, 213:2
**reporting** [1] - 190:22
**represent** [1] - 179:12
**representative** [1] - 168:17
**Representative** [1] - 156:4
**representing** [1] -

189:1
**reputable** [1] - 195:3
**requests** [1] - 177:18
**require** [1] - 172:8
**required** [6] - 169:3, 174:3, 180:22, 187:1, 187:3, 207:1
**requires** [1] - 212:4
**research** [1] - 199:15
**respect** [6] - 159:25, 164:25, 165:13, 165:17, 167:4, 206:2
**responded** [1] - 189:11
**responders** [1] - 194:10
**responding** [1] - 161:10
**response** [1] - 169:15
**responsibility** [1] - 207:22
**responsible** [1] - 208:6
**rest** [1] - 205:12
**result** [2] - 184:8, 196:17
**resulting** [1] - 165:10
**retire** [2] - 170:3, 170:17
**retrieve** [1] - 203:10
**return** [7] - 200:10, 201:18, 201:20, 202:8, 203:1, 204:16, 205:6
**returned** [2] - 167:14, 209:24
**returns** [1] - 207:14
**revving** [2] - 193:15, 197:25
**RHOADES** [1] - 156:3
**Rhoades** [33] - 156:5, 160:1, 161:9, 161:17, 162:23, 163:3, 166:3, 168:16, 168:18, 178:7, 179:12, 179:24, 181:2, 185:7, 189:14, 189:17, 189:20, 189:23, 191:5, 192:23, 192:25, 193:3, 193:5, 193:7, 193:9, 193:11, 193:13, 193:14, 193:18, 193:19, 194:5, 197:20, 197:24
**Rhoades'** [1] - 191:23
**Rick** [1] - 179:14
**Rights** [2] - 185:19,

187:16
**rights** [6] - 178:20, 179:5, 185:17, 185:23, 187:17, 187:21
**risk** [1] - 161:14
**road** [9] - 168:6, 180:1, 180:2, 180:24, 191:8, 191:10, 191:14, 208:8
**Road** [1] - 156:15
**rocks** [1] - 185:3
**roll** [1] - 159:11
**rookie** [1] - 182:17
**room** [3] - 170:3, 175:22, 210:15
**roommates** [1] - 174:23
**Root** [3] - 165:15, 194:20
**Route** [3] - 190:3, 190:9, 190:16
**route** [1] - 203:5
**row** [1] - 158:11
**RPR** [1] - 213:1
**rude** [1] - 174:25
**rule** [3] - 175:11, 186:8, 212:3
**rules** [9] - 160:9, 168:5, 170:10, 170:11, 171:7, 178:22, 179:6, 180:21, 188:4
**ruling** [1] - 165:25
**rulings** [2] - 161:12, 166:22
**Run** [3] - 190:24, 190:25, 191:8
**run** [2] - 184:4, 208:16
**running** [6] - 159:19, 183:24, 183:25, 184:15, 193:23, 203:16
**rural** [2] - 178:4, 179:25
**rush** [1] - 210:8
**rushing** [1] - 208:8
**Ryan** [3] - 156:14, 179:11, 204:22

**S**

**safeguards** [3] - 178:15, 179:9, 187:23
**safety** [1] - 188:3
**Sam** [1] - 196:23
**sat** [2] - 187:3, 188:5
**Savasman** [6] - 205:3,

205:17, 206:17, 206:18, 207:8, 209:5
**saw** [9] - 183:14, 190:11, 191:18, 192:1, 192:3, 193:1, 193:2, 193:15, 195:25
**scene** [2] - 184:1, 194:10
**schedule** [1] - 159:23
**scheduled** [2] - 200:12, 206:3
**schedules** [1] - 206:24
**scheduling** [2] - 166:22, 210:1
**scheming** [1] - 183:12
**School** [1] - 190:4
**score** [2] - 187:12, 187:13
**seal** [1] - 158:2
**seated** [5] - 158:5, 158:23, 167:18, 199:21, 202:22
**second** [5] - 201:6, 205:9, 205:10, 205:14, 212:9
**seconds** [3] - 180:6, 180:7, 180:19
**security** [1] - 167:12
**see** [17] - 158:18, 167:23, 172:16, 188:22, 191:15, 191:17, 193:16, 196:3, 196:5, 196:6, 196:7, 198:12, 198:17, 199:17, 210:12, 210:20, 211:6
**seeing** [3] - 177:18, 195:21, 195:22
**seeking** [1] - 179:18
**sees** [2] - 190:8, 193:7
**seizure** [1] - 185:21
**selection** [2] - 168:1, 168:22
**send** [1] - 211:18
**sense** [3] - 159:5, 184:21, 184:23
**sent** [2] - 201:2, 207:15
**separate** [1] - 160:23
**sequester** [2] - 176:22, 176:24
**sequestered** [1] - 177:9
**Sergeant** [14] - 194:12, 196:10, 197:18, 201:22, 203:9, 203:14,

203:15, 204:7,
205:10, 206:12,
207:23, 208:16,
209:4, 211:11
**sergeant** [1] - 192:2
**serious** [3] - 201:22,
208:22, 208:23
**seriously** [2] - 193:22,
198:17
**serve** [2] - 168:8,
175:3
**served** [4] - 202:24,
208:19, 209:6,
209:12
**server** [5] - 201:3,
201:5, 201:8,
202:11, 203:4
**service** [6] - 188:17,
201:4, 204:16,
205:12, 209:13,
211:19
**serving** [2] - 168:6,
203:7
**set** [6] - 159:3, 159:11,
170:10, 177:19,
188:14, 188:23
**seven** [3] - 178:6,
180:11
**several** [2] - 184:1,
196:25
**severed** [1] - 181:9
**severing** [2] - 178:8,
181:6
**shall** [2] - 175:13,
177:9
**share** [3] - 201:16,
203:1, 205:1
**shared** [1] - 201:21
**sharp** [1] - 191:8
**shed** [1] - 200:15
**sheriff's** [6] - 189:8,
189:9, 189:11,
189:12, 189:25,
195:10
**Sheriff's** [8] - 166:25,
185:24, 186:2,
188:25, 189:7,
191:13, 192:13,
192:21
**shield** [1] - 178:13
**shift** [3] - 181:12,
184:7, 189:3
**shooting** [3] - 160:16,
162:2, 162:3
**shortly** [2] - 203:2,
203:5
**shot** [2] - 180:9, 198:2
**shots** [8] - 178:6,
180:11, 181:1,
194:4, 196:3, 197:22

**show** [22] - 161:19,
171:9, 179:19,
180:3, 180:6,
180:17, 180:22,
181:8, 181:14,
182:9, 182:21,
183:11, 186:1,
192:23, 192:24,
193:9, 193:10,
197:23, 198:8,
198:10, 198:19
**showed** [1] - 199:25
**shower** [1] - 208:17
**showing** [1] - 161:9
**shown** [1] - 169:19
**sic** [1] - 192:9
**side** [5] - 171:6,
187:11, 192:8,
192:10, 195:17
**sight** [1] - 191:1
**significant** [2] - 202:7,
209:18
**significantly** [1] -
164:24
**simple** [1] - 178:1
**simply** [4] - 161:9,
161:19, 197:12,
208:21
**single** [2] - 183:2,
183:3
**sit** [3] - 166:2, 177:2,
205:9
**site** [5] - 191:11,
191:15, 191:19,
191:23, 193:16
**sitting** [4] - 179:13,
184:15, 184:19,
198:11
**six** [1] - 180:11
**slated** [1] - 164:8
**sloppy** [1] - 186:11
**small** [4] - 178:4,
180:2, 180:4, 181:19
**soft** [2] - 189:18,
190:7
**sole** [5] - 170:6,
170:22, 170:24,
171:16, 183:15
**solely** [1] - 172:4
**someone** [5] - 205:23,
208:1, 210:24,
211:13, 211:18
**sometimes** [1] - 171:3
**somewhat** [3] -
191:14, 191:16,
191:21
**somewhere** [1] -
211:24
**son** [1] - 186:15
**soon** [1] - 174:20

**sorry** [1] - 203:19
**Sorry** [1] - 204:4
**sort** [2] - 159:1, 168:5
**sounds** [1] - 186:24
**source** [3] - 160:6,
163:20, 163:22
**space** [1] - 159:2
**SPEAKER** [1] - 211:16
**speaking** [1] - 182:18
**specific** [1] - 164:1
**specifically** [4] -
160:20, 162:12,
164:21, 166:4
**speculate** [1] - 171:21
**speech** [1] - 185:19
**speed** [2] - 183:23,
184:20
**speeds** [1] - 184:4
**spinal** [3] - 178:8,
181:6, 181:9
**spine** [2] - 178:8,
181:6
**spinning** [2] - 185:2,
198:9
**spoken** [2] - 182:22,
204:7
**spot** [1] - 159:1
**Sq** [1] - 156:22
**staff** [2] - 201:3, 201:6
**stall** [1] - 184:18
**stand** [1] - 158:6,
173:7, 179:10,
182:24, 183:13,
184:13, 194:23,
194:25, 197:16,
198:4, 198:24
**standard** [2] - 186:25,
187:5
**standing** [1] - 180:14
**standpoint** [1] -
167:19
**start** [6] - 159:16,
159:22, 169:25,
187:10, 188:17,
210:10
**started** [4] - 158:11,
159:12, 165:7,
183:17
**state** [13] - 164:4,
181:21, 181:25,
182:13, 182:18,
182:23, 183:5,
184:1, 185:12,
194:18, 196:11,
206:25, 209:7
**State** [6] - 160:11,
192:3, 194:10,
194:13, 201:5,
208:21
**STATEMENT** [1] -

157:2
**statement** [21] -
160:11, 162:6,
162:17, 162:24,
163:8, 168:24,
169:1, 169:2, 169:3,
169:5, 169:6,
181:23, 182:2,
182:14, 182:20,
183:5, 183:8,
183:21, 194:16,
195:5, 204:10
**statements** [12] -
167:22, 169:9,
169:22, 172:25,
177:17, 182:23,
194:14, 194:17,
194:22, 195:2,
195:6, 196:12
**States** [7] - 170:14,
178:11, 178:13,
187:16, 212:16,
212:23, 213:2
**STATES** [1] - 156:1
**station** [1] - 189:25
**stay** [1] - 201:24
**stenotypy** [1] - 212:20
**still** [10] - 178:1,
180:5, 183:24,
183:25, 185:7,
188:7, 188:10,
193:6, 196:3, 211:14
**still-moving** [1] -
180:5
**stipulated** [1] - 166:24
**stop** [6] - 192:12,
192:23, 192:24,
193:9, 193:10,
193:18
**stopped** [2] - 193:25,
194:1
**stories** [1] - 173:17
**story** [7] - 179:21,
182:15, 182:25,
183:9, 183:10,
183:12, 205:11
**straight** [2] - 183:9,
183:17
**stricken** [2] - 171:25,
172:2
**strike** [1] - 190:12
**striking** [1] - 191:24
**strongest** [1] - 165:2
**struck** [4] - 178:7,
181:1, 196:2, 196:9
**studies** [3] - 196:25,
197:2, 197:11
**styled** [2] - 156:11,
212:19
**submit** [1] - 198:3

**submitted** [2] - 170:6,
174:12
**subpoena** [32] -
164:13, 199:24,
199:25, 200:8,
200:10, 200:11,
200:14, 201:4,
201:7, 201:10,
201:13, 201:17,
201:19, 201:20,
202:8, 202:23,
203:8, 203:22,
203:23, 204:2,
204:15, 204:16,
205:6, 205:18,
208:4, 208:15,
209:6, 209:15,
209:17, 209:18
**subpoenaed** [3] -
200:3, 205:2, 208:20
**subpoenas** [4] -
206:22, 207:13,
207:14
**substantially** [1] -
164:24
**substantive** [1] -
168:1
**substitute** [1] - 168:10
**suffered** [1] - 167:3
**suffice** [1] - 211:22
**sufficient** [1] - 159:2
**suggest** [1] - 185:1
**Suite** [1] - 156:18
**summations** [1] -
174:13
**support** [1] - 169:10
**supports** [1] - 199:3
**supposed** [1] - 205:18
**surprise** [1] - 159:9
**surprised** [1] - 167:17
**surveyed** [1] - 197:2
**suspect** [3] - 163:5,
165:19, 165:23
**sustain** [1] - 171:19
**swerve** [1] - 190:11
**sworn** [1] - 158:2

---

**T**

**table** [1] - 159:2
**tampered** [1] - 184:3
**target** [1] - 210:10
**telephone** [1] - 211:21
**temperate** [1] - 210:17
**temperature** [2] -
210:16, 210:19
**temporal** [1] - 164:2
**ten** [2] - 161:25, 210:5
**tendency** [1] - 175:1
**testified** [4] - 160:23,

165:15, 165:20,
172:17
**testifies** [3] - 160:18,
173:7, 173:9
**testify** [11] - 164:8,
181:21, 183:14,
183:18, 184:14,
184:16, 185:10,
185:14, 205:16,
206:15
**testifying** [1] - 172:19
**testimony** [25] -
160:11, 160:14,
165:8, 165:14,
170:5, 171:1, 171:6,
171:10, 171:12,
171:25, 172:11,
172:13, 172:21,
173:10, 173:13,
176:3, 176:12,
194:25, 195:9,
195:11, 195:12,
195:14, 195:15,
196:16
**tests** [2] - 173:1
**text** [1] - 183:3
**thanking** [1] - 188:17
**THE** [59] - 158:5,
158:16, 158:18,
158:23, 160:14,
160:19, 160:24,
161:1, 161:3,
161:23, 162:2,
162:5, 162:9,
162:15, 162:24,
163:4, 163:8,
163:17, 163:24,
164:10, 164:15,
164:18, 166:14,
166:17, 167:2,
167:11, 167:16,
176:25, 177:5,
177:7, 177:22,
188:9, 188:13,
199:6, 199:21,
200:17, 200:24,
202:2, 202:10,
202:14, 202:16,
202:22, 203:8,
203:11, 203:13,
203:23, 204:1,
204:4, 205:9,
205:21, 205:23,
207:5, 207:12,
207:18, 209:10,
209:16, 210:1,
211:10, 211:21
**therefore** [3] - 166:20,
173:21, 174:5
**therein** [1] - 185:20

**third** [1] - 174:16
**Thomas** [1] - 156:12
**thousands** [1] - 197:2
**threat** [2] - 165:17,
193:25
**threaten** [1] - 201:9
**three** [3] - 180:10,
189:3, 192:4
**throughout** [1] -
174:11
**thrown** [1] - 175:2
**Thursday** [2] - 200:5,
200:13
**Tiffany** [1] - 156:20
**timeline** [1] - 161:23
**timing** [3] - 194:16,
194:21, 195:6
**tip** [1] - 187:15
**tired** [1] - 199:11
**tires** [2] - 185:3, 198:9
**title** [1] - 209:7
**today** [9] - 165:3,
188:18, 199:25,
204:14, 207:23,
209:1, 210:14,
210:25, 211:6
**together** [7] - 173:17,
174:3, 179:11,
179:18, 182:10,
182:14, 206:14
**tolerate** [2] - 206:15,
208:24
**tomorrow** [16] -
159:16, 159:22,
200:5, 200:13,
207:24, 208:2,
208:9, 208:19,
209:2, 210:3,
210:13, 210:18,
210:20, 211:11,
211:15, 212:11
**took** [7] - 180:9,
185:1, 186:11,
188:4, 195:12,
196:11, 203:5
**top** [4] - 181:5,
189:18, 190:7, 196:5
**total** [1] - 178:5
**touch** [1] - 198:23
**touchdowns** [1] -
187:13
**toward** [8] - 160:15,
191:23, 193:15,
196:1, 196:8,
197:25, 198:2,
198:15
**towards** [2] - 183:18,
185:2
**towed** [1] - 182:17
**traffic** [9] - 160:1,

160:20, 161:24,
162:16, 179:23,
189:22, 190:11,
190:20, 190:22
**trail** [1] - 191:8
**trained** [1] - 163:13
**training** [1] - 180:15
**Transcript** [2] -
156:25, 158:2
**transcript** [4] - 162:12,
162:13, 212:18,
212:21
**transcription** [1] -
156:25
**transcripts** [1] - 162:9
**translation** [1] -
156:24
**transmission** [3] -
160:4, 184:14,
184:17
**transmitted** [1] -
163:21
**transpired** [6] - 158:3,
158:21, 167:15,
199:19, 209:25,
211:8
**traveling** [2] - 190:3,
190:8
**travelling** [1] - 189:7
**Travis** [2] - 156:17,
179:11
**treat** [1] - 202:1
**Trial** [1] - 156:11
**trial** [27] - 158:24,
159:16, 167:1,
167:24, 168:2,
168:4, 168:7, 168:9,
168:13, 169:8,
169:24, 170:6,
170:14, 170:16,
170:17, 171:2,
171:24, 174:5,
174:7, 174:9,
174:11, 175:12,
175:17, 176:9,
179:14, 179:18,
212:10
**tried** [2] - 175:16,
181:16
**trooper** [9] - 181:21,
181:25, 182:6,
182:13, 182:18,
182:23, 183:6,
184:1, 185:12
**trouble** [2] - 204:1,
208:1
**truth** [1] - 178:1
**try** [5] - 192:6, 192:11,
193:18, 195:5,
204:13

**trying** [5] - 161:19,
192:5, 195:19, 196:4
**Tuesday** [1] - 156:12
**turn** [4] - 190:9, 191:8,
192:5, 192:6
**two** [7] - 173:17,
179:17, 180:10,
186:16, 200:22,
205:19

---

## U

**ultimately** [1] - 202:23
**UMINA** [30] - 158:15,
160:3, 160:17,
160:20, 163:19,
164:12, 164:17,
166:18, 176:23,
177:6, 177:20,
199:23, 200:15,
200:19, 201:1,
202:9, 202:12,
202:15, 202:25,
203:10, 203:12,
203:25, 204:3,
204:19, 205:17,
205:22, 206:21,
207:16, 209:9,
209:12
**Umina** [21] - 156:14,
156:15, 158:14,
159:25, 163:5,
163:18, 163:25,
164:11, 166:17,
177:5, 177:18,
179:11, 199:22,
200:25, 202:8,
202:23, 203:24,
205:16, 207:6,
207:12, 209:8
**Umina's** [2] - 200:8,
204:10
**Umina......................
..........176** [1] - 157:3
**unable** [6] - 173:23,
178:9, 181:9,
181:12, 181:13,
184:6
**unarmed** [2] - 178:3,
186:4
**unbeknownst** [1] -
192:14
**under** [20] - 158:2,
161:7, 161:20,
161:21, 164:13,
165:20, 170:14,
171:7, 178:12,
194:24, 197:5,
199:24, 201:17,
201:19, 201:20,

205:18, 208:3,
208:15, 212:24
**understood** [4] -
164:18, 167:2,
200:24, 206:6
**undoubtedly** [1] -
171:2
**uniform** [1] - 203:18
**United** [7] - 170:14,
178:11, 178:13,
187:16, 212:16,
212:23, 213:2
**UNITED** [1] - 156:1
**unjustified** [2] -
185:15, 186:11
**unlawful** [2] - 178:3,
178:14, 185:21,
186:10, 187:20
**unlawfully** [1] -
186:23
**unless** [4] - 171:13,
175:18, 177:16,
201:19
**unoccupied** [2] -
184:2, 184:4
**unopposed** [1] - 177:8
**unreasonable** [1] -
185:21
**unreliability** [1] -
172:25
**up** [23] - 158:9,
158:12, 159:3,
159:11, 165:4,
167:1, 177:19,
180:23, 181:17,
183:12, 183:21,
185:3, 188:1,
188:14, 191:14,
191:15, 192:5,
193:2, 199:22,
199:25, 204:17,
209:1
**upstairs** [1] - 159:25
**usual** [2] - 159:1,
210:18
**utilizing** [1] - 156:24
**utterance** [1] - 161:24

---

## V

**vaccination** [1] -
210:7
**vaccine** [1] - 159:15
**valid** [2] - 208:19,
209:16
**value** [3] - 186:14,
186:15, 186:20
**vehicle** [14] - 184:2,
185:10, 185:14,
189:13, 189:17,

189:21, 190:8, 190:12, 191:2, 192:23, 192:24, 193:4, 193:9, 193:10
**vehicles** [3] - 178:2, 184:21, 190:13
**verbal** [3] - 192:23, 193:9, 193:17
**verdict** [7] - 170:3, 170:18, 172:4, 175:14, 175:18, 176:21, 199:3
**version** [1] - 181:18
**versions** [1] - 173:19
**vertebra** [2] - 181:5
**video** [2] - 195:12, 211:18
**videos** [1] - 162:13
**viewed** [1] - 173:10
**views** [1] - 174:16
**violate** [3] - 178:19, 179:1, 179:3
**violated** [3] - 186:2, 186:6, 186:7
**violation** [1] - 180:14
**VIRGINIA** [1] - 156:1
**Virginia** [11] - 156:12, 160:10, 185:12, 192:3, 194:10, 194:13, 201:5, 208:21, 209:7, 212:17, 213:3
**Voir** [1] - 158:1
**vouching** [1] - 166:18

## W

**wait** [3] - 159:19, 210:5, 210:8
**waiting** [2] - 206:15, 207:23
**waiver** [1] - 166:12
**waste** [4] - 205:24, 206:15, 206:23, 208:24
**wasting** [2] - 206:7, 212:9
**watch** [1] - 195:15
**weapon** [3] - 193:23, 193:25, 194:1
**weapons** [1] - 183:15
**weddings** [1] - 186:18
**weeks** [1] - 207:1
**weight** [6] - 171:1, 171:14, 171:17, 172:12, 173:12, 176:2
**Wesley** [2] - 162:20, 189:13
**WEST** [1] - 156:1

**West** [11] - 156:12, 160:10, 185:12, 192:3, 194:10, 194:13, 201:5, 208:21, 209:7, 212:17, 213:3
**whatsoever** [3] - 183:3, 185:4, 195:1
**wheel** [1] - 188:6
**Wheeler** [4] - 162:20, 189:13, 189:15
**whereabouts** [3] - 200:18, 202:3, 202:10
**whole** [1] - 164:5
**wife** [3] - 179:13, 186:15, 189:2
**wifi** [1] - 203:12
**willing** [2] - 203:6, 204:25
**wisdom** [1] - 186:19
**wish** [1] - 175:20
**witness** [36] - 159:12, 171:20, 171:22, 172:12, 172:13, 172:14, 172:15, 172:16, 172:17, 172:18, 173:4, 173:6, 173:7, 173:8, 173:9, 173:23, 175:5, 182:24, 183:13, 184:13, 185:9, 194:23, 194:25, 198:4, 198:24, 199:10, 199:24, 200:1, 201:15, 201:25, 205:15, 205:19, 210:3, 210:21, 211:23
**witness'** [3] - 172:17, 173:10, 173:13
**witnessed** [1] - 190:5
**witnesses** [21] - 164:7, 169:13, 170:25, 171:17, 173:20, 173:22, 175:21, 175:24, 176:22, 176:24, 177:2, 177:3, 177:8, 177:11, 196:19, 201:16, 205:1, 206:2, 206:3, 206:9, 207:4
**woke** [1] - 204:17
**word** [4] - 162:10, 162:15, 184:11, 185:8
**wording** [1] - 171:21
**words** [1] - 179:8

**workday** [1] - 211:14
**works** [1] - 209:10
**world** [1] - 210:17
**worries** [1] - 204:6
**worse** [1] - 181:15
**wound** [1] - 181:3
**Wrangler** [5] - 179:23, 183:16, 183:23, 189:18, 190:7
**written** [1] - 182:20
**WV** [3] - 156:16, 156:19, 156:23

## Y

**years** [3] - 187:18, 196:24, 196:25
**yelling** [1] - 161:4
**yesterday** [2] - 201:16, 204:20
**young** [3] - 186:16, 189:3, 189:7
**yourself** [2] - 175:22, 182:4
**yourselves** [6] - 172:24, 174:8, 176:14, 197:4, 199:14, 210:23